FILED

2013 JUL 31  AM 11: 07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

1  LEE TRAN & LIANG APLC
   Enoch H. Liang (SBN 212324)
2  enoch.liang@ltlattorneys.com
   Heather F. Auyang (SBN 191776)
3  heather.auyang@ltlw.com
   Lisa J. Chin (SBN 259793)
4  lisa.chin@ltlattorneys.com
   601 S. Figueroa Street, Suite 3900
5  Los Angeles, CA 90017
   Telephone: (213) 612-3737
6  Facsimile: (213) 612-3773

7  Attorneys for Defendant
   Biosuccess Biotech, Co., Ltd.

8

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12  RICHARD L. CHANG,                 Case No. CV13-01340 JAK (ANx)

13          Plaintiff,
                                       DEFENDANT BIOSUCCESS
14     v.                              BIOTECH, CO., LTD.'S FIRST
                                       AMENDED ANSWER TO
15  BIOSUCCESS BIOTECH, CO., LTD.,     PLAINTIFF'S COMPLAINT,
    and DOES 1 through 10,             AFFIRMATIVE DEFENSES AND
16                                     COUNTERCLAIMS
          Defendants.
17

18

19                                     JURY TRIAL DEMANDED

20  BIOSUCCESS BIOTECH, CO., LTD.,     Trial Date:   May 13, 2014
    and DOES 1 through 10,
                                       Honorable John A. Kronstadt
21          Counterclaimants,

22     v.

23  RICHARD L. CHANG,

24          Counter-Defendant.

25

26

27

28

Defendant Biosuccess Biotech, Co., Ltd. ("Biosuccess"), through its counsel, answers the allegations in the Complaint ("Complaint") filed by Plaintiff Richard L. Chang ("Chang" or "Plaintiff"), as set forth below, and hereby brings counterclaims against Chang.   Biosuccess hereby reserves the right to amend its Answer as additional information becomes available and additional defenses become apparent. Unless specifically admitted, Biosuccess denies each of the allegations of Plaintiff's Complaint.

## PARTIES

1.      Biosuccess is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 1, and therefore denies them.

2.      Biosuccess admits that Biosuccess Biotech, Co., Ltd. is a corporation organized under the laws of the Cayman Islands, with its principal place of business at 3333 Bowers Avenue, Suite 201, Santa Clara, California 95054.

## JURISDICTION AND VENUE

3.      Biosuccess admits that Plaintiff attempts to assert claims as a declaratory judgment action.  Biosuccess denies the remaining allegations in paragraph 3.

4.      Biosuccess denies the allegations contained in paragraph 4.

5.      Biosuccess admits that venue is proper in this District.  Biosuccess denies the remaining allegations in paragraph 5.

## FACTUAL BACKGROUND

6.      Biosuccess admits that, on its face, U.S. Patent No. 6,063,814 ("the '814 patent") duly and legally issued on May 16, 2000, and that Chang is one of the named inventors.  Biosuccess denies the remaining allegations in paragraph 6.

7.      Biosuccess admits that Chang and Biosuccess entered into an agreement titled "Assignment of Patent Right & Assignment of Right of Patent

1 Application Agreement."  Biosuccess denies the remaining allegations in paragraph

2 7.

3      8.      Biosuccess admits that the Complaint alleges an "October 2006

4 Agreement."  Biosuccess denies the remaining allegations in paragraph 8.

5      9.      Biosuccess admits that the Complaint refers to "Article 5.1 of the

6 October 2006 Agreement."  Biosuccess denies the remaining allegations in

7 paragraph 8.

8      10.     Biosuccess denies the allegations contained in paragraph 10.

9      11.     Biosuccess admits that there is a letter dated January 18, 2013 to Chang

10 from Biosuccess.  Biosuccess denies the remaining allegations in paragraph 11.

11     12.     Biosuccess admits that there is a letter dated January 22, 2013 from

12 Chang to Biosuccess.  Biosuccess denies the remaining allegations in paragraph 12.

13     13.     Biosuccess admits that the Complaint refers to "Article 5.3 of the

14 October 2006 Agreement."  Biosuccess denies the remaining allegations in

15 paragraph 13.

16     14.     Biosuccess denies the allegations contained in paragraph 14.

17     15.     Biosuccess admits that the Complaint refers to "provisional patent

18 application 60/898,810."  Biosuccess denies the remaining allegations in paragraph

19 15.

20     16.     Biosuccess admits that the Complaint refers to "United States patent

21 application 13/595,072, which claims priority from provisional application

22 60/898,810."  Biosuccess denies the remaining allegations in paragraph 16.

23     17.     Biosuccess admits that the Complaint refers to "United States patent

24 application 12/023,753."  Biosuccess admits that on or about February 17, 2011,

25 Biosuccess filed an assignment document concerning United States Patent

26 Application No. 12/023,753 in the United States Patent and Trademark Office.

27 Biosuccess denies the remaining allegations in paragraph 17.

28

**DEFENDANT'S FIRST AMENDED ANSWER
TO COMPLAINT, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS
Case No. CV13-01340 JAK (ANx)**

18.     Biosuccess admits that on or about November 14, 2006, it filed an assignment document concerning the '814 patent in the United States Patent and Trademark Office.  Biosuccess denies the remaining allegations in paragraph 18.

19.     Biosuccess admits that the Complaint refers to "United States provisional patent application 61/588,162."  Biosuccess denies the remaining allegations in paragraph 19.

20.     Biosuccess admits that the Complaint refers to "United States provisional patent application 61/588,165."  Biosuccess denies the remaining allegations in paragraph 20.

21.     Biosuccess admits that the Complaint refers to "United States provisional patent application 61/588,167."  Biosuccess denies the remaining allegations in paragraph 21.

22.     Biosuccess denies the allegations contained in paragraph 22.

23.     Biosuccess denies the allegations contained in paragraph 23.

24.     Biosuccess admits that the Complaint refers to "three non-provisional patent applications."  Biosuccess denies the remaining allegations in paragraph 24.

25.     Biosuccess admits that the Complaint refers to "Non-Provisional Applications."  Biosuccess denies the remaining allegations in paragraph 25.

26.     Biosuccess denies the allegations contained in paragraph 26.

27.     Biosuccess admits that there is a letter dated January 18, 2013 to Chang from Biosuccess.  Biosuccess denies the remaining allegations in paragraph 27.

28.     Biosuccess admits that there is a letter dated January 18, 2013 to Ben Chang from Biosuccess and that Ben Chang is Plaintiff's son.  Biosuccess denies the remaining allegations in paragraph 28.

29.     Biosuccess denies the allegations contained in paragraph 29.

30.     Biosuccess is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 30, and therefore

3

1  denies them.

2  ## COUNT I (DECLARATORY JUDGMENT)

3      31.    Biosuccess incorporates by reference and realleges its responses to each

4  and every allegation set forth above, as though fully set forth herein.

5      32.    Biosuccess is without sufficient knowledge or information to form a

6  belief as to the truth of the allegation that "Chang has been unable to communicate

7  with Mr. King concerning the prosecution of the Non-Provisional Applications."

