1  Jack Russo (Cal. Bar No. 96068)
   Christopher Sargent (Cal. Bar No. 246285)
2  COMPUTERLAW GROUP LLP
   401 Florence Street
3  Palo Alto, CA 94301
   (650) 327-9800
4  (650) 618-1863 fax
   jrusso@computerlaw.com
5  csargent@computerlaw.com

6  Attorneys for Plaintiff
   RICHARD L. CHANG
7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11 **RICHARD L. CHANG,**

12              Plaintiff,                Case No. 2:13-cv-01340-JAK-AN

13        v.                              **DECLARATION OF COUNTER-
                                          DEFENDANT BEN CHANG**
14 **BIOSUCCESS BIOTECH, CO., LTD.,** AND
   **DOES 1 THROUGH 10,**
15
                Defendants.
16

17

18

19

20

21

22

23

24

25

26

27

28

I declare, under penalty of perjury, that the following is true and correct:

1. My name is Ben Chang; I am the son of Richard L. Chang. I have personal knowledge of the facts set forth herein and I could and would testify to the same if called as a witness in this action.

2. I am a counter-defendant in this action pursuant to a set of counterclaims filed against me by Defendant Biosuccess. I am currently the Founder and CEO of Rich Pharmaceuticals, Inc., ("RPI") a public company listed on OTC under the symbol "RCHA". A copy of the last SEC filing made by RPI is attached as **Exhibit 1**.

3. To the best of my knowledge, RPI does not compete with Defendant Biosuccess as the medical indications that RPI is pursuing are entirely distinct from those that were being pursued by Biosuccess. RPI is using different production configurations and combinations, and to my knowledge neither RPI nor Biosuccess has reached any customers with a product.

4. My resume is attached hereto as **Exhibit 2** and it sets forth all of my education and all of my various work experience since graduating from college.

5. My father was the person who invented and who pursued obtaining patent rights in the invention which issued as U.S. Patent #6063814. I know this because my father was very proud of his work and told me about the progress that he had made in the development.

6. I have a specific recollection of Fred Wu being in Fairfield, New Jersey (from Taiwan) on August 15 and 16, 2006 (and his travel and passport records should so reflect this as well). We met together in a conference room at the Hampton Hotel on August 15 and with me, Fred Wu, my mom, my dad, and Dick Salvador present in that conference room, we discussed the terms of my employment and company structure. I specifically remember my mom asking Fred Wu in words or substance "how much money do you have right now in the bank for this Biosuccess project" and I remember Mr. Wu responding that he had over $2 million dollars (U.S.) in the bank for this purpose and that "money was not going to be a problem at all" because of the investors that he was working with. We had lunch at the Charlie Brown's Steak House near the Hampton Hotel that afternoon (of August 15) and my dad reached what became the August 2006 Agreement with Fred Wu. The following evening, my father showed me the

Computerlaw Group LLP
www.computerlaw.com℠

document he received from Mr. Fred Wu and I explained to my father some problems with the document in my view. Specifically, I mentioned the issue of dilution and milestone-based payments, where I would have preferred he sign an agreement protecting his percentage and guaranteeing up-front money. Interestingly, these are both items that were worked into the October 12, 2006 Agreement. A true and correct copy of the August 2006 Agreement is attached as **Exhibit 3**.

7. I was surprised to learn, for the first time in this litigation, that the Defendants were taking the position that the Agreement was never signed in August 2006, but rather that it was signed in 2011 and back-dated to August 2006—this is entirely false based on the knowledge that I have about this and the fact that I was only offered a job with Biosuccess after Richard was in contract with Fred and Biosuccess. Discussion regarding the terms of my employment started in late August and by September or very early October, 2006, I was hired by Fred Wu to become the Chief Financial Officer ("CFO") of Biosuccess, I was told that Biosuccess had recorded or was recording the patent rights that it had obtained from my father and his co-inventor.  It would have made no sense for Biosuccess to hire me if it still did not have the patent rights and if it was still in the process of negotiating those rights.

8. In October 2006, my father told me that he had negotiated an improved agreement with Mr. Fred Wu which was clearer in its expression of the consideration due to him.  As the CFO of Biosuccess, I saw this document soon after it was signed in October 2006 and I affirm this this document too is also entitled "Assignment of Patent Right & Assignment of Patent Application Agreement," a copy of which is attached as **Exhibit 4** (the "Final Agreement").

