Jack Russo (Cal. Bar No. 96068)
Christopher Sargent (Cal. Bar No. 246285)
ENTREPRENEUR LAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301
(650) 327-9800
(650) 618-1863 fax
jrusso@computerlaw.com
csargent@computerlaw.com

Attorneys for Plaintiff
RICHARD L. CHANG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Richard L. Chang**, <br><br> Plaintiff; <br><br> v. <br><br> **Biosuccess Biotech Co. Ltd.**, <br><br> Defendants. | **Case No. CV13-01340 JAK (ANx)** <br><br> **PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF LARRY STEWART** <br><br> Judge: Hon. John A. Kronstadt <br> Place: Courtroom 750 <br> Date: June 2, 2014 <br> Time: 3:00 p.m. <br><br> Trial: June 17, 2014 |
| **Biosuccess Biotech, Co. Ltd.**, <br><br> Counterclaimant, <br><br> v. <br><br> **Richard L. Chang**, <br><br> Counterclaim Defendants. | |

*Motion in Limine No. 1*                Case No. CV13-01340 JAK (ANx)

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 1 ...................................1

INTRODUCTION ...........................................................................................................1

ARGUMENT .................................................................................................................1

   I.   LEGAL STANDARD FOR THE ADMISSIBILITY OF EXPERT TESTIMONY. ............................................2

II.   MR. STEWART'S OPINIONS ARE NOT SUPPORTED BY RELIABLE METHODOLOGY OR ACCEPTED SCIENTIFIC PRACTICE ....................3

     A.   The Stewart Report Makes Use of Inappropriate Comparisons. ..........3

         i.   Different Compositions. ................................................................4

         ii.   Poor Methods cannot support any opinion .................................4

         iii.   Meaningless comparisons produce meaningless results .............4

     B.   Mr. Stewart's Opinions Regarding The Ink-Aging Process are Wrong. .....................................................................5

     C.   The Stewart Report Fails to Address a Common and Accepted Method for Determining the Date of a Questioned Document. ...............................6

     D.   Stewart Makes Unsubstantiated Statements Reaching Unsupportable Conclusions. ..............................7

III.   MR. STEWART HAS INCORRECTLY APPLIED FLAWED DATA COLLECTION TO FLAWED ANALYSIS IN THIS CASE. ..............9

CONCLUSION ............................................................................................................10

**Entrepreneur Law Group LLP**
www.computerlaw.com℠

## TABLE OF AUTHORITIES

**Cases**

Daubert v. Merrell Dow Pharms.,
    509 U.S. 579, 113 S. Ct. 2786 (1993) .......................................................... Ibid.

Kumho Tire v. Carmichael,
    526 U.S. 137 (1999) ..................................................................................... 2

Luce v. United States.,
    469 U.S. 38, 105 S. Ct. 460 (1984) .............................................................. 2

Ohler v. United States,
    529 U.S. 753, 120 S. Ct. 1851 (2000) .......................................................... 1

Padillas v. Stork-Gamco, Inc.,
    186 F.3d 412 (3d Cir. 1999) ......................................................................... 1

**Statutes**

Fed. R. Evid. 105 ................................................................................................. 1

Fed. R. Evid. 403 ................................................................................................. 8

Fed. R. Evid. 702 ................................................................................ 2, 3, 7, 8, 9

Fed. R. Evid. 702(a) ............................................................................................ 9

Fed. R. Evid. 702(b) ............................................................................................ 7

Fed. R. Evid. 702(c) ............................................................................................ 5

Fed. R. Evid. 702(d) ............................................................................................ 5

# NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 1

PLEASE TAKE NOTICE that as allowed under the Court's Local Rules and scheduled by Docket No. 101, Plaintiff Richard L. Chang moves this Court for an order excluding from trial any and all evidence, reference to, or mention of the expert report prepared by Biosuccess expert Larry Stewart of Stewart Forensic Consultants, LLC, executed on March 7, 2014, and for an order barring his testimony at trial. As authorized by Federal Rule of Evidence 105, Plaintiff respectfully moves this Court *in limine* for an order excluding certain evidence, specifically the "expert" report and all "expert" testimony of Larry Stewart

