Jack Russo (Cal. Bar No. 96068)
Christopher Sargent (Cal. Bar No.246285)
ENTREPRENEUR LAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301
(650) 327-9800
(650) 618-1863 fax
jrusso@computerlaw.com
csargent@computerlaw.com

Attorneys for Plaintiff
RICHARD L. CHANG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Richard L. Chang**, <br><br>    Plaintiff; <br><br> v. <br><br> **Biosuccess Biotech Co. Ltd.**, <br><br>    Defendants. | **Case No. CV13-01340 JAK (ANx)** <br><br> **PLAINTIFF'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE REFERENCE TO ANY CONTROLLING AGREEMENT SIGNED IN AUGUST 2006 OR ANY ASSIGNMENT AGREEMENT SIGNED IN 2011, OR, ALTERNATIVELY, FOR A PRELIMINARY JUDICIAL HEARING AND DETERMINATION UNDER FEDERAL EVIDENCE RULE 104** <br><br> [FED. R. EVID. RULE 104] |
| **Biosuccess Biotech, Co. Ltd.**, <br><br>    Counterclaimant, <br><br> v. <br><br> **Richard L. Chang**, <br><br>    Counterclaim Defendants. | Judge:  Hon. John A. Kronstadt <br> Place:  Courtroom 750 <br> Date:   June 2, 2014 <br> Time:   3:00 p.m. <br><br> Trial:   June 17, 2014 |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 2 ........................................1

INTRODUCTION ........................................................................................................1

ARGUMENT         ........................................................................................................2

    I.  THE AUGUST 2006 AGREEMENT CANNOT,
AS A MATTER OF LAW, BE CONTROLLING, AND
REFERENCE TO IT AS SUCH SHOULD BE DISALLOWED. ...................2

        A.    The October 2006 Agreement Contains an Integration Clause ............3

        B.    There Can Be No Legal Dispute That an Earlier
Dated Agreement Cannot Supersede a Later Dated Agreement. ..........3

        C.    The Court Should Review the Evidence
Relating to the Controlling Agreement to Avoid Confusing the Jury. ..4

    II.  EVIDENCE OR REFERENCE TO THE AUGUST
2006 DATED AGREEMENT AS CONTROLLING OR AS
SUPERSEDING IS IRRELEVANT AND WOULD CONFUSE A JURY .....9

        A.    Such Evidence Should be Excluded as Irrelevant................................9

        B.    Irrelevant Evidence Would Also Confuse and
Mislead a Jury and Cause Unnecessary Delay....................................10

    II.  ALTERNATIVELY, THE COURT
SHOULD HOLD A PRELIMINARY QUESTION
HEARING UNDER RULE 104 TO DETERMINE
WHAT EVIDENCE SHOULD BE HEARD BY THE JURY ......................11

CONCLUSION         ......................................................................................................11

Entrepreneur Law Group LLP
www.computerlaw.com℠

# TABLE OF AUTHORITIES

**Cases**

Ohler v. United States,
    529 U.S. 753, 120 S. Ct. 1851 (2000) ............................................................. 2

Padillas v. Stork–Gamco, Inc.,
    186 F.3d 412 (3rd Cir. 1999) ........................................................................... 2

Luce v. United States,
    469 U.S. 38, 105 S. Ct. 460 (1984) ................................................................. 2

Great Atlantic & Pacific Tea Co. Inc. v Checcio,
    335 N.J. Super. 495 (2000) ............................................................................. 8

**Statutes**

Fed. R. Evid. 104 .................................................................................................. 1, 10

Fed. R. Evid. 105 ....................................................................................................... 1

Fed. R. Evid. 401 ....................................................................................................... 9

Fed. R. Evid. 403 .................................................................................................. 2, 10

Restatement (Second of Contracts) § 215 ................................................................ 4

Entrepreneur Law Group LLP
www.computerlaw.com℠

# NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 2

PLEASE TAKE NOTICE that pursuant to the Court's Local Rules and Docket No. 101, Plaintiff Richard L. Chang hereby moves this Court for an order excluding from trial any and all evidence, reference to, or mention of any agreement signed in calendar year 2011 transferring any rights to or interest in any intellectual property from Plaintiff to Biosuccess Biotech, Co., Ltd. or any other entity, or mention of any assignment agreement signed in August 2006 as "controlling" or "superseding." As authorized by Federal Rule of Evidence 105, Plaintiff respectfully moves this Court *in limine* for:

(a) An order excluding certain evidence, specifically any reference to an agreement signed in 2011 or a "controlling" agreement dated August 2006; and

(b) At minimum, the Court should have a hearing under Federal Rule of Evidence 104 to determine what agreement the jury should rely upon.

## INTRODUCTION

This action revolves around the purported transfer of Plaintiff's rights and interest by way of two successive agreements and the failure of Defendant to uphold its end of the bargain. Central to this dispute are the provisions in the October 2006 agreement providing for $2 million in mandatory considerations to Plaintiff which were never paid. Now Defendant attempts to enter evidence that the first (earlier-dated) agreement (with much more favorable payment provisions for Defendant) is the controlling agreement between the parties. This, the Court should not allow Defendant to do as it clouds the real issues of this case and contradicts New Jersey law as well as the dates themselves which are on the Agreements..

Plaintiff Richard L. Chang seeks to bar evidence at trial of (a) any and all reference made to an agreement dated August 30, 2006 ("August 2006 Agreement") as the controlling agreement between the parties in this case; and (b) any agreement Defendant claims was signed in 2011 transferring any rights or interest from Richard

Entrepreneur Law Group LLP
www.computerlaw.com℠

L. Chang or Zheng Tao Han to Biosuccess. This Court has the inherent power to bar evidence and testimony that either party intends to present at trial, particularly excluding evidence where the probative value of the evidence is outweighed by the prejudicial effect of its admission. FED. R. EVID., Rule 403. In addition, the evidence Plaintiff seeks to bar by this Motion is improper as a matter of law and would more likely than not cause substantial confusion and unwanted delay at trial. As such, the court should order its exclusion, or alternatively hold a preliminary question hearing to determine what the jury is allowed to hear, and grant this motion *in limine*.

## ARGUMENT

The Court has the inherent power to control its proceedings, and Motions *in Limine* are well recognized in practice by case law. Ohler v. United States, 529 U.S. 753, 758, S. Ct. 1851 (2000); Padillas v. Stork–Gamco, Inc., 186 F.3d 412, 417 (3rd Cir. 1999); Luce v. United States, 469 U.S. 38, 41, 105 S. Ct. 460 (1984) (Court's inherent power to manage the course of trials).

**I.   THE AUGUST 2006 AGREEMENT CANNOT, AS A MATTER OF LAW, BE CONTROLLING, AND REFERENCE TO IT AS SUCH SHOULD BE DISALLOWED.**

There is no dispute that the parties signed and dated at least two agreements outlining the purported transfer of interest in and rights to the U.S. Patent No. 6,063,814 (the "'814 Patent"); one dated in August 2006 and a subsequent agreement dated in October 2006 (the "October 2006 Agreement"), the date of which is not disputed. Defendants have contended in this case that the August 2006 Agreement was, in fact, signed by Plaintiff, Fred Wu of Biosuccess, and Zheng Tao Han in 2011, and then backdated to 2006. The October 2006 Agreement clarified the consideration due to Plaintiff for the transfer of rights in the '814 Patent and related patent family, contains a clear integration clause (thereby superseding any previous agreements including the August 2006 Agreement), was signed by all the relevant parties, and **is dated later than the August 2006 Agreement**. The October 2006 Agreement **must**

be the controlling agreement, and the Court should preclude any evidence that an earlier agreement can somehow control.

### A. The October 2006 Agreement Contains an Integration Clause.

As noted in Plaintiff's Motion for Summary Judgment (Dkt. 113), the October 2006 Agreement contains an integration clause at section 14.1:

> This Agreement constitutes the entire understanding of the parties with respect to the subject matter contained herein and may not be modified or amended except as expressly stated herein or by a written agreement duly executed by both parties hereto.

Declaration of Richard Chang in Support of Plaintiff's Motion for Summary Judgment ("Chang Decl.") (Dkt. 113), Ex. 1 § 14.1.

On its face, the parties' explicit agreement was that this document, dated October 12, 2006 by each party in their own hand, would control the transfer of rights and bind the parties as to the consideration contained in that Agreement. It was also, unequivocally, the parties' intention to make the October 2006 Agreement the superseding agreement on that subject.

### B. There Can Be No Legal Dispute That an Earlier Signed/Earlier Dated Agreement Cannot Supersede a Later Signed/Later Date Agreement.

The two agreements at-issue (August 2006 and October 2006) both contain integration clauses, are both signed by all relevant parties, are consistently dated internally, and concern the same subject matter—namely, the grant of certain intellectual property rights relating to Mr. Chang's invention of therapeutic uses for the TPA molecule. For all these reasons, the later-dated October 2006 agreement **must** supersede all previously dated agreements on the subject, including the August 2006 Agreement, and must control as a matter of law. Plaintiff has reason to believe Defendant will enter evidence or make reference to the August 2006 Agreement as the controlling agreement in an attempt to alter the meaning of the October 2006 Agreement. This is not allowed under applicable New Jersey law, and it would be

improper to submit such evidence to a jury. "[W]here there is a binding agreement either completely or partially integrated, evidence of prior contemporaneous agreements or negotiations is not admissible in evidence to contradict a term of the writing." RESTATEMENT (SECOND) OF CONTRACTS § 215.

### C. The Court Should Review the Evidence Relating to the Controlling Agreement to Avoid Confusing the Jury.

<u>First</u>, the expert report and opinion entered by Biosuccess' so-called "ink expert" Larry Stewart is extremely flawed, is not admissible, and cannot be relied upon. As outlined in length in Plaintiff's Motion in Limine No. 1 filed concurrently with this Motion, the ink dating procedures, analysis, and opinions based thereon do not and cannot form the basis for any conclusion other than that the October 2006 Agreement controls.

<u>Second</u>, nowhere in any of the documents produced by any party in this during discovery is there a draft or executed document or email attaching a document that anticipates that it would become a signed version in 2011 with the August Agreement language. Defendant's witness Steven Burgess includes a 2011 email in his expert report ("<u>2011 Email</u>") containing an attachment bearing some of the language of the August 2006 Agreement. It is on this basis that Biosuccess contends, that the August 2006 Agreement must have been signed in 2011. However, the documents contain numerous differences, which in no way comport with Defendant's timeline:

| **Section** | **August 2006 Agreement** | **2011 Email** |
|---|---|---|
| 3.1 | "basic compensations and incentives" | "basic incentives" |
| 3.1(a) | "Total milestone payment: US$2 million is to be paid in the following manners:" | "Total payment: US$2 million is to be paid for reimbursement of efforts and expenses spent over the years on TPA research and development in the following manners" |
| 3.1(a)(1) | "completed in the US." | "is completed" |

| 3.1(b) | "ASSOGNEE's stock shares at the time the company is established" | "ASSOGNEE's shares (50 million shares in total)" |
|---|---|---|
| 3.2 | "The ASSIGNEE also agrees the following compensations to be paid to the ASSIGNOR:" | "The CONSIGNEE also agree to the following overhead expense" |
| 3.2(b) | "annually or market compatible compensation to be paid" | "annually to be paid" |
| 3.3 | "at least once every" | "at least once very" |

<u>Third</u>, acceptance of Defendant's theory that the August 2006 Agreement was actually signed in 2011 and backdated expressly makes that document—by any objective standard—operative only for the period from August 30,2006 to October 12, 2006, a period of only **two months**. Any reasonable business person with the experience Fred Wu admits to having in his deposition, would have made such a writing say that it would continue even beyond the October 2006 Agreement. How could an experienced businessperson prepare such an agreement, **knowing that the October 2006 Agreement existed and would extinguish a backdated agreement two months after the August Agreement was signed?** Defendant admits that the October 2006 Agreement was signed in October 2006, so how can it be the case that some five years later in 2011, made such egregious oversights?

<u>Fourth</u>, the number of differences and outright errors between the documents demonstrates that the so-called 2011 document **could not** have been tendered a full five years later. The errors made in the so-called "2011" Agreement are obviously sophomoric and plainly inconsistent with the notion that the parties a document after five years of operating experience. For instance, would the parties have made the switch in the language from an "assignment" of rights as it states in the October Agreement backwards to an "exclusive license" in drafts of the August Agreement? Of course not.

In fact, a draft agreement used an exhibit at the deposition of Biosuccess Chairman of the Board Fred Wu, which bears Mr. Wu's signature with the date "September 2006," and which is called an "original known document" by Biosuccess' own expert (the "September 2006 Draft"), contains a redlined change (in red ink) making the change from "exclusive license" to "assignment." Thus, the timeline here clearly demonstrates that originally it was "exclusive license" in a document signed in August 2006 and bearing that date on no fewer than three (3) signatures, Mr. Wu realized the mistake and corrected it in a September 2006 document, and a document containing that and other desired changes was signed in October 2006, perfecting the parties' intentions, in a final, fully integrated agreement which all parties acknowledge was signed and operative for many years.

A number of other corrections and updates occurred between the August 2006 Agreement and the September 2006 Draft including, but certainly not limited to:

| **Section** | **August 2006 Agreement** | **September 2006 Draft** |
|---|---|---|
| Recitals | "patent application" | "patent applications" |
| 3.1 | "basic compensations and incentives" | "expenditures" |
| 3.1(a) | "Total milestone payment" | "Total payment" |
| 3.2 | "The ASSIGNEE also agrees the following compensations to be paid to the assignor" | "the CONSIGNEE also agrees to the following overhead expenses" |
| 3.2(a) | "if the clinical trial is completed and approved by FDA" | "entering into the phase III stage respectively in the U.S." |
| 3.2(b) | "US250,000 annually or market compatible compensation" | "US$250,000 annually to be paid evenly on quarterly basis" |
| 3.2(b) | "Professor Richard L. Chang—CSO" | "Professor Richard L. Chang—CTO" |

Entrepreneur Law Group LLP
www.computerlaw.com℠

| 3.2(b) | "Professor Zheng Tao Han— CRO & CTO" | "Professor Zheng Tao Han—VP, R&D China" |
|---|---|---|
| 4.2 | "ASSIGNEE is threaten with" | "ASSIGNEE is threatened with" |
| 4.5 | "shall name ASSIGNOR as one of the insured." | "shall name ASSIGNOR as one of the insureds or additional insured where appropriate." |
| Article 5 | "Termination" | "Term/Termination:" |

Having made all these corrections in 2006, would the parties have repeated errors some **five years after** signing an integrated agreement in October 2006? Of course not. The August 2006 Agreement was signed in August 2006, corrected in September and October 2006, which culminated in a final, integrated, signed, **controlling** document: the October 2006 Agreement.

Fifth, none of the foregoing was addressed in any reasonable or plausible or reasonably plausible way in the testimony of Fred Wu, an experienced businessman who negotiated, wrote, and signed many commercial agreements over his 30-plus years of business experience. The videotaped deposition demonstrates that Mr. Wu was literally 'stumped' by the questions when the September 2006 Draft comparison was put before him.[1] Mr. Wu was flummoxed and completely unable to provide an answer as to why certain changes seemed to reflect a perfecting, not an undoing of an "assignment" instead of an "exclusive license" or as to any of the other mistakes.

Sixth, the use of a different address—one of the many Mr. Wu seems to use and has used for Biosuccess—hardly demonstrates that the August 2006 Agreement was actually signed in 2011, given that in August 2006 (the actual time frame in which the document was signed), Biosuccess was a new company still trying to figure out where to establish an office. The earlier document picked offices which were associated with

---

[1] See the Declaration of Jack Russo In Support of Plaintiff's Motion for Summary Judgment, Exhibit 1, pp. 155:3–158:1 (Dkt. 113-2).

Entrepreneur Law Group LLP
www.computerlaw.com℠

Mr. Wu's family members or business associates and was ultimately changed by the time the parties signed the October 2006 Agreement to other offices.

<u>Seventh</u>—and perhaps most tellingly—why was no new formal PTO-filed assignment agreement signed for the so-called 2011, purportedly backdated agreement? If the defense is correct, and the August 2006 Agreement was signed in 2011, then why would they supersede all that was done in 2006 but fail to file new formal assignment documents with the Patent and Trademark Office? Why are there no new assignment records filed to reflect a new 2011 Agreement?

Finally, there was no release or waiver language in the 2011 document. How, then, could Professor Richard Chang have given up his rights to monetary payments that were overdue by 2007 and which were clearly due with accrued interest (10% statutory interest under California law) for at least five years? Those claims existed and were not waived or released at any time and they still exist and are still actionable regardless of any additional time that Defendants claim they were provided to fully perform the Agreements, which they have still not done! Defendant Biosuccess cannot explain the inexplicable: why would Professor Chang give up his rights to substantial monies for nothing of comparative value? The answer is simple: he would not, and he did not.

The August and October Agreements should be read within their four corners per the Parol Evidence Rule, should be construed as a whole (<u>Great Atlantic & Pacific Tea Co. Inc. v Checcio</u>, 335 N.J. Super. 495, 501 (2000)), and should be presented in chronological order to the jury by the date they each expressly contain as placed there by the signatories themselves. <u>Any other result violates the Parol Evidence Rule because it results in a rewriting of the August 2006 date in the August Agreement to a new August or September 2011 date that is simply not present</u>. This Court should grant Plaintiff's Motion.[2]

---

[2] Note: This is not the first case in which Wu and Zheng Tao Han have attempted to falsify records; within the last five years, they have been sued by investors for fraud in Taiwan and the

## II. EVIDENCE OR REFERENCE TO THE AUGUST 2006 DATED AGREEMENT AS CONTROLLING OR AS SUPERSEDING IS IRRELEVANT AND WOULD CONFUSE A JURY.

### A. Such Evidence Should be Excluded as Irrelevant.

Any reference to an agreement signed in 2011 and the August 2006 Agreement as controlling are incorrect and, regardless, irrelevant to the issues to be presented to the jury at trial. Evidence is relevant if (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. The evidence Plaintiff seeks to omit by this Motion meet neither of these standards, and certainly not both. It is therefore irrelevant and should be excluded.

There exists a dispute between the parties concerning when the August 2006 Agreement was signed: Defendant maintains that it was signed some time in 2011 and then back-dated to reflect the October 12, 2006 date that appears on the documents as they exist today. The dates within the eight corners of the August and October Agreements determine which agreement controls, and no evidence that one was signed on a different date makes that fact more or less probable. The October Agreement is dated October 12, 2006, and the August Agreement is dated August 30, 2006; the October Agreement controls as a matter of law, independent of any evidence of when either Agreement was actually signed or misguided contemplations that the earlier dated August 2006 Agreement somehow supersedes a later integrated instrument.

Neither would such evidence be determinative in the action. The question surrounding why the signers would back-date an integrated agreement to a date **earlier than a preexisting agreement** if they expected the earlier (August 2006 dated) agreement to control is a strange one (and one made even more so implausible

---

Taiwanese government has successfully convicted both of them for criminal forgery charges and the convictions have been upheld on appeal. See Depositions of Fred Wu at 8:3–12 and Zheng Tao Han at 103:3–105:1. Sargent Decl. Exhibits 4 and 5.

by the fact that Fred Wu was and is an experienced businessman who negotiated and signed many commercial and other business agreements), but the actual dates on which the agreements were signed has no bearing on the later dated October Agreement, and therefore no bearing on the outcome of this action.

### B. Irrelevant Evidence Would Also Confuse and Mislead a Jury and Cause Unnecessary Delay.

According to the Federal Rules of Evidence, the Court may exclude evidence if it's "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues [or] misleading the jury. Fed. R. Evid. 403.

As stated above, the relevance of the evidence in question is zero, as the issue of which agreement controls is decided as a matter of law **by the Court** without any irrelevant extraneous and extrinsic evidence presented to cloud and confuse the matter and/or after the Court has fully evaluated **in a separate pre-trial evidentiary hearing** whether there is any plausible interpretation of the evidence without contradicting the express terms of the Agreement. If all that extraneous or other extrinsic evidence were allowed before the jury, the risk that a jury would be confused and misled (if not outright as equally flummoxed as Fred Wu was in his own deposition), would far outweigh any potential probative value.

There is no probative value whatsoever in when the August 2006 Agreement was signed, or in referring to the August 2006 Agreement as controlling, the possibility, and indeed, probability, that a jury would be confused and misled in considering that evidence instructs that any mention by oral argument, exhibits, or other evidence submitted to the jury describing or discussion the agreements in such a way should be excluded.

//
//
//

### III. ALTERNATIVELY, THE COURT SHOULD HOLD A PRELIMINARY QUESTION HEARING UNDER RULE 104 TO DETERMINE WHAT EVIDENCE SHOULD BE HEARD BY THE JURY

Under Federal Rule of Evidence 104, the Court must decide any preliminary question about whether evidence is admissible at trial. In light of Defendant's attempts to enter evidence that the August 2006 Agreement is the controlling agreement between the parties, Plaintiff respectfully requests that, at minimum, the Court should have a preliminary question hearing under Rule 104 to determine what evidence relating to or indicating (a) any and all reference made to the August 2006 Agreement as the controlling agreement between the parties in this case, and (b) any agreement Defendant claims was signed in 2011 transferring any rights or interest from Richard L. Chang or Zheng Tao Han to Biosuccess, should be heard by the jury.

### CONCLUSION

For all the foregoing reasons, the court should order Defendant Biosuccess and their counsel to refrain from introducing any evidence or testimony relating to (a) the August 2006 Agreement as the controlling agreement between the parties; and (b) the signing of any agreement between the parties in 2011.

Dated: May 5, 2014

ENTREPRENEUR LAW GROUP LLP

By: /s/ Jack Russo
Jack Russo
Christopher Sargent

Attorneys for Plaintiff
PROFESSOR RICHARD L. CHANG