1  Jack Russo (Cal. Bar No. 96068)
   Christopher Sargent (Cal. Bar No. 246285)
2  ENTREPRENEUR LAW GROUP LLP
   401 Florence Street
3  Palo Alto, CA 94301
4  (650) 327-9800
5  (650) 618-1863 fax
   jrusso@computerlaw.com
6  csargent@computerlaw.com
7
   Attorneys for Plaintiff
8  RICHARD L. CHANG

9
                   UNITED STATES DISTRICT COURT
10
                   CENTRAL DISTRICT OF CALIFORNIA
11

12

13 **Richard L. Chang,**                    Case No. 2:13-cv-01340-JAK (ANx)

14             Plaintiff,                   **DECLARATION OF ATTORNEY JEFFREY
                                            KING IN OPPOSITION TO
15       v.                                 DEFENDANT'S *MOTION IN LIMINE* NO.
                                            1.**
16 **Biosuccess Biotech, Co. Ltd.**

17             Defendants.                  Pretrial Conference: June 2, 2014
                                            Trial: June 17, 2014
18                                          Hon. John A. Kronstadt
19                                          Courtroom 750, 7th Floor

20 ─────────────────────────────

21 **Biosuccess Biotech, Co. Ltd.**

22             Counterclaimant,

23       v.

24 **Richard L. Chang,**

25             Counterclaim Defendant.

26

27

28

Declaration of Jeffrey King                         Case No. 2:13-cv-01340-JAK-AN

1  I, Jeffrey King, declare under penalty of perjury as follows:

2  1.  I am an attorney admitted to practice in the state of Washington, I am
3  registered to practice before the United States Patent and Trademark office, and I
4  am founder of the intellectual property law firm, Patent Networks Law Group
5  PLLC. I have 12 years of university science training in biology and have been
6  practicing before the USTPO for twenty (20) years. I have personal knowledge of
7  the facts set forth in this declaration, and if called to do so I will competently
8  testify to the same. I make the statements here of my own personal knowledge,
9  except where stated on information and belief, which statements I believe true.

10  2.  For many years I worked closely with Richard Chang regarding the
11  research and science behind Professor Chang's patent and pending US and foreign
12  patent applications.

13  3.  I am informed and believe that Richard Chang spent much of this life
14  developing and perfecting the science behind the use and application of TPA (12-
15  O-tetradecanoyl-phorbol-13-acetate). After decades of this continuing research,
16  conducted through various companies and academic institutions, Professor Chang
17  originally submitted his ideas for patenting, which I have been assisting him on as
18  the primary responsible IP law partner now for the past eight years.

19  4.  Beginning in 2006 and through mid-January 2013, I communicated
20  exclusively with Ben Chang and Richard Chang for the continuing disclosure,
21  preparation, strategic design, development and maintenance of a patent portfolio to
22  protect the inventions of Richard Chang related to uses of TPA, with the exception
23  of a few phone conversations and non-substantive business correspondence that
24  included Fred Wu.

25  5.  I understand that the Court has ruled that certain records and
26  testimony remains privileged in this case, specifically my communications with
27  Biosuccess since January 2013. However, I respectfully urge the Court to
28  reconsider this limitation as potentially inconsistent with Professor Chang's rights,

with the interests of Professor Chang and other shareholders of Biosuccess, with the paramount interests of protecting and preserving the underlying intellectual property assets at issue in this case, and with controlling law governing confidentiality, duty of disclosure and candor before the US Patent Office, and attorney-client privilege. I have consulted with four outside ethics professionals on these complex issues, most recently with a former supervisor of mine and a national leading authority on ethics in intellectual property law, Paul Vapnek. I believe I can only reasonably, comprehensively, and safely (from the standpoint of all parties) convey these critical issues directly to the Court with appropriate protections afforded against prospective third party disclosure.

      6.     The submissions by Mr. Wu/Biosuccess, and the related briefings to the Court thus far, purporting to represent our legal advisory role in this matter are grossly misleading. Specifically, I have reviewed redacted emails submitted to this Court by Mr. Wu/Biosuccess, which carefully omit significant portions of our actual communications with Biosuccess. These communications related directly to the questions and concerns raised by the Court in its Order. The redactions of these communications are an inaccurate, non-representative selection of the true nature and scope of our communications with Biosuccess following the abrupt and unexplained termination of Professor Chang from our communications in January, 2013. I attempted to elucidate the true nature of these communications, and the relevant issues surrounding these communications, in my Objections to the Subpoena of Richard Chang, previously considered with understandable caution by this Court. These Objections reflect a tormenting conflict imposed upon us through misconduct by Mr. Wu, which we believe (and Mr. Vapnek concurs), presents critical matters of immediate importance for assessment by the Court. These matters concern immediate problems with control and ownership of the principal IP assets of interests here, and even more paramount concerns relating to the devaluation, destruction, and even abandonment of these assets—as detailed in

our actual statements to Mr. Wu/Biosuccess. Remaining silent on this information is likely contrary to our duty of disclosure and candor to the USPTO, and will therefore likely also be called to the USPTO's attention in due course. Our paramount interest, and controlling duty of representation, is, and always has been, that of Trustee to ensure optimal prosecution and prevention of harm to the Richard Chang/Biosuccess patent estate (for whatever true owner(s) may exist, including the Biosuccess shareholders—which is distinctly not our determination to make and which we were kept blind to up to and during the transitional period that this conflict was imposed upon us). It is the paramount authority of our ethical obligations before the USPTO, and the interests of the IP assets irrespective of ownership, that compelled the primary disclosure embodied in our Objections to the Chang subpoena, which we stand by as non-confidential/privileged by waiver or exemption through USPTO policies.

7. We believe it is also critical to explain to the Court that adequate redress and remedy is *not* to be immediately or practically found at the USPTO governing these concerns. With respect to the issues of immediate control and "ownership" (not inventorship), and related issues of asset destruction and abandonment, the PTO simply has no available process for intervening at this point, and in fact not for a projected period of two years or longer. It is correct that ultimate inventorship issues can only be resolved for competing, pending applications at the PTO, but these are only determinable years down the road, and may well be preceded by complete destruction of the assets (if current actions instigated by Mr. Wu/Biosuccess, apparent from public records at the PTO, are left unchecked."

8. Our role, as we explained in our *complete*, unredacted communications to Mr. Wu/Biosuccess, was never partisan and was only exercised in the manner of an objective Trustee advocating for the patent estate. We sought to communicate our emerging conflicts to Mr. Wu, and did so in no uncertain

detail. Mr. Wu has opened the door with self-serving excerpts of our communications, which themselves cast doubt on our professional conduct. According to Washington Bar Rules, we believe we also have a right and privilege to cast light on these events relating to our ethical management of the conflicts and related issues here.

9. We are proceeding toward preparation and filing of a fuller report of this history and recent developments for submission to the USPTO Office of Enrollment and Discipline, which will further elucidate the issues of conflict and misconduct/waiver of confidentiality and privilege we believe are controlling here. Here again, however, any remedial action in the USPTO will be limited, and untimely with regard to our immediate concerns of harm to Professor Chang (arguably our first, and continuing client, certainly with respect to all of his non-assigned patent instruments that have now been appropriated under different supposed inventorship and control by Mr. Wu--also per public USPTO records), and to the company Biosuccess, its shareholders (including Professor Chang), and the subject IP assets that continue to be the primary focus of our advocacy (as patent agents, irrespective of our attorney role).

10. We have monitored the proceedings in the USPTO related to patent applications we drafted and filed originally naming Richard Chang as the inventor, since our termination as counsel by Biosuccess. We are deeply concerned about the manner and nature of this process and believe the actions taken by Mr. Wu/Biosuccess, as reflected in these public records, are highly probative of the issues discussed generally above and in our prior Objections to Chang Subpoena. This emerging misconduct is, in our opinion, important information for the Court, and by its nature arguably waives all privilege and confidence in our intermediary communications regarding these same subjects to Mr. Wu/Biosuccess in the transitional period following Professor Chang's termination and our own discharge (which discharge was in fact precipitated by very communications that Mr. Wu no

seeks to shield from disclosure to the Court—which same communications are directly called into question by Mr. Wu in allegations he has presented against Patent Networks (regarding our ethical conduct and supposed violation of instructions during this transitional period)--again suggesting waiver of confidentiality and privilege and supporting a duty on our part to elucidate these communications on behalf of Professor Chang, and our firm.

11. I am able and willing to testify at the trial in this matter as to my communications and dealings with Biosuccess following Professor Chang's "termination", as well as to my knowledge and role as agent and counsel for the Richard Chang/Biosuccess patent estate. I believe the testimony I may give would be material to essential facts at issue in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was entered into on this 12th day of May, 2014 in Maple Valley, Washington.

_____
Jeffrey King