8  Biosuccess denies the remaining allegations in paragraph 32.

9      33.    Biosuccess denies the allegations contained in paragraph 33.

10      34.    Biosuccess admits that the quoted language in paragraph 34 appears in

11  a letter dated January 22, 2013 to Biosuccess from Chang.  Biosuccess denies the

12  remaining allegations in paragraph 34.

13      35.    Biosuccess admits that there is a letter dated January 30, 2013 from Lee

14  Tran & Liang to Chang, through his attorneys.  Biosuccess denies the remaining

15  allegations in paragraph 35.

16      36.    Biosuccess admits that the quoted language in paragraph 36 appears in

17  a letter dated January 30, 2013 from Lee Tran & Liang to Chang, through his

18  attorneys.  Biosuccess denies the remaining allegations in paragraph 36.

19      37.    Biosuccess denies the allegations contained in paragraph 37.

20      38.    Biosuccess denies the allegations contained in paragraph 38.

21      39.    Biosuccess denies the allegations contained in paragraph 39.

22  ## PRAYER FOR RELIEF

23      Biosuccess denies that Chang is entitled to any of the relief requested in his

24  prayer for relief, or any relief whatsoever.  Each and every remaining allegation in

25  Chang's prayer for relief is denied.

26  ## AFFIRMATIVE DEFENSES

27      Without waiving any of the foregoing answers or defenses, Biosuccess asserts

28

4

the following affirmative defenses without prejudice to its position that it does not have the burden of proof to establish these defenses to the extent that the burden on the issue rests with Chang as a matter of law.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

40.    The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Breach of Contract)

41.    Plaintiff's claims should be denied because Plaintiff has breached the express terms of the alleged "October 2006 Agreement."  Plaintiff's breach precludes any award of damages or equitable relief to Plaintiff.

## THIRD AFFIRMATIVE DEFENSE

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

42.    Plaintiff's claims should be denied because Plaintiff breached the implied covenant of good faith and fair dealing that runs with every written contract, and this breach precludes an award of any damages or equitable relief to Plaintiff.

## FOURTH AFFIRMATIVE DEFENSE

### (Prevention of Performance)

43.    Plaintiff breached the alleged "October 2006 Agreement" by failing to timely, fully and adequately perform the terms and conditions therein, among other things, thereby preventing Biosuccess' performance and discharging certain obligations on the part of Biosuccess.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure to Fulfill Conditions Precedent)

44.    Any purported claim for breach of contract is barred to the extent Plaintiff failed to fulfill any contractual conditions precedent.

## SIXTH AFFIRMATIVE DEFENSE

1    **(Negligence or Fault)**

2    45.    Plaintiff's claims are barred, in whole or in part, by Plaintiff's own

3 negligent conduct or because Plaintiff is at fault in bringing about any alleged loss

4 or harm he may have suffered.

5    **SEVENTH AFFIRMATIVE DEFENSE**

6    **(Waiver)**

7    46.    Plaintiff is barred, in whole or in part, from seeking any relief under the

8 doctrine of waiver.

9    **EIGHTH AFFIRMATIVE DEFENSE**

10    **(Equitable Estoppel)**

11    47.    Plaintiff's claims are barred by reason of acts, omissions,

12 representations and courses of conduct by Plaintiff on which Biosuccess was led to

13 rely to its detriment, thereby barring, under the doctrine of equitable estoppel, any

14 claims in the Complaint.

15    **NINTH AFFIRMATIVE DEFENSE**

16    **(Laches)**

17    48.    Plaintiff has unreasonably delayed in bringing this action against

18 Biosuccess. Such delay has resulted in prejudice to Biosuccess such that Plaintiff is

19 barred, in whole or in part, from seeking any relief.

20    **TENTH AFFIRMATIVE DEFENSE**

21    **(Failure to Mitigate Damages)**

22    49.    The claims made in the Complaint are barred, in whole or in part,

23 because of a failure to mitigate damages, if such damages exist.

24    **ELEVENTH AFFIRMATIVE DEFENSE**

25    **(Unclean Hands)**

26    50.    Plaintiff's claims are barred, in whole or in part, by the doctrine of

27 unclean hands.

28

## TWELFTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

51.    Plaintiff is barred, in whole or in part, from seeking any relief by the operation of the applicable statutes of limitations.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Frivolous Action)

52.    Plaintiff is barred, in whole or in part, from seeking any relief because the Complaint is frivolous and was filed in bad faith.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Lack of Irreparable Harm)

53.    Plaintiff's claims for injunctive relief are barred because Plaintiff cannot show that it will suffer any irreparable harm from Biosuccess' actions.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Lack of Subject Matter Jurisdiction)

54.    Plaintiff's claims are barred for lack of subject matter jurisdiction.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Adequacy of Remedy at Law)

55.    The alleged injury or damage suffered by Plaintiff, if any, would be adequately compensated by damages.  Accordingly, Plaintiff has a complete and adequate remedy at law and is not entitled to seek equitable relief.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Acquiescence and Ratification)

56.    Plaintiff's claims are barred, in whole or in part, under the doctrine(s) of acquiescence and/or ratification.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Remote and Speculative Damages)

57.    Plaintiff's claims are barred, in whole or in part, because the damages

1  sought are excessively remote and speculative, and thus not cognizable,

2  compensable or recoverable.

3  ### NINETEENTH AFFIRMATIVE DEFENSE

4  ### (Consent)

5  58.    Plaintiff was fully aware of and consented to all of the alleged acts

6  and/or conduct of Biosuccess.

7  ### TWENTIETH AFFIRMATIVE DEFENSE

8  ### (Justification)

9  59.    Plaintiff's Complaint is barred on the ground that every action taken

10  with respect to the conduct complained of in the Complaint was justified.

11  ### TWENTY-FIRST AFFIRMATIVE DEFENSE

12  ### (Lack of Standing)

13  60.    Plaintiff lacks standing to bring all or a portion of the purported claims

14  and causes of action alleged in the Complaint.

15  ### TWENTY-SECOND AFFIRMATIVE DEFENSE

16  ### (Unjust Enrichment)

17  61.    Plaintiff is barred from asserting any allegation in the Complaint

18  because any recovery by Plaintiff will result in unjust enrichment.

19  ### TWENTY-THIRD AFFIRMATIVE DEFENSE

20  ### (Conduct)

21  62.    Plaintiff's own conduct prevents him from recovering on the purported

22  claims or causes of action set forth in the Complaint.

23  ### TWENTY-FOURTH AFFIRMATIVE DEFENSE

24  ### (Apportionment)

25  63.    The matters complained of in the Complaint were proximately caused,

26  in whole or in part, by the acts or omissions of Plaintiff.  Thus, the liability of

27  Plaintiff should be apportioned according to his respective degree of fault or other

28

**DEFENDANT'S FIRST AMENDED ANSWER
TO COMPLAINT, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS
Case No. CV13-01340 JAK (ANx)**

1 | legal responsibility, and the liability, if any, of Biosuccess should be reduced
2 | accordingly.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Parol Evidence)

64. The parol evidence rule bars oral statements prior to and at the time of any final integrated written agreement.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Lack of Causation)

65. The purported claims and causes of action set forth in the Complaint are barred, in whole or in part, because of lack of causation between Plaintiff's damages, if any, and the conduct of Biosuccess complained of therein.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Accord and Satisfaction)

66. The claims set forth in the Complaint are barred, in whole or in part, by the doctrine of accord and satisfaction.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Performance of Duties)

67. The Complaint and each purported cause of action alleged therein are barred because Biosuccess fully performed any and all contractual and/or other duties it arguably owed to Plaintiff.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Failure to Join a Necessary and Indispensable Party)

68. Plaintiff's Complaint should be dismissed for failure to join a necessary and indispensable party.

### THIRTIETH AFFIRMATIVE DEFENSE

### (Additional Affirmative Defenses)

69. Biosuccess hereby reserves its right to amend this Answer and/or allege

additional affirmative defenses in the event that any such additional affirmative defenses become available to Biosuccess.

## COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendant and Counterclaimant Biosuccess Biotech Co., Ltd. ("Biosuccess"), by and through its attorneys, hereby counterclaims against Plaintiff and Counter-Defendant Richard L. Chang ("Chang" or "Plaintiff"), as follows:

## PARTIES

1.     Biosuccess is a corporation organized under the laws of the Cayman Islands, with its principal place of business at 3333 Bowers Avenue, Suite 201, Santa Clara, California 95054, and has a wholly owned subsidiary registered in the State of Nevada (the "U.S. Subsidiary").

2.     Upon information and belief, Richard L. Chang is a citizen of the State of New Jersey.

## JURISDICTION AND VENUE

3.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1367.

4.     There exists an immediate, actual and justiciable controversy between Biosuccess and Chang within the meaning of 28 U.S.C. § 2201 as evidenced by counter-defendant's filing of the Complaint, and Biosuccess is seeking a declaratory judgment as to the rights and legal relations between the parties.

5.     These Counterclaims arises out of the same transaction and/or occurrence described in Plaintiff's Complaint.

6.     Counter-defendant has consented to personal jurisdiction for this action in this judicial district by filing Plaintiff's Complaint in this action.

7.     Venue over these compulsory counterclaims is proper in this judicial district under 28 U.S.C. § 1391.

10

## GENERAL ALLEGATIONS

**A.    The Patent Assignment Agreements**

8.    Around 2006, Biosuccess entered into negotiations with Dr. Zheng Tao Han ("Dr. Han"), who is not a party to this action, and Plaintiff to discuss the assignment of all rights, title, and interest of certain patent and patent applications, including United States Patent No. 6,063,814 (the "'814 patent").

9.    Upon information and belief, about the time of said negotiations, Dr. Han and Plaintiff were the owners of the rights, title, and interest of the '814 patent, titled "Phorbol Esters as Anti-Neoplastic and White Blood Cell Elevating Agents," relating to the treatment of neoplastic diseases (leukemia).  Upon information and belief, no patent applications claiming priority to the '814 patent were ever filed or maintained.

10.    Upon information and belief, Dr. Han and Plaintiff were also the owners of the rights, title, and interest to certain patent applications worldwide, including Australia Patent Application No. 69687/98, European Patent Application Publication No. 0986378, Japanese Patent Application No. 2001-520656, and World Intellectual Property Organization Application Publication No. WO/1998/046218 (collectively "the International Patent Applications"), all purportedly relating to the treatment of leukemia.

11.    The aforesaid negotiations ultimately led to the signing of an agreement titled, "Assignment of Patent Right & Assignment of Right of Patent Application Agreement," dated October 12, 2006 (referred to herein as "the October 2006 Agreement").  The October 2006 Agreement was executed by Dr. Han and Plaintiff, as the assignors, and by Biosuccess, as the assignee.  The October 2006 Agreement is attached as Exhibit A to Biosuccess' Motion to Dismiss.  Docket No. 13-1.

12.    In 2011, the parties to the October 2006 Agreement executed a *new* version of the assignment agreement (referred to herein as "the Amendment").

11

1  Rather than creating a document with the changes, the parties agreed to simply edit

2  the existing October 2006 Agreement and re-sign this new agreement.  The

3  Amendment was purposely back-dated by the parties to August 30, 2006.  A copy of

4  the Amendment is attached as Exhibit A ("Exh. A") to Biosuccess' Answer.  The

5  October 2006 Agreement and the Amendment are hereinafter collectively referred to

6  as the "Assignment Agreement."

7     13.  The Amendment, which was executed in 2011, but back-dated to

8  August 2006, is the controlling version of the assignment agreement between the

9  parties.  This resulted in novation of the contractual obligations between Dr. Han,

10  Plaintiff and Biosuccess.

11     14.  The terms and conditions of the Amendment were basically the same as

12  the October 2006 Agreement, except for several important differences relating to the

13  timing of payments made to the assignors in Section 3.1(a).  *See* Exh. A at 2.

14     15.  According to the Assignment Agreement, the assignors assigned to

15  Biosuccess all rights, interest and know-how relating to the use of phorbol esters for

16  treating patients for neoplastic diseases (leukemia) and for increasing white blood

17  cell counts under the '814 patent and the International Patent Applications, and for

18  treating HIV/AIDS under pending patent applications.  *See* Exh. A at 2-3.  In

19  consideration of the assignment, Biosuccess agreed to pay to the assignors certain

20  reimbursement, expense and landmark payments, and a total of 36% of the shares of

21  Biosuccess (18% to each assignor).  *See* Exh. A at Sections 3.1 and 3.2.

22     16.  Section 3.2(b) of the October 2006 Agreement provided that Chang

23  was required to take the position of Biosuccess' Chief Technology Officer ("CTO")

24  companywide in consideration of a consulting fee of "US$250,000 annually to be

25  paid evenly on quarterly basis."  *See* Docket No. 13-1 (Exh. A).  Section 3.2(b) of

26  the Amendment provided that Chang was required to take the position of

27  Biosuccess' Chief Science Officer ("CSO") at its headquarters in consideration of a

28

12

consulting fee "of at least US$250,000 annually or market compatible compensation." *See* Exh. A at 3.

17.     In the Assignment Agreement, the assignors expressly agreed that any subsequent patent applications relating to phorbol esters for treating patients for other diseases were the rights and interest of Biosuccess, and any subsequently developed know-how developed would also be the rights and interest of Biosuccess. *See* Exh. A at Sections 11.1 and 11.2.

**B.     Chang's Representations While Negotiating the October 2006 Agreement**

18.     In 2006, during the negotiation of the assignment, Chang intentionally concealed the fact that all of the International Patent Applications had expired, lapsed, or been abandoned due to lack of maintenance, and could not be prosecuted into patents in their respective nations or territories.

19.     Upon information and belief, Chang was in charge of the filing and maintenance of the International Patent Applications for the assignors, and Dr. Han was unaware of the true status of the International Patent Applications.

20.     During the negotiation of the assignment, Biosuccess relied on Chang's representation of the viability of the International Patent Applications, especially because no further patent applications could be filed claiming priority to the '814 patent.  Chang had a duty to disclose the true status and condition of the International Patent Applications to Biosuccess, as well as to the co-owner of such applications, Dr. Han.

21.     Chang failed to disclose material facts concerning the true status of the International Patent Applications, specifically that each such application had expired, lapsed, or been abandoned, and could not be revived or reinstated.  Such facts formed a material part of the basis upon which Biosuccess agreed to pay Chang a substantial amount of money, recognize him as an 18% shareholder of Biosuccess, and promise future payments and fees.  The International Patent

13

1   Applications bore directly on the value of the intellectual property rights to be
2   assigned at the time of negotiations.

3          22.     Had Biosuccess known the actual status of the International Patent
4   Applications, it would have agreed to less favorable terms and compensation to
5   Chang.  In essence, no further patent applications could be filed claiming priority to
6   the International Patent Applications, and no patents would ever have issued from
7   the International Patent Applications.

8          23.     Around 2006, Chang recommended that his son, Ben Chang, be
9   appointed as the operating officer of the U.S. Subsidiary, whose job duties included
10  administering and maintaining Biosuccess' patent applications, including the
11  International Patent Applications.

12         24.     Chang and his son continuously failed to disclose the true status of the
13  International Patent Applications to the Board of Directors and other principals of
14  Biosuccess after the execution of the October 2006 Agreement.  The Board of
15  Directors and other major shareholders of Biosuccess continued to rely upon and
16  entrusted Chang and his son to manage the organization's patent applications.

17         25.     Since the execution of the October 2006 Agreement, Biosuccess has
18  invested hundreds of thousands of dollars to pursue the development of specific
19  treatments and clinical trials related to the '814 patent with notable success.  Phase
20  II clinical trials are ongoing and being conducted by the U.S. Subsidiary pursuant to
21  the regulations of the United States Food and Drug Administration.

22         26.     The value of Biosuccess' innovative leukemia treatment has been
23  substantially reduced as a result of the expiration, abandonment, or lapse of the
24  International Patent Applications since Biosuccess could no longer obtain the
25  exclusive rights in their respective countries or territories.

26         27.     Biosuccess diligently performed its obligations to the assignors
27  pursuant to the Assignment Agreement, to wit: Biosuccess has paid hundreds of
28

14

**DEFENDANT'S FIRST AMENDED ANSWER
TO COMPLAINT, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS
Case No. CV13-01340 JAK (ANx)**

1   thousands of dollars to Chang; Biosuccess recognized Chang as an 18% shareholder

2   of Biosuccess; Chang was also appointed to Biosuccess' Board of Directors and

3   participated in all important decisions concerning the organization's affairs; and

4   Chang was appointed as the CTO/CSO.

5       28.     Chang, on the other hand, has made no or little contribution to the

6   development of the treatments and clinical trials for leukemia, HIV/AIDS or other

7   diseases, and has failed to perform any meaningful work as Biosuccess' CTO and

8   CSO, respectively.

9   **C.   Chang's Egregious and Reckless Actions Towards Biosuccess**

10      29.     Around 2012, Chang, with the help of his son Ben Chang, then

11  operating officer of the U.S. Subsidiary, attempted to usurp control of the

12  organization through unethical and outrageous behavior and directly competed with

13  the interests of Biosuccess.

14      30.     Chang was engaged in spreading untrue and misleading statements to

15  the employees of the U.S. Subsidiary regarding his control and influence within the

16  organization, and disclosed confidential business information to others, including

17  the company's payroll information.

18      31.     Chang and his son made repeated attempts to induce Dr. Han, who had

19  been faithfully and diligently performing his research duties for Biosuccess pursuant

20  to the Assignment Agreement, to take his research and data and defect with them to

21  outside investors, by offering Dr. Han millions of dollars in return.  Dr. Han rejected

22  Chang's offers.

23      32.     At the knowledge or instruction of Plaintiff, Chang's son caused

24  himself to be registered as a managing member of the U.S. Subsidiary without

25  approval by Biosuccess, disseminated false and misleading statements to other

26  employees of the U.S. Subsidiary concerning Plaintiff's power, misappropriated

27  company fund for personal use, and falsified information on documents.

28

15

33.   In 2012, Biosuccess discovered for the first time that the International Patent Applications had all expired, lapsed or been abandoned before the signing of the October 2006 Agreement and could not be further prosecuted or reinstated.

34.   On or around January 17, 2013, the CEO and Chairman of Biosuccess, Fred Wu, announced a restructuring of the management in response to the breach of fiduciary duties by Chang and his son.  Chang's appointment as the CTO/CSO of Biosuccess and his son's employment as the operating officer of the U.S. Subsidiary were terminated as part of the restructuring effort.

35.   On January 22, 2013, in retaliation to the organizational restructuring initiated by Mr. Wu, Chang sent Biosuccess a notice of termination of the Assignment Agreement allegedly, in part, by reason of Biosuccess' breach of the payment obligations under the Assignment Agreement.

36.   Dr. Han did not participate in any of Chang's misconduct or in Chang's notice of termination.

## COUNT I

### (Declaratory Relief on Written Contract)

37.   Biosuccess incorporates the paragraphs above of its Counterclaim as if fully set forth herein.

38.   An actual controversy has arisen and now exists between Biosuccess and Chang regarding their respective rights and obligations under the Assignment Agreement, as evidenced by counter-defendant's filing of his Complaint.

39.   The controlling version of the Assignment Agreement is the Amendment, which was executed in 2011 and back-dated to August 30, 2006; however, Chang's Complaint appears to contend that the October 2006 Agreement is the controlling version.  The Amendment is a valid, enforceable contract, and Biosuccess has substantially performed each and every term and condition set forth therein or otherwise was excused from performance by virtue of Chang's conduct.

16

40.     Additionally, the assignment of patent and patent applications granted under the Assignment Agreement was an automatic or absolute assignment, and not an assignment with conditions subsequent.  Chang's Complaint appears to suggest that the Assignment Agreement can be terminated by him, without joining Dr. Han, by reason of certain alleged non-payment seven years after the execution thereof.

41.     Biosuccess has diligently performed its obligations under the Assignment Agreement.  Even if Biosuccess had indeed stopped paying Chang since January 2013 after his breach of the Assignment Agreement and breach of his fiduciary duties to Biosuccess, Chang should have no right to terminate or rescind the assignment.  The proper relief for Chang to seek should be monetary damages.

42.     Biosuccess has invested hundreds of thousands of dollars and resources in the development and clinical trials of the treatments of several diseases in reliance on the validity of the assignment.  To interpret that the Assignment Agreement could be terminated by Chang due to an alleged non-performance of a condition subsequent would be extremely unjust and inequitable to Biosuccess.

43.     Biosuccess seeks a judicial determination of its rights and duties under the Assignment Agreement and declaration that: (i) the Amendment is the controlling version of the Assignment Agreement; and (ii) the assignment of patent and patent applications contemplated in the Assignment Agreement is an automatic and absolute assignment and cannot be terminated or rescinded by Chang.  A judicial declaration is necessary and appropriate at this time under the circumstances herein.

## COUNT II

### (Breach of Contract – Failure to Fulfill Duties as the CTO/CSO)

44.     Biosuccess incorporates the paragraphs above of its Counterclaim as if fully set forth herein.

45.     Section 3.2(b) of the October 2006 Agreement required Chang to take

17

the position of Biosuccess' CTO companywide in consideration of a $250,000 annual consulting fee. *See* Docket No. 13-1 (Exh. A). Section 3.2(b) of the Amendment required Chang to take the position of Biosuccess' CSO at its headquarters in consideration of a consulting fee "of at least US$250,000 annually or market compatible compensation." Exh. A.

46.    Chang failed to perform his duties as Biosuccess' CTO and CSO, respectively, either at its headquarters or any other location, including making any meaningful contribution to the development of the treatments and clinical trials for leukemia, HIV/AIDS or other diseases.

47.    Biosuccess complied with the contract's terms. To wit, it has fulfilled all duties, obligations and conditions precedent with regard to the Assignment Agreement.

48.    As set forth above, Chang has substantially and materially breached the terms of the Assignment Agreement by failing to fulfill his role as the CTO/CSO.

49.    Plaintiff breached the contract's implied covenant of good faith and fair dealing by attempting to evade the spirit of the bargain, utilizing subterfuges and inaction to evade his obligations, and willfully rendering imperfect performance.

50.    Despite demand, Chang has failed and refused to remedy his breach of the Assignment Agreement.

51.    Biosuccess has suffered and will continue to suffer substantial damages as a result of Chang's breach of the Assignment Agreement; and, Biosuccess has been damaged in an amount to be determined at trial.

52.    Biosuccess is entitled to a judicial declaration that Chang failed to fulfill his duties under the Assignment Agreement to act as the CTO/CSO, resulting in any of Biosuccess' alleged failure to comply with any alleged obligations under the Assignment Agreement excused by Plaintiff's own breach of that agreement; and that no additional compensation for consultancy services pursuant to Section

DEFENDANT'S FIRST AMENDED ANSWER
TO COMPLAINT, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS
Case No. CV13-01340 JAK (ANx)

3.2(b) is owed to Chang.

## COUNT III

### (Breach of Contract – Assignment of the International Patent Applications)

53.     Biosuccess incorporates the paragraphs above of its Counterclaim as if fully set forth herein.

54.     As part of the large consideration paid to Chang, Section 1.3 of the Assignment Agreement required the assignment of the International Patent Applications to Biosuccess.  Biosuccess agreed to such consideration as set forth in the Assignment Agreement on the assumption that the International Patent Applications were viable, *i.e.*, that such applications were pending and could be used as basis for obtaining patent rights outside the United States.

55.     Chang failed to disclose the true status of the International Patent Applications before the execution of the October 2006 Agreement, and with his son's help, continuously failed to disclose the true status of the International Patent Applications to the Board of Directors and other principals of Biosuccess after the execution of the October 2006 Agreement.  The Board of Directors and other major shareholders of Biosuccess continued to rely upon and entrusted Chang and his son to manage the organization's patent applications.

56.     In 2012, Biosuccess discovered for the first time that the International Patent Applications had all expired, lapsed or been abandoned before the signing of the October 2006 Agreement and could not be further prosecuted or reinstated.

57.     Biosuccess complied with the contract's terms.  To wit, it has fulfilled all duties, obligations and conditions precedent with regard to the Assignment Agreement.

58.     As set forth above, Chang has substantially and materially breached the terms of the Assignment Agreement by failing to assign viable International Patent Applications and by concealing the true status of such applications.

19

1      59.     Plaintiff breached the contract's implied covenant of good faith and fair

2  dealing by attempting to evade the spirit of the bargain, utilizing subterfuges and

3  inaction to evade his obligations, and willfully rendering imperfect performance.

4      60.     Biosuccess has sustained irrevocable damages in that its innovative

5  treatment of leukemia cannot be properly protected outside the United States.

6      61.     Biosuccess has suffered and will continue to suffer substantial damages

7  as a result of Chang's breach of the Assignment Agreement; and, Biosuccess has

8  been damaged in an amount to be determined at trial.

9                                  **COUNT IV**

10                                  **(Fraud)**

11     62.     Biosuccess incorporates the paragraphs above of its Counterclaim as if

12  fully set forth herein.

13     63.     Chang knowingly misrepresented and concealed the true status of the

14  International Patent Applications during negotiations of the assignment, and

15  continued to conceal the true status of the International Patent Applications after

16  execution of the Assignment Agreement.  Specifically, no further patent applications

17  could be filed claiming priority to the International Patent Applications, and no

18  patents would have ever issued from the International Patent Applications because

19  the International Patent Applications had expired, lapsed or been abandoned and

20  could not be reinstated.

21     64.     Chang's representations were material in that Biosuccess would not

22  have entered into the Assignment Agreement with such favorable terms to Chang,

23  including issuing 18% of company shares to Chang, appointing Chang to the Board

24  of Directors, and agreeing to, among other things, pay compensation and landmark

25  payments, had it known the truth.  Chang concealed these omissions in order to

26  deceive Biosuccess into believing it was receiving viable patent applications for

27  enforcement outside the United States and to induce Biosuccess into granting him

28

**DEFENDANT'S FIRST AMENDED ANSWER
TO COMPLAINT, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS
Case No. CV13-01340 JAK (ANx)**

1    more favorable terms under the Assignment Agreement.

2        65.    The representations made by Chang were made with knowledge that

3    they were false, conscious ignorance of the truth, or recklessness as to whether the

4    representations were true or false.

5        66.    The representations made by Chang were made with the intent of

6    misleading Biosuccess into relying on them and with the intent of inducing

7    Biosuccess to execute the Assignment Agreement on terms more favorable to Chang

8    than would have otherwise occurred.

9        67.    Biosuccess relied on the above-described fraudulent misrepresentations

10   made by Chang.  Their reliance was justifiable in that Chang and other members of

11   Biosuccess' Board of Directors had known one another for over 5 years before the

12   October 2006 Agreement was negotiated, and had long standing personal and

13   business relationships.

14       68.    Biosuccess has sustained irrevocable damages in that its innovative

15   treatment of leukemia cannot be properly protected outside the United States.

16       69.    The above-described damages suffered by Biosuccess are the

17   proximate result of Chang's above-described fraudulent material misrepresentations

18   and Biosuccess' justifiable reliance thereon; and, Biosuccess has been damaged in

19   an amount to be determined at trial.

20                              **COUNT V**

21                       **(Negligent Misrepresentation)**

22       70.    Biosuccess incorporates the paragraphs above of its Counterclaim as if

23   fully set forth herein.

24       71.    Chang made the above-described misrepresentation of material facts.

25       72.    Chang made the misrepresentations under circumstances in which

26   Chang had a duty to know and to disclose their falsity.

27       73.    Chang made the misrepresentations with reckless disregard which led

28

                              21
                                        **DEFENDANT'S FIRST AMENDED ANSWER**
                                        **TO COMPLAINT, AFFIRMATIVE DEFENSES**
                                        **AND COUNTERCLAIMS**
                                        **Case No. CV13-01340 JAK (ANx)**

1  Biosuccess into executing the Assignment Agreement.

2      74.     Chang's misrepresentations resulted in injury to Biosuccess who acted

3  in justifiable reliance on the misrepresentations.

4      75.     The above-described damages suffered by Biosuccess are the

5  proximate result of Chang's above-described wrongful conduct and Biosuccess'

6  justifiable reliance thereon; and, Biosuccess has been damaged in an amount to be

7  determined at trial.

8                          **COUNT VI**

9                     **(Unjust Enrichment)**

10     76.     Biosuccess incorporates the paragraphs above of its Counterclaim as if

11  fully set forth herein.

12     77.     In providing to Chang more than adequate consideration in the form of,

13  among other things, past and future monetary compensation and shares of

14  Biosuccess stock, Biosuccess conferred a benefit upon Chang, the value of which

15  greatly exceeds the value of the intellectual property rights actually assigned to

16  Biosuccess.  In addition Chang obtained benefits by his inclusion in the

17  management of Biosuccess by his appointment to the Board of Directors.  Chang

18  has knowledge of, and has voluntarily accepted and retained, all such benefits.

19     78.     The circumstances are such that it would be unjust and inequitable for

20  Chang to retain such benefits without paying the value thereof to Biosuccess in an

21  amount to be determined at trial.

22                          **COUNT VII**

23                   **(Breach of Fiduciary Duty)**

24     79.     Biosuccess incorporates the paragraphs above of its Counterclaim as if

25  fully set forth herein.

26     80.     During the relevant times, Chang was a shareholder, a key officer, and

27  a member of the Board of Directors of Biosuccess.  By virtue of Chang's status with

28

**DEFENDANT'S FIRST AMENDED ANSWER
TO COMPLAINT, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS
Case No. CV13-01340 JAK (ANx)**

1  Biosuccess, he owed Biosuccess a fiduciary duty.  This duty includes, among other
2  things, the responsibility to properly manage the corporation, exercise reasonable
3  skill and care in such management, account for its funds, and not to compete with
4  Biosuccess' business or interests.

5          81.     Chang breached those fiduciary duties by, among other things, the acts,
6  errors and omissions set forth above.  As one example, in direct competition with
7  and against Biosuccess' interests, Chang attempted to lure Dr. Han to leave
8  Biosuccess and take his research, data, and know-how, and defect with Chang to
9  outside investors by offering Dr. Han millions of dollars in return.

10         82.     As a direct and proximate result of Chang's breach of fiduciary duties,
11  Biosuccess suffered substantial damages in an amount to be proven at trial,
12  including attorneys' fees and costs of suit.

13                        **BIOSUCCESS' PRAYER FOR RELIEF**

14         WHEREFORE, Biosuccess respectfully request that the Court enter
15  judgment:

16         A.     In favor of Biosuccess and against Chang.

17         B.     Dismissing Chang's Complaint with prejudice.

18         C.     As for Count I, that the Court make a determination and declare that:

19                (i)     The Amendment is the controlling version of the Assignment
20                        Agreement; and

21                (ii)    The assignment of patent and patent applications contemplated in
22                        the Assignment Agreement is an automatic and absolute
23                        assignment and cannot be terminated or rescinded by Chang.

24         D.     As for Count II, that the Court make a determination and declare that:

25                (i)     Chang failed to fulfill his duties under the Assignment
26                        Agreement to act as the /CSO and any of Biosuccess' alleged
27                        failure to comply with any alleged obligations under the

28

**DEFENDANT'S FIRST AMENDED ANSWER
TO COMPLAINT, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS
Case No. CV13-01340 JAK (ANx)**

1                 Assignment Agreement excused by Plaintiff's own breach of that

2                 agreement;

3            (ii)     that no additional compensation for consultancy services

4                 pursuant to Section 3.2(b) is owed to Chang.

5      E.     As to all Counts, for general, specific, and consequential damages

6 according to proof at trial.

7      F.     As to all Counts, for exemplary and punitive damages in a sum

8 according to proof at trial.

9      G.     As to all Counts, injunctive relief barring Chang from attempting to

10 rescind or terminate the Assignment Agreement.

11      H.     As to all Counts, a proportionated or equitable reduction to Chang of

12 both the shares of stock issued and of Biosuccess' past and future payment

13 obligations to reflect the reasonable value of the intellectual property rights actually

14 assigned to Biosuccess.

15      I.     As to all Counts, for the costs of suit and reasonable attorneys' fees.

16      J.     As to all Counts, for any other and further relief as the Court deems just

17 and proper in this case.

18 **<u>DEMAND FOR A JURY TRIAL</u>**

19         Defendant and counter-claimant Biosuccess hereby demands a jury trial on all

20 issues so triable.

21

22 Dated: July 31, 2013               **LEE TRAN & LIANG APLC**

23

24                    By: _____

25                      Enoch H. Liang

                       Attorneys for Defendant

                       BIOSUCCESS BIOTECH, CO., LTD.

26

27

28

24

# EXHIBIT  A

## Assignment of Patent Right & Assignment of Right of Patent Application Agreement

Agreement was made this 30th day of August, 2006, by and between Richard L. Chang of 107 Konner Ave. Pine Brook, New Jersey, United States of America and Zheng Tao Han of 4 Dongming Road, Zheng Zhou, Hunan, China ( hereinafter jointly referred to as ASSIGNOR" ), and Biosuccess Biotech Co., Ltd, a company organized and existing under the laws of the Cayman Islands, registered at P.O.Box 30592-SMB Cayside, 2[nd] Floor Harbour Drive, George Town, Grand Cayman, Cayman Islands, B.W.I. having its central operations office located at Room 904, 9[th] floor, No.147, Sec. 2, Chien-Kuo North Road., Taipei, Taiwan 10460, R.O.C ( hereinafter referred to as "ASSIGNEE").

### WITNESSETH:

WHEREAS, ASSIGNOR is the owner of the patents and patent applications as hereinafter defined relating to inter alia the use of phorbol esters for treating patients for neoplastic diseases ( leukemia), for increasing white blood cell counts and for HIV/AIDS;
WHEREAS, ASSIGNOR do hereby assign all my/our rights and interests of under the aforesaid patent applications and patents and the Know-How relating thereto for use in relations treating patients for elevation of white blood cell counts, anti-neoplastic and HIV/AIDS;
WHEREAS, ASSIGNEE wishes to obtain the exclusive license in all Territories of the patents and patent application, for treating patients with phorbol esters for elevation of white blood cell counts, anti-neoplastic and for HIV/AIDS, under said patent applications and patents and the Know-How relating thereto;
NOW, THEREFORE, in consideration of the premises and of the mutual covenants and obligations herein contained, the parties hereto agree as follows:

### ARTICLE 1 – Definitions:

1.1   "Know-How" shall mean all technology, formula, trade secrets, technical, toxicological, pharmacological, scientific and/or medical data and any other information or experience ( including, but not limited to , pre-clinical or clinical data), owned, controlled, possessed or received by ASSIGNOR as of the date of execution of this Agreement specifically relating to the Product and which it is at liberty to disclose, including, but not limited to, such data or information which will allow ASSIGNEE to efficiently manufacture, use or sell ASSIGNED Product.

1.2   " ASSIGNED Product" shall mean esters of phorbol, pharmaceutically acceptable acid addition salts thereof and any finished dosage form thereof when

Z. 种, H.

EXHIBIT A
PAGE 000025

Ke

manufactured, used, offered for sale or sold or elevation of white blood cell counts, anti-neoplastic ( leukemia ) and HIV/AIDS.

1.3    "Patent Rights" shall mean all of ASSIGNOR's right, title and interest in and to the U.S. Patent No. 6063814 dated 16 May 2000 and patent applications, including AU6968798A1, EP0986378A4, JP2001520656T2 and WO9846218A1, and any division, extension, reissue or reexamination thereof, together with

1.4    "Right of Patent Application" shall mean the new filing of US patent application for HIV/AIDS ( U.S. patent application _____ filed on _____ entitled _____ . And subsequent patent application rights to be filed to other countries other than U.S..

### Articles 2 – Grant:

2.1    ASSIGNOR represents and warrants that it is the owner of the Patent Rights and the Know-How, which does not infringe any patent or other rights of any third party;

2.2    In the event that ASSIGNOR shall obtain a patent on the Know-How, ASSIGNOR shall grant to ASSIGNEE free of charge, consistent with the terms of this Agreement, to practice the Know-How in conjunction with the ASSIGNED Product, and to make, have made, use and sell Assigned Product under such patent.

### Article 3 – Terms & Conditions

3.1    ASSIGNEE agrees to the following basic compensations and incentives:
    a. Total milestone payment: US$2 million is to be paid in the following manners:
       (1) One million US dollar: when the clinical trial phase II for leukemia is completed in the US.
       (2) One million US dollar: when the FDA approves the NDA for leukemia, normally is the time when the clinical trials phase III for leukemia is completed.
    b. Eligible to own 36% of the total ASSOGNEE's stock shares at the time the company is established.

3.2    The ASSIGNEE also agrees the following compensations to be paid to the ASSIGNOR:
    a. Additional Incentives
       A US$1 million dollar is to be granted to the CONSIGNOR after each disease

2 . 7



EXHIBIT A
PAGE 000026

indication other than leukemia, if the clinical trial is completed and approved by FDA respectively in the U.S..

b. Consulting fees: At least US$250,000 annually or market compatible compensation to be paid and the CONSIGNOR is required to take on the following company headquarter positions namely, which could be subject to change as company grows and market evolves:

   Professor Richard L. Chang – CSO

   Professor Zheng Tao Han – CRO & CTO

c. Travel expenses related to conduct consultancy services will be at ASSIGNEE's expenses, complying with ASSIGNEE's travel expenses procedure and policy being set-up.

3.3   ASSIGNEE shall provide ASSIGNOR with detailed and complete written report of the progress and results of the development of the ASSIGNED Product on a semi-annual basis. Additionally, meetings shall be held at least once every three months.

3.4   ASSIGNOR has rights to conduct auditing over ASSIGNEE's accounting statement at least on semi-annual basis with prior notice to ASSIGNEE, which can be done through outside CPA film after coordinating with ASSIGNEE in advance.

### Article 4 – Infringement and Indemnifications:

4.1   The parties shall promptly notify each other of a challenge to the validity or enforceability of the Patent Rights or Know-How. In the event of a lawsuit relating to the validity or enforceability of the Patent Rights or Know-How, ASSIGNEE shall have the opportunity to control the defense thereof on behalf of both parties. ASSIGNOR agrees to cooperate with ASSIGNEE and to execute any documents relating to such action.

4.2   In the event that in the exercise of rights granted under this agreement, ASSIGNEE is threaten with or subject to a suit for infringement of a patent owned by a third party; ASSIGNEE will advise ASSIGNOR and consult in good faith with ASSIGNOR as to whether and how to respond. Subject to reimbursement for its costs, ASSIGNOR shall provide reasonable assistance to ASSIGNEE in the event that either both of them is subject to such suit. ASSIGNOR shall have no obligation to ASSIGNEE with respect to any liability that either or both of them shall incur as a result of any such suit or threat.

4.3   ASSIGNEE agrees that there are no any challenges or procures or assists others in a challenge to the validity of the assigned Patent rights.

Z. T

4.4 ASSIGNEE shall defend, indemnify and hold harmless ASSIGNOR from and against any and all claims, demands losses and expenses of any nature, including attorney's fees, including but not limited to, death, personal injury, illness, property damage or product liability, arising from or in connection with any of the following:

(a) The use by ASSIGNEE or affiliates of any method or process covered by the Patent Rights or disclosed in the Know-How;

(b) Any use, sale or other disposition of Product by ASSIGNEE, or any statement, representation or warranty of ASSIGNEE with respect thereof.

The indemnification set forth herein shall not be applicable in the event that the claim, demand or lawsuit in question arises from the negligence or willful or improper act, of ASSIGNOR.

4.5 The ASSIGNEE shall obtain and maintain in force product liability insurance for any and all countries wherein any Assigned Product shall be manufactured, sold, distributed or advertised and shall name ASSIGNOR as one of the insured.

## Article 5 – Termination:

5.1 The Agreement shall be considered to be completed in terms of assignment of patent right and right of patent application to the ASSIGNEE as soon as the fulfillment of Article 3.1a and 3.1.b by the ASSIGNEE, unless terminated sooner pursuant to the provisions of this Agreement.

5.2 Upon termination under this Article 5.2, if it should occur for any causes, as of the effective date of the termination and, from and after said effective date of termination under Article 4.2, ASSIGNEE shall have no further right to use any Know-How imparted to it by ASSIGNOR hereunder. In the event of such termination, ASSIGNEE shall have no further obligations to ASSIGNOR, except for those set out in Article 4.4 ( which is not terminable ) and to provide ASSIGNOR promptly with all data relating to the Assigned Product in its possession at the date of such termination. ASSIGNOR shall have the right to use such data provided however it chooses, including the right to supply same to a subsequent assignee. In the event that one or more applications for drug investigation or marketing approval has been filed by or granted to ASSIGNEE thereof as of

EXHIBIT A
PAGE 000028

the date of termination under this Article 5.2, ASSIGNEE shall assign or procure the assignment of such application or approval to ASSIGNOR free of charge.

5.3 In the event of a breach of, of default under, this Agreement by ASSIGNEE is not cured within sixty ( 60 ) days after the receipt of written notice thereof from ASSIGNOR, ASSIGNOR shall be entitled ( without prejudice to any of its other rights) to terminate this Agreement by giving notice to take effect immediately.

5.4 ASSIGNOR shall have the right to terminate this agreement forthwith in the event of ASSIGNEE's filing the bankruptcy.

5.5 The right to terminate this Agreement pursuant to this Article 5 shall not be affected in any way by a waiver of, or failure to take action with respect to, any previous breach or default. Termination of this Agreement shall not affect the rights and/or obligations of the parties accrued prior to termination.

Article 6 – Know-How, Information, Improvements and Confidentially:

6.1 ASSIGNOR agrees that it shall:
a) Disclose to any of the Know-How in its possession or provided to it under this Agreement to the ASSIGNEE without any reservation and
b) take such precautions as it normally takes with its own confidential and proprietary information to prevent disclosure to third parties ( except Affiliates and consultants as above).

6.2 The obligation of ASSIGNOR under Article 5.2 shall not, in any event, apply to any information which it can show:
a) at the time of disclosure is, or thereafter becomes, available to the public in published literature or otherwise through no fault of ASSIGNOR; or
b) was known to, or otherwise in the possession of, ASSIGNEE or Affiliates, or consultants of ASSIGNEE prior to the receipt of such information from ASSIGNOR; or,
c) is obtained by ASSIGNEE from a source other than ASSIGNOR and other than one who would be breaching a commitment or confidentiality to ASSIGNOR by disclosing such information to ASSIGNEE.

Article 7 – Patent Maintenance and Extension:

2.7

EXHIBIT A
PAGE 000029

7.1    ASSIGNEE shall bear the cost of obtaining patents on the patent applications set out in Article 1.5 and attends to and bears the cost of maintaining patent rights throughout the life of said rights in USA, and other countries where applicable.

7.2    Whenever it is possible and there is a reasonable prospect of success, ASSIGNEE shall apply for extension of the Patent Rights within any period prescribed for such application. It would be the responsibility of ASSIGNEE to work with its agent with respect to such filing and prosecution of action and agrees to cooperate with said agent in providing any information required under any relevant laws, and any regulations promulgated thereunder. All expenses of such proceedings shall be borne by ASSIGNEE.

7.3    The proprietary right to any improvements and modifications on the patents licensed hereby, including but not limited to patent, copyright, trade secrets and other related rights, shall be vested in ASSIGNEE.

## Article 8 - Publicity

8.1    ASSIGNOR and ASSIGNEE agree not to issue any press release or other public statement disclosing the existence of or relating to this Agreement without the prior written consent of the other party, provided, however, that neither party hereto shall be prevented from complying with any duty of disclosure or it may have pursuant to law.

## Article 9 – Notices:

9.1    Any notice or communication required or permitted to be given or made under this Agreement by one of the parties hereto the other shall be in writing and shall be deemed to have been sufficiently given or made to all purposes when mailed by certified mail, return receipt requested, postage prepaid, addressed to such other party at its respective address as follows:

TO ASSIGNOR:
Attention: Richard L Chang & Zhang Tao Han
TO ASSIGNEE:
Attention: Fred Chi-Ming Wu, Biosuccess Biotech Co., Ltd.

## Article 10 – Force Majeure

10.1   Neither party shall be responsible or liable to the other hereunder for failure or delay in performance of this Agreement due to any war, fire, accident or other casualty, or any labor disturbance or act of God or the public enemy, or any other, whether similar or dissimilar to the foregoing, contingency beyond such party's reasonable control. In addition, in the event of the eliminate, cure and overcome any of such causes and resume performance of its obligations as soon as reasonable possible under the circumstances. If either party finds that it is subject to conditions as set out in this article that may delay or preclude its performance of any of its obligations under this agreement it shall promptly advise the other thereof.

## Article 11 – Assignment and Transfer

11.1   Any subsequent applications of phorbol esters for treating patients for other diseases by the ASSIGNOR would be considered to be the rights of the ASSIGNEE. And any subsequent patents and patent applications granted for ASSIGNOR for other diseases or indications would also be considered to the right and interests of and the ownership of the ASSIGNEE.

11.2   Any " Know-How" developed subsequently relating thereafter the Agreements is in effect will also be considered to be the right and interests of ASSIGNEE.

## Article 12 – Severability

12.1   If any one or more of the provisions of this Agreement shall, for any reason be held by any court, tribunal or other authority having jurisdiction over either of the parties hereto or this Agreement, be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remaining provisions here shall not in any way be affected or impaired thereby. In the event any provision shall be held invalid, illegal or unenforceable, the parties shall use their best efforts to substitute a valid, legal and enforceable provision, which, insofar as practical, implements the intent of the parties and the purposes hereof.

## Article 13 – Governing Law and Jurisdictions:

13.1   This Agreement shall be construed and the rights of the parties governed in accordance with the laws of the state of New Jersey, USA, excluding its rules relating to conflict of laws.

### Article 14 – Entire Agreement:

14.1   This Agreement constitutes the entire understanding of the parties with respect to the subject matter contained herein and may not be modified or amended except as expressly stated herein or by a written agreement duly executed by both parties hereto.

### Article 15 – Miscellaneous Provisions:

15.1   The title of the Article of this Agreement is for general information and reference only and this Agreement shall not be construed by reference to such titles.

15.2   It is expressly agreed that this agreement does not authorize either party to act or hold itself out or be held out as the agent of the other.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate by their duly authorized representatives as of the day, month and year first above written, each copy of which shall for all purposes be deemed to be an original.

ASSIGNOR: Richard L. Chang            ASSIGNOR: Zheng Tao Han

By: _Richard L. Chang_                By: _Zheng Tao Han_
Title: _C S O_  Date: _8/30/06_       Title:_____ Date: _8/30/06_

ASSIGNEE: Biosuccess Biotech Co., Ltd.

By: Name: Fred Chi-Ming Wu
Title: _CHAIRMAN_    Date: _8/30/2006_
      _& CEO_

EXHIBIT A
PAGE 000032

## PROOF OF SERVICE

**STATE OF CALIFORNIA)**
**COUNTY OF LOS ANGELES)**

      I am employed in the county of Los Angeles State of California.  I am over the age of 18 and not a party to the within action; my business address is: 601 S. Figueroa Street, Suite 3900, Los Angeles, CA 90017.

      On **July 31, 2013**, I served the foregoing document(s) described as:
**DEFENDANT BIOSUCCESS BIOTECH, CO., LTD.'S FIRST AMENDED ANSWER TO PLAINTIFF'S COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**
on the interested parties in this action.

[X]    By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Jeffrey J Zuber<br>Zuber Lawler and Del Duca LLP<br>777 South Figueroa Street 37th Floor<br>Los Angeles, CA 90017-5835<br>Tel: 213-596-5620<br>Fax: 213-596-5621<br>Email: jzuber@zuberlaw.com | *Attorney for Plaintiff, Richard Chang* |

[X]    **BY MAIL** I placed such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

    As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]    **BY ELECTRONIC MAIL** I transmitted the above listed document(s) to the e-mail address set forth above on this date.

Executed on **July 31, 2013**, at Los Angeles, California.

[ ]    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]    (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

  LYNETTE W. SUKSNGUAN
Type or Print Name

                      Signature