9. The precise redlined differences between the First Agreement and the Final Agreement are attached as **Exhibit 5** (the "Redlined Changes Document").  One can readily see that we improved the Final Agreement for the advantage of my father and my mother.  Indeed, I remember my father (and mother) being very happy with this revised Agreement and with the expectation that they would be receiving two substantial payments from Biosuccess in late 2006 and early 2007.

10. To my knowledge, there was also a short-form assignment document notarized after the First Agreement and before the Final Agreement was signed and that short-form document was recorded with the U.S. Patent Office (the "PTO"). A copy of that notarized document is attached hereto as **Exhibit 6**.

11. To my knowledge, nothing was ever recorded in the PTO in 2011 after the supposedly new assignment agreement was executed in 2011 (and I hereby affirm that I never saw any such new document in 2011); as my father has also testified, in my view, the "backdating" allegation is simply a fabrication hatched by Defendants in order to seek to avoid the payment obligations which they have to my parents.

12. I only kept the books for U.S. operations. The licensing contract was a Cayman Co. Liability (different books). I was not getting the information needed to be fiscally responsible so I requested removal of the CFO title. There is no transparency in the Biosuccess organization due to Fred Wu. For instance, there were no books for the Cayman entity, at least ones that I never saw (even when I was CFO); no tax returns were ever filed even though I suggested year after year; investors were not given updates to company operations or how their money was spent; no one ever knew how money was spent outside the U.S.; we never knew where money came from or what evaluation was assessed; never knew the corporations account balance in the Cayman account, among other problems. David Chou, Richard Salvador, Richard Chang, and Joseph Huffman can all vouch to the lack of transparency and mismanagement.

13. I know that Mr. Fred Wu has engaged in many falsehoods and I view his false statements, even those made under oath, as simply part of his bad character as he has defrauded me and many others out of money and property. To date, he not only owes me over $419,233 due in unpaid wages, unpaid salary and unpaid employment compensation which remains overdue now for more than a year.

14. I confirm that Professor Richard Chang has assigned certain patent rights to my new company, RPI, but those rights are not conflicting with anything that Biosuccess is actually working on or that it has worked on and I do not believe that Biosuccess can or should seek to block me or RPI from trying to arrive at new medical products that will help save lives in the

United States and abroad and certainly not when neither company has reached any consumers. The foregoing has been true for many months since my separation from Biosuccess as well as since my father's separation and the termination of just about every other employee who knows anything about working in this field.

15. I had an employment agreement with Biosuccess starting in 2007 for which I have not been fully compensated. My full annual salary of $234,000/year was never paid in full from 2007–2012, and I am currently owed an outstanding amount of $419,233.

| **Ben** | **Payroll Due** | **Payroll Paid** | **Accrued Payroll** |
|---|---|---|---|
| 2007 | $234,000 | $148,717 | $85,283 |
| 2008 | $234,000 | $183,871 | $50,129 |
| 2009 | $234,000 | $167,094 | $66,906 |
| 2010 | $234,000 | $154,159 | $79,841 |
| 2011 | $234,000 | $182,609 | $51,391 |
| 2012 | $234,000 | $148,317 | $85,683 |
| Total payroll due | | | **$419,233** |

16. Based on the signature on the declaration he submitted yesterday from Portland, Oregon, and upon further investigation, it is now my understanding that Mr. Han has taken up residence and employment in Portland, Oregon, and that, for this reason, he should be willing to and should be compelled to consent to his joinder as a codefendant in this litigation and certainly, he will have to provide an accounting of all monies received from Mr. Fred Wu or Biosuccess and not shared equally with my husband under the Final Agreement.

17. I am further informed and believe that Biosuccess is no longer a fully functioning company. During my tenure with Biosuccess, I watched the company flounder under the direction of Fred Wu who was incapable of recording and maintaining the company finances, pushing through successful clinical trials, or achieving the company's goals. In six years, between 2006 and 2012, Biosuccess's clinical trials only successfully signed up **one** participant for a Phase II trial. Further, due to Fred Wu's inadequacies, the trials were actually **frozen** for a period of 14 months starting in November, 2011.

1  I declare under penalty of perjury that the foregoing are true and correct of my personal
2  knowledge and that this Declaration was entered into on this  12  day of December 2013, in
3  _Los Angeles_, California.

_(signature)_
Ben Chang