## INTRODUCTION

Because at most the ink analysis in this case is inconclusive, both experts agree that the data drawn from proper (scientifically supported and accepted) methods concludes only that that August Agreement was not created in the last two years. Plaintiff Richard L. Chang moves to strike the so-called "expert" report of Larry Stewart (the "Stewart Report") submitted in this case by Defendant Biosuccess Biotech, Co., Ltd. ("Biosuccess") and to preclude Mr. Stewart's testimony at the trial in this matter. The Stewart Report and Mr. Stewart's testimony do not meet the standards for admissible expert testimony because they rely on inconsistent and critically flawed methods of data collection, culminating in an opinion that is unsupported by current scientific methodologies and is otherwise irrelevant. See generally, Daubert v. Merrell Dow Pharms., 509 U.S. 579, 113 S. Ct. 2786 (1993).

## ARGUMENT

Even before Daubert, the Court has inherent power to control all proceedings, and Motions *in Limine* are well recognized in practice by case law. Ohler v. United States, 529 US 753, 758, 120 S. Ct. 1851 (2000); Padillas v. Stork–Gamco, Inc. 186 F.3d 412, 417 (3rd Cir. 1999); Luce v. United States, 469 US 38, 41, 105 S. Ct. 460 (1984) (Court's inherent power to manage the course of trials). Additionally, under our Supreme Court's line of cases construing Federal Rules of Evidence 702 and 703,

the District Court judge overseeing a trial performs a gatekeeping function to review proffered expert testimony and opinion, and may restrict unreliable or irrelevant expert opinion from being shown to a jury. See generally, Daubert, 509 U.S. 579, 113 S. Ct. 2786.

## I. LEGAL STANDARD FOR THE ADMISSIBILITY OF EXPERT TESTIMONY.

Federal Rule of Evidence 702 allows the testimony of "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education so long as

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts of data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702 (as amended Apr. 17, 2000) (emphasis added).

In addition to requiring specialized knowledge and being a sufficiently rigorous exercise of that knowledge, admissible expert testimony must serve the purpose of assisting the fact finder's understanding of the facts and evidence. Kumho Tire v. Carmichael, 526 U.S. 137, 152 (1999). Expert testimony contributes observations or analysis that may be beyond the ordinary understanding or experience of the fact finder. Id. at 152. Expert testimony may not go beyond this proper role of offering aid or assistance by instead supplanting, or directing a fact finder on what decision to reach, or invading the province of the judge to determine and instruct the jury on applying the applicable law. Id. at 148–49.

Furthermore, the District Court's determination of whether expert evidence is admissible requires a review of the empirical rigor of the evidence, and in particular considers whether that evidence is "reliable" in the scientific, technical, or otherwise specialized field in which it purports to aid the jury to understand. "The subject of an

*Entrepreneur Law Group LLP*
*www.computerlaw.com*[sm]

expert's testimony must be 'scientific…knowledge.' The adjective 'scientific' implies a grounding in the methods and procedures of science…But, in order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method…In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." Daubert, 509 U.S. at 589–90, 113 S. Ct. at 2800 (internal citations omitted).

The methods and conclusions found in Mr. Stewart's report, to which he is obligated to restrict his testimony at trial, are inadmissible as they do not meet **any** of the admissibility requirements under Rule 702. For this reason, based on the below, Mr. Stewart's report should be ruled inadmissible and Mr. Stewart should be barred from testifying at trial.

## II. MR. STEWART'S OPINIONS ARE NOT SUPPORTED BY RELIABLE METHODOLOGY OR ACCEPTED SCIENTIFIC PRACTICE.

### A. The Stewart Report Makes Use of Inappropriate Comparisons.

The Stewart Report expresses the following:

> 63. Triplicate testing of the ballpoint pen ink found on [the August Agreement] indicated an average level of PE in the blue ballpoint pen ink of 10,000 units.
>
> 64. Next, the ballpoint pen ink found on the known age (September 2006) Document 'C' was tested. This test resulted in an amount of 4,000 units of PE. Additionally, a standard solution of 1.6 parts per million PE was injected into the system resulting in a reading of 8,000 unites of PE. Both of these levels are well below the 10,000 average PE reading for the blue ballpoint pen ink found on Document 'A.'[1]

The analysis compares a document with a known creation date in September 2006 (whose ink Mr. Stewart claims is old and dried because it has a small level of

---

[1] See Report of Larry Stewart ("Stewart Report") ¶¶ 63–64, attached to the Declaration of Christopher Sargent In Support of Plaintiff's Motion in Limine No. 1 ("Sargent Decl.") as Exhibit 1.

PE) to the August document, claiming the August document is not old and not dried because it contains marginally higher levels of PE.

      i. **Different compositions**. "For a number of reasons, such a claim cannot be scientifically supported (either by the tests conducted in this case or by any pertinent data published in scientific literature and is absolutely incorrect and misleading."[2] Simply put, the inks on the two documents being compared **are of different compositions**, meaning the comparison in the PE units (10,000 versus 4,000) is irrelevant.

      ii. **Poor methods cannot support any opinion**. Even if the inks had been of the same composition, which no data suggests, the method Mr. Stewart employed (GC-MS) is incapable of determining whether two entries were or were not produced at the same time.[3] It cannot, therefore, form a basis for Mr. Stewart's ultimate conclusion that "the ink has been on the [August Agreement] for 2 years of less, as opposed to over 7 years as the date [on the document] would imply."[4]

      iii. **Meaningless comparisons produce meaningless opinions.** "Mr. Stewart's approach that is based on the comparative GC-MS analysis of inks for dating purposes produces meaningless results and is considered completely unreliable by the international scientific community of ink experts specializing in ink dating. It is an egregious error on Mr. Stewart's part to rely on this approach."[5] The conclusions in the Stewart Report are **not** the product of reliable principles and methods, and are **not** based on principles and methods reliably applied to the facts of the case, and for these reasons Federal Rule of Evidence 702(c) or (d) instruct that the Court should strike the Stewart Report as inadmissible and bar Mr. Stewart from testifying at trial.

---

[2] See Expert Report of Valery N. Aginsky ("Aginsky Report") at p. 14, Exhibit 2 to the Sargent Decl.
[3] Aginsky Report, p. 14.
[4] Stewart Report, ¶66.
[5] Aginsky Report, p. 14.

Entrepreneur Law Group LLP
www.computerlaw.com℠

### B. Mr. Stewart's Opinions Regarding The Ink-Aging Process Are Wrong.

The conclusions in paragraphs 65 and 66 cannot be scientifically supported by the techniques Mr. Stewart claims in his Report to have employed, and those methods, in and of themselves were flawed and inconsistent with accepted scientific practice and methods.

The Stewart Report states that the examiner used heat to induce aging of the ballpoint pen in removed from the August Agreement which

> resulted in the PE reading 3,000 units for the heated blue ballpoint pen in found on [the August Agreement]. This test clearly shows the blue ballpoint pen ink found on [the August Agreement] is still changing, i.e. **not fully aged**.[6]

Such a claim cannot be substantiated by the tests Mr. Stewart performed, and his results cannot be empirically reliably reproduced for a number of reasons.

First, the method employed (Solvent Loss Ration Method or SLRM) has not been validated through outside proficiency testing, nor has any scientific publication supported a claim that using SLRM to determine ink age is capable of determining that ink is less than two years old, a mainstay of the Stewart Report's conclusion.[7]

Second, Mr. Stewart tested only one sample and obtained only one result,[8] far below the scientific standard for rigorous sampling and testing. Such a small sample size is statistically invalid and unreliable.

Third, the single sample Mr. Stewart did take was taken incorrectly.[9]

Fourth, Mr. Stewart "did not use a dedicated GC-MS machine, and thus his results were unpredictably distorted by multiple unknown impurities inevitably present in the used, outdated GC-MS machine."[10]

---

[6] Stewart Report ¶65 (emphasis added).
[7] Aginsky Report p. 15.
[8] Aginsky Report p. 15; Stewart Report ¶ 65.
[9] Aginsky Report p. 15.
[10] Aginsky Report p. 15.

1      <u>Finally</u>, Mr. Stewart did not use proper internal controls in extracting solvents
2  used in his SLRM testing of his single sample.[11]
3      The Stewart Report's conclusions that the "ink […] is not fully aged is
4  unsubstantiated and wrong" and "cannot be scientifically supported by the tests
5  conducted, was reached through methodologically unsound procedures, and can be
6  considered neither accurate nor reliable."[12] Mr. Stewart used unsubstantiated or
7  debunked methods, misapplied accepted methods, and based his conclusions on that
8  unreliable science. For all of these reasons, a finder of fact cannot rely on the Stewart
9  Report, and the Court should strike it as inadmissible. "[T]he trial judge must ensure
10 that any and all scientific testimony or evidence admitted is not only relevant, but
11 reliable." <u>Daubert</u>, 509 U.S. at 589, 113 S. Ct. at 2795.

### C. The Stewart Report Fails to Address a Common and Accepted Method for Determining the Date of a Questioned Document.

14     The ink used to sign the August 2006 Agreement has been available at all
15 relevant times, including the date displayed in the signature blocks. The Stewart
16 Report is wholly incomplete due to its failure to address whether the ink(s) in the
17 signatures on the August Agreement were available as of the date on the document, a
18 common scientific practice for ink and document verification.[13] Such an approach
19 would have analyzed the chemical composition of inks on the contested
20     document(s)[14] with an aim to determine whether the inks present were
21 commercially available on or around the date appearing on the document.[15]

22     In this case, ink samples taken from the handwritten entries (signatures) for
23     conducting the ink availability test were ca. 0.5 mm in diameter…The blue
    ballpoint ink used to write the S1 signature on page 8 of [the August
24     Agreement] matches a blue ballpoint ink formulation(s), which has been used

---

[11] Aginsky Report p. 15.
[12] Aginsky Report p. 14–15 (internal quotations omitted).
[13] Aginsky Report p.11 § 3.2 "Ink Availability Approach"
[14] There were **3** "originals" of each Agreement signed, one each held by Professor Chang, Dr. Han, and Fred Wu.
[15] Aginsky Report p.11 § 3.2 "Ink Availability Approach"

Entrepreneur Law Group LLP
www.computerlaw.com℠

in ballpoint pens of multiple companies, *e.g.*, Tombow Pencil Co., Ltd. (Japan) and A.T. Cross Company (USA), and which **was commercially available on the date "August 30, 2006" indicated on [the August Agreement]**.[16]

Not only has Mr. Stewart failed to apply properly apply accepted forensic methods, but he has failed to use other common methods (*i.e.*, ink availability analysis) either by active omission or lack of resources, which would grant a trier of fact a clearer understanding of the evidence to be admitted at trial. The Stewart Report cannot be considered empirically sound, and under Federal Rule of Evidence 702(a)–(c) and relevant case law, such a failure renders the Stewart Report and any testimony by Mr. Stewart inadmissible. "The requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability…Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Daubert, 509 U.S. at 591–92, 113 S. Ct. at 2795–96. For these additional reasons, the Stewart Report should be stricken and this motion granted.

### D. Stewart Makes Unsubstantiated Statements Reaching Unsupportable Conclusions.

In at least three key places in his Report, Mr. Stewart makes conclusory and unsupported statements about the current science of ink dating. Such statements are not empirically sound, nor should they be relied on to form a scientific expert opinion to submit to a finder of fact under Federal Rule of Evidence 702(b).

  i. Paragraph 43: "It has been shown that…[PE] continues to evaporate for up to 24 months."

  ii. Paragraph 44–45: "typically, after 24 months, PE no longer evaporates…The two year determination is one based on research of a group of ballpoint pen inks"; "a recordable decrease in the level of PE by more than 25% after the questioned sample is heated indicates that the ink is less than two (2) years old…"

---

[16] Aginsky Report pp. 11–12, §§ 3.2 and III "Examination Results" (emphasis added)

        iii.   <u>Paragraph 65</u>: "ink…is not fully aged."

None of these statements are supported by scientific papers or peer-reviewed articles, nor at any of these points in the Stewart Report does Mr. Stewart adduce any proof.[17] The above statements are misleading, and are therefore inadmissible under Federal Rule of Evidence 403. Such unsupported statements also fail the admissibility test for expert testimony in Federal Rule of Evidence 702 and point out critical flaws in the methodology behind the Report's conclusions.[18]

> Many considerations will bear on the inquiry, including whether the theory or technique in question can be (and has been) tested, whether it has been subjected to peer review and publication, its known or potential error rate and the existence and maintenance of standards controlling its operation, and whether it has attracted widespread acceptance within a relevant scientific community.

<u>Daubert</u>, 509 U.S. at 592, 113 S. Ct. at 2794–96.

Based on all of the foregoing, the Stewart Report's conclusion that "blue ballpoint pen ink found on Document 'A' is not fully aged…[and therefore] was <u>highly</u> probably actually placed on that document much more recently than the purported creation date would suggest, [and that the] obtained results typically mean the ink has been on the document for 2 years or less as opposed to over 7 years as the date would imply"[19] is not scientifically supported and cannot satisfy the admissibility tests set forth by FRE 702 and the <u>Daubert</u> line of Supreme Court case law. For these reasons, the Court should rule to Stewart Report in its entirety as critically flawed and disqualify Mr. Stewart from testifying or entering testimony at the trial in this matter.

---

[17] Aginsky Report pp. 13–14.

[18] Note: While reviewing Mr. Stewart's credentials, counsel for Plaintiff learned that Mr. Stewart was accused of perjury for his testimony in 2004 regarding certain Martha Stewart documents in her court case. Federal prosecutors accused Stewart of giving false testimony under oath regarding ink analysis. See <u>Ceglia v. Zuckerberg</u>, 2013 U.S. Dist. LEXIS 45500 (W.D.N.Y. Mar. 26, 2013), a copy of which is attached as Exhibit 3 to the Sargent Decl.

[19] Stewart Report ¶ 66.

### III. MR. STEWART HAS INCORRECTLY APPLIED FLAWED DATA COLLECTION TO FLAWED ANALYSIS IN THIS CASE.

As outlined in the attached Aginsky Report, the data drawn from proper (scientifically supported and accepted) methods concludes only that the August Agreement was not created in the last two years—not that it was more likely 2011 than 2006. The conclusion "the ink has been on the document for 2 years or less"[20] is not grounded in reliable empirical analysis, **nor does it support a finding that the August Agreement was or was not signed in** 2011, and Defendant claims is the case; and anyway, such an analysis is entirely irrelevant. **The analysis took place in February, 2014. By Mr. Stewart's own admissions in the Report, his analysis can only be helpful going back to February, 2012, which is well after the date on which Defendants claim the document was signed**. In other words, the ink analysis is either wrong or meaningless in this case; it certainly does not support Defendants. Such a conclusion, even independent of the faulty analysis on which it is based, does not "help the trier of fact to understand the evidence or to determine a fact in issue" as required by Federal Rule of Evidence 702(a).

> Rule 702 further requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant, and, ergo, non-helpful…An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.

Daubert, 509 U.S. at 591, 113 S. Ct. at 2795 (internal citations and quotations omitted).

For this additional reason the Stewart Report and any testimony from Mr. Stewart should be precluded.

---

[20] Stewart Report ¶ 66.

## CONCLUSION

For all the foregoing reasons, the court should strike the Stewart Report and not admit or consider testimony from Mr. Stewart at the trial in this dispute.

Dated: May 5, 2014

ENTREPRENEUR LAW GROUP LLP

By: /s/ Jack Russo
Jack Russo
Christopher Sargent

Attorneys for Plaintiff
PROFESSOR RICHARD L. CHANG