Jack Russo (Cal. Bar No. 96068)
Christopher Sargent (Cal. Bar No. 246285)
ENTREPRENEURLAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301
(650) 327-9800
(650) 618-1863 fax
jrusso@computerlaw.com
csargent@computerlaw.com

Attorneys for Plaintiff
RICHARD L. CHANG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Richard L. Chang,<br><br>        Plaintiff;<br><br>    v.<br><br>Biosuccess Biotech Co. Ltd., et al.<br><br>        Defendants. | Case No. 2:13-cv-01340-JAK-AN<br><br>**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>[L.R. 16.4]<br><br>Pretrial Hearing: June 2, 2014<br>Trial:  June 17, 2014<br>Hon. John A. Kronstadt |
| Biosuccess Biotech, Co. Ltd.,<br><br>        Counterclaimant,<br><br>    v.<br><br>Richard L. Chang et al.,<br><br>        Counterclaim Defendants. | |

EntrepreneurLaw Group LLP
www.computerlaw.com℠

**TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................1

II.  THE PARTIES' CLAIMS AND DEFENSES................................................3

Summary of Plaintiff's Claims .................................................................3

A. Plaintiff's Complaint [Dkt 1] Alleges
A Single Claim for Declaratory Relief......................................................3

B. Plaintiff's Conditional Counterclaims Allege Two Additions
Claims for Breach of Contract and Negligent Mismanagement ............4

Summary of Defendant Biosuccess'
Affirmative Defenses [L.R. 16-4.1(d)(e)] ...............................................8

Affirmative Defenses Related to "Breach of Contract"....................8
Summary of Evidence Opposing
"Breach of Contract" Affirmative Defenses ....................................9

Affirmative Defenses Related to a "Controlling Agreement" ..........11
Summary of Evidence Opposing
"Controlling Agreement" Affirmative Defenses..............................12

Affirmative Defenses Alleging "Plaintiff Misconduct".....................14
Summary of Evidence Opposing
Purported "Misconduct" Affirmative Defenses ................................15

Unsupported and Inadequate Affirmative Defenses .........................17

C. Summary of Biosuccess' Counterclaims ...............................................18
Summary of Plaintiff's Affirmative Defenses........................................23

III.  ANTICIPATED EVIDENTIARY ISSUES [L.R. 16-4.1(H)]....................................42
IV.   IDENTIFICATION OF ISSUES OF LAW [L.R. 16-4.1(I)] ................................43
V.    BIFURCATION ISSUES [L.R. 16-4.3].............................................................44
VI.   JURY TRIAL [L.R. 16-4.4] .........................................................................44
VII.  ATTORNEYS' FEES [L.R. 16-4.5] ...............................................................44
VIII. ABANDONMENT OF ISSUES [L.R. 16-4.6] ...................................................45

EntrepreneurLaw Group LLP
www.computerlaw.com℠

1

### TABLE OF AUTHORITIES

2

## Cases

3

A. Hollander  & Son, Inc. v. Imperial Fur Blending Corp.,
4
    2 N.J. 235, 246 (1949) ........................................................... 12, 35

5

Alexander v. CIGNA Corp.,
6
    991 F. Supp. 427, 442 (D.N.J. 1997) ..............................................43

7

Borough of Princeton v. Bd. Of Chosen Freeholders of Mercer
8
    169 N.J. 135, 158 (2001)......................................................... 12, 35

9

Callano v. Oakwood Park Homes Corp.,
10
    91 N.J. Super. 105, 108 (App.Div. 1966) ........................................ 14, 22, 39

11

Crowley v. Epicept Corp.,
12
    547 Fed. Appx. 844, 846 (9th Cir. 2013)....................................43

13

Davin v. Daham,
14
    329 N.J. Super. 54, 67 (App.Div. 2000) .........................................33

15

Downs v. Jersey Central Power and Light Co.,
16
    174 A. 887, 888 (N.J. 1934) ..........................................................43

17

Faustin v. Lewis,
18
    5 N.J. 507, 511 (1981) ............................................................ 12, 35

19

Goldsmith v. Camden County Surrogate's Office,
20
    408 N.J. Super. 376, 382 (App.Div. 2009) ..................................... 14, 22, 39

21

Great Atlantic & Pacific Tea Co. Inc. v. Checcio,
22
    335 N.J. Super. 495, 501 (2000)....................................................43

23

J.I. Kislak Realty Corp. v. 6051 Blvd. East Corp.,
24
    192 N.J. Super. 280, 283 (App. Div. 1983) ...................................43

25

Katz v. Oak Indus., Inc.,
26
    508 A.2d 873, 879 (Del. Ch. 1986) ..............................................44

27

Miller v. Miller,
28
    97 N.J. 154, 163 (1984) .................................................................33

Entrepreneur Law Group LLP
www.computerlaw.com℠

Wilton v. Seven Falls,
15 U.S. 277 (1995)...................................................................................3, 18


**Statutes and Jury Instructions**

28 U.S.C. §§ 2201 and 1332 ..................................................................... 4

28 U.S.C. § 2201(a) ............................................................................3, 18

28 U.S.C. §1927..........................................................................................44

CACI California Model Jury Instructions § 323 ....................................... 4

CACI California Model Jury Instructions § 4102 ....................................23

Federal Rules of Civil Procedure 19(a) ...................................................15

New Jersey Model Civil Jury Instructions 3.30(E) ................................21

New Jersey Model Civil Jury Instructions 4.10(I)...................................12

New Jersey Model Civil Jury Instructions 4.10(J) .............................9, 25

New Jersey Model Civil Jury Instructions 4.10(L) .......................... 5, 8, 19, 20, 23

New Jersey Model Civil Jury Instructions 4.10(N)(1)(a)........................11

New Jersey Model Civil Jury Instructions 4.10(N)(d) .................... 11, 31

New Jersey Model Civil Jury Instructions 5.10A.................................6, 14, 22, 29

New Jersey Model Civil Jury Instructions Charge 8.45(C)............................. 11, 37

Restatement  (Second) of Contracts § 213............................................27

Entrepreneur Law Group LLP
www.computerlaw.com℠

1    Pursuant to Local Rule 16-4 and the Court's Orders, Plaintiff and

2    Counterclaim Defendant Richard L. Chang ("Plaintiff" or "Professor Chang")

3    respectfully submits the following Memorandum of Contentions of Fact and Law,

4    addressing the contentions of the parties as regards the trial scheduled to begin

5    June 17, 2014.[1]

6    **I.      INTRODUCTION**

7            Plaintiff Professor Chang is a brilliant scientist and **the** leading researcher in

8    the treatment of multiple life-threatening conditions with a chemical compound

9    generally referred to as "TPA." As a result of this research, Professor Chang was

10   and is the lead inventor of numerous inventions relating the treatment of diseases,

11   including United States Patent No. 6,063,814 (the "'814 Patent"), which duly and

12   legally issued on May 16, 2000. On August 30, 2006, Professor Chang entered into

13   an agreement entitled "Assignment of Patent Right & Assignment of Right of

14   Patent Application Agreement ("August 2006 Agreement") with Biosuccess,

15   whereby he agreed to a conditional and incomplete assignment of his interest in the

16   '814 Patent to Biosuccess Biotech, Co., Ltd. ("**Biosuccess**"), contingent upon his

17   receipt of certain specified monetary and stock considerations. On October 12,

18   2006, Professor Chang signed a new agreement (the "October 2006 Agreement")

19   with updated payment requirements which explicitly integrated and superseded the

20   August 2006 Agreement.

21           The October 2006 Agreement provides for the contingent assignment of the

22   "Patent Rights," which include the '814 Patent and related provisional and non-

23   provisional patent applications ("Applications"). Article 5.1 of the October 2006

---

[1] The filing of this memorandum is complicated by Biosuccess' reliance on more
than 60 affirmative defenses, many of which are not affirmative defenses at all, but
which are still supposed be addressed under Local Rule 16-4. Given this
uncertainty, this memorandum is based on diligent inquiry and investigation by
Plaintiff, and it is provided without prejudice to Plaintiff's right to amend as a
result of mistake, error, or oversight.

Entrepreneur Law Group LLP
www.computerlaw.com℠

1  Agreement provides that "[This] Agreement shall be **considered to be completed**

2  in terms of assignment of patent right and right of patent application to

3  [Biosuccess] **as soon as the fulfillment of the Article 3.1.a. and 3.1.b** by

4  [Biosuccess], unless terminated sooner pursuant to the provisions of the

5  agreement." Biosuccess never perfected those payments and the assignments were

6  never completed.

7     On January 18, 2013, Biosuccess, through its Chairman of the Board, Fred

8  Wu, sent a letter to Professor Chang asserting that Professor Chang was no longer a

9  shareholder in Biosuccess as required by Article 3.1.b of the October 2006

10  Agreement. That letter also purported to notify Professor Chang that his position as

11  Chief Scientific Officer "is terminated starting 1/1/13." On the same day,

12  Biosuccess, again by way of Fred Wu, sent a letter to Plaintiff's son, Ben Chang,

13  also purporting to terminate his position and employment with Biosuccess. These

14  letters were all sent in retaliation to a letter Professor Chang sent to Mr. Wu

15  requesting documents and corporate records of Biosuccess.

16     On January 22, 2013, Professor Chang, through his attorneys at the time,

17  sent a letter to Biosuccess notifying Biosuccess that Biosuccess had breached the

18  October 2006 Agreement.

19     As a result of the lack of payment to Professor Chang by Biosuccess of the

20  specified consideration, pursuant to Article 5.1 of the October 2006 Agreement, the

21  assignment of "patent right and right of patent application to the ASSIGNEE" from

22  Professor Chang to Biosuccess has not been completed.

23     Biosuccess, through its Chairman, Fred Wu, instructed Mr. Jeff King of

24  Patent Networks Law Group, who was responsible for the portfolio at the time, not

25  to communicate with Professor Chang or his representatives, including in

26  connection with the '814 Patent and Applications in which Professor Chang is a

27  lead inventor, and for which Biosuccess has no ownership interest. Mr. King and

28  his firm communicated their intent to follow Biosuccess' instructions, thereby

EntrepreneurLaw Group LLP
www.computerlaw.com℠

1   interfering with Plaintiff's ability to monetize and protect his interest in the '814

2   Patent and Applications whose assignment to Biosuccess had never been

3   completed.

4       As described below and will be proven at trial, Defendant Biosuccess has

5   mismanaged the relevant patent portfolio, and Professor Chang has always been

6   and still is the rightful inventor and owner of his interest in the '814 and all related

7   Applications. These rights must be fully and completely reverted to Professor

8   Chang in the form of an order of this Court declaring such rights, and damages

9   should be awarded for the harm caused by Defendants.

10  **II.   THE PARTIES' CLAIMS AND DEFENSES. [L.R. 16-4(a)(b)]**

11      This is a civil action concerning Plaintiff's rights under the October 2006

12  Agreement, seeking both a declaration clarifying those rights and awarded

13  damages for the harm done to Professor Chang by Defendants. Jurisdiction is

14  asserted under 28 U.S.C. Sections 2201 and 1332.

15  **SUMMARY OF PLAINTIFF'S CLAIMS**

16      **A. PLAINTIFF'S COMPLAINT [DKT. 1] ALLEGES A**
        **SINGLE CLAIM FOR DECLARATORY JUDGMENT**

17

18  **Claim 1**: **Declaratory Judgment**

19  Summary: Biosuccess, mainly through its Chairman of the Board, Fred Wu, has

20  willfully attempted to convert Plaintiff's patent rights to interfere with Professor

21  Chang's ability to maintain, access, and pursue his rights and interest in the '814

22  Patent and Applications.

23  Elements: Plaintiff has the burden of proving (1) there exists an actual and

24  justiciable controversy to warrant the issuance of a declaratory judgment; (2)

25  unless enjoined, Defendant's actions will result in the loss of property or damages.

26  See generally Wilton v. Seven Falls Co., 515 U.S. 277 (1995); 28 U.S.C.S. §

27  2201(a).

28

EntrepreneurLaw Group LLP
www.computerlaw.com℠

Summary of Evidence in Support:

• The August 2006 Agreement;

• The October 2006 Agreement;

• Emails dated 2006 attaching drafts of both Agreements;

• Testimony of Richard Chang, Ben Chang, David Chou; Richard Salvador, Fred Wu, Zheng Tao Han, Jeffrey King, and Roger Strair.

• Documentary and video evidence from the depositions of Fred Wu and Zheng Tao Han

• Documentary, deposition, and live witness testimony from both Professor Chang and Ben Chang and Jeffrey King regarding Fred Wu's ineptitude in his role as corporate officer/Chairman of the Board of Biosuccess, Fred Wu's history of failure to maintain proper corporate records or respect the corporate form.

• Testimony of Jeffrey King of Patent Networks Law Group

• Richard Chang, Ben Chang, and Jeffrey King will testify that Ben Chang and Richard Chang were the primary points of contact with Jeffrey King regarding not only the '814 Patent, but also the applications that followed from Mr. Chang's research.

• Emails and letters to and from Jeffrey King demonstrate that Professor Chang was that lead inventor of the '814 Patent, lead researcher and developer of the science behind the portfolio, and that Richard and Ben Chang worked closely with Jeffrey King and others before their termination in January 2013.

**B. PLAINTIFF'S CONDITIONAL COUNTERCLAIMS ALLEGE TWO ADDITIONAL CLAIMS FOR BREACH OF CONTRACT AND NEGLIGENT MISMANAGEMENT**

**Conditional Counterclaim 1: Breach of Contract**

Summary: Biosuccess has failed and continues to fail to pay Plaintiff the consideration required under the controlling October 2006 Agreement, yet

EntrepreneurLaw Group LLP
www.computerlaw.com℠

maintains control of Plaintiff's interest in the '814 Patent and portfolio by instructing the attorneys responsible for the patent and applications not to communicate with Plaintiff or his representatives.

Elements: Plaintiff must prove that (1) Plaintiff and Defendant entered into a contract; (2) that Plaintiff did all or substantially all of the significant things that the contract required him to do or that he was excused from doing those things; (3) that Defendant materially breached the contract; and (4) that Defendant's breach caused Plaintiff measurable injury. (See New Jersey Model Civil Jury Instructions 4.10(L).)

Summary of Evidence in Support:

(1) The August and October 2006 Agreements, emails between Fred Wu, Plaintiff, and Ben Chang dated 2006 containing drafts and versions of the documents. The signed documents themselves bear the signatures of Zheng Tao Han, Plaintiff Richard L. Chang, and Fred Wu, Chairman of the Board of Biosuccess. Zheng Tao Han, Fred Wu, Ben Chang, and Richard Chang will all testify that the two Agreements were signed and dated and Richard Chang and Ben Chang will testify that the August 2006 Agreement was Signed in August 2006 and the October 2006 Agreement was signed in October 2006.

(2) Richard Chang, David Chou, and Richard Salvador will testify that Professor Chang fulfilled his role as CSO, including the invention of multiple new indications and working with patent counsel to file applications based on those inventions and to prosecute them before the USTPO. Email documents will also show the same.

(3) Plaintiff incorporates all evidence above.

(4) Emails and letters from and testimony of Jeffrey King show that the patent portfolio has been irreparably damaged due to Biosuccess' failure to perform under the contract, including failure to make payments required, to manage

EntrepreneurLaw Group LLP
www.computerlaw.com℠

the business in a reasonable and open manner, to provide the documents and financials required by the agreement, the failure to protect the patent estate after Professor Chang's termination. Fred Wu and Zheng Tao Han will testify that he knows the life of that patent is more than half past without Plaintiff being able to benefit. Fred Wu and Richard Chang will also testify that Biosuccess has not paid Plaintiff the consideration demanded by the October 2006 Agreement, but has maintained control of Plaintiff's right in the '814 Patent, significantly harming Plaintiff. Bank records, money wire receipts, and hand-written receipt signed by Fred Wu will show that Richard Chang returned over $250,000 to Biosuccess during his time with the company, and Richard Chang will testify to the same.

**Conditional Counterclaim 2: Negligent Mismanagement**

Summary: Biosuccess Chairman of the Board, Fred Wu, mismanaged Biosuccess as a company, did not honor the corporate form, did not maintain corporate documents, and did not provide detailed semi-annual reports or hold regular quarterly meetings with Professor Chang, as required by the October 2006 Agreement and as demanded on multiple occasions by Plaintiff.

Elements: Negligence is the failure to use that degree of care, precaution and vigilance which a reasonably prudent person would use under the same or similar circumstances. It includes both affirmative acts which a reasonably prudent person would not have done and the omission of acts or precautions which a reasonably prudent person would have done or taken in the circumstances. (See New Jersey Model Civil Jury Instruction 5.10A.)

Summary of Evidence in Support:

- Plaintiff incorporates all evidence set forth above.
- Emails produced by Roger Strair will show that Fred Wu's ineptitude and chicanery as a corporate officer led to the suspension of Biosuccess' Phase II clinical trials for a period of at least a year.

EntrepreneurLaw Group LLP
www.computerlaw.com℠

- Dr. Roger Strair will testify that Fred Wu gave instructions to suspend Biosuccess' Phase II clinical trials in 2011.
- Letter and emails from Plaintiff and Ben Chang to Fred Wu will show that Plaintiff requested financial information and documentation, corporate records, lists of shareholders, and other corporate documentation, and that Biosuccess failed to provide those documents as required by the October 2006 Agreement and general practices of corporate governance.
- David Chou, Richard Salvador, Ben Chang, and Richard Chang will testify that Fred Wu did not keep proper corporate records.
- Public records from the United States Patent and Trademark office show Fred Wu's mismanagement of the patent portfolio, that he attempted and succeeded in removing Plaintiff's name from patents based on Plaintiff's research, and that the life of the patent is now more than half over. Jeffrey King will testify that on at least one occasion, he was given forged documents by Fred Wu that Biosuccess intended to submit to the USPTO.
- Patent portfolios are a recognized important asset of corporations. Ben Chang will testify that approximately 79% of corporate value resides in the intellectual property of the corporation.
- Biosuccess has stated in its investment documents and sworn declarations in this case that their patent portfolio is critical to its ongoing business and ultimate success.
- Fred Wu and Zheng Tao Han will testify that the only patent in the Biosuccess patent portfolio is the '814 Patent.
- Between 2009 and 2013, the only patent applications in the Biosuccess patent portfolio identified Chang as the primary inventor.
- In late 2013, Wu and Han as officers of Biosuccess entered into a course of action whereby they abandoned all of the patent applications naming Chang

EntrepreneurLaw Group LLP
www.computerlaw.com℠

as a co-inventor and filed substantially similar applications that failed to identify Chang as a co-inventor.

- Zheng Tao Han and Fred Wu will testify that as corporate officers of Biosuccess they have acknowledged their respective fiduciary duties to take all reasonable steps to maintain and build an enforceable patent portfolio.

- As part of the consideration for entering into the Patent Assignment Contract[2], Chang specifically negotiated for shares in the business.

- Chang is a shareholder in Biosuccess.

## SUMMARY OF DEFENDANT BIOSUCCESS' AFFIRMATIVE DEFENSES [L.R. 16-4.1(D)(E)]

In response to Plaintiff's single claim and two conditional counterclaims, Biosuccess asserts no fewer than sixty-two so-called affirmative defenses, which Plaintiff will group according to actual arguments and assertions Biosuccess has entered in this case. In the interest of succinctness, the evidence against each group of asserted and supported affirmative defense is also grouped for the Court's convenience.

## Affirmative Defenses Related to "Breach of Contract"

a. Breach of Contract

Elements: Defendant must prove all of the following: (1) Plaintiff and Defendant entered into a contract; (2) that Defendant did all or substantially all of the significant things that the contract required him to do or that he was excused from doing those things; (3) that Plaintiff materially breached the contract; and (4) that Plaintiff's breach caused Plaintiff measurable injury. (See New Jersey Model Civil Jury Instructions 4.10(L).)

//

//

---

[2] This fiduciary duty applies irrespective of which "version" of the Patent Assignment Contract controls.

EntrepreneurLaw Group LLP
www.computerlaw.com℠

b.  Breach of the Implied Covenant of Good Faith and Fair Dealing.

Elements: Defendant must prove all of the following: (1) that Plaintiff and Defendant entered into a contract; (2) that Defendant did all, or substantially all of the significant things that the contract required it to do or it was excused from having to do those things; (3) that all conditions required for Plaintiff's performance occurred or were excused; (4) that plaintiff unfairly interfered with Defendant's right to receive the benefits of the contract; and (5) that Defendant was harmed by Plaintiff's conduct. (See New Jersey Model Civil Jury Instructions 4.10(J).)

c.  Failure to Fulfill Conditions Precedent

Elements: To overcome the contention that Plaintiff and Defendant agreed in their contract that Defendant would not have to perform certain obligations unless some conditions precedent, that the condition did not occur, and that therefore Defendant was obligated to perform, Defendant must prove by clear and convincing evidence that Defendant, by words or conduct, gave up its right to require the condition precedent before having to perform. Source: CACI 323 (Waiver of Condition Precedent)

### Summary of Evidence Opposing
### "Breach of Contract" Affirmative Defenses:

- The August 2006 Agreement;
- The October 2006 Agreement;
- Emails from August 2006 containing drafts and revisions of the Agreements, as well as redlined and corrected versions of the Agreements produced at depositions;
- The Agreements show that the later dated October 2006 Agreement contains an integration clause, explicitly making it the controlling agreement between the parties. Zheng Tao Han, Fred Wu, Richard Chang, and Ben Chang will all testify to the same.

EntrepreneurLaw Group LLP
www.computerlaw.com℠

EntrepreneurLaw Group LLP
www.computerlaw.com℠

- The Agreements will also show that, in exchange for Plaintiff's assignment of right and interest in the '814 Patent and applications, Plaintiff was to receive a consulting fee and $2 million in consideration for work and research done on TPA at specific dates. Fred Wu and Richard Chang will testify, as they must, that Plaintiff never received that consideration.

- Fred Wu will testify, as he must, that Biosuccess did not fulfill its obligations under either contract because Biosuccess has not paid Richard Chang his consideration;

- Fred Wu and Richard Chang will testify, and letters produced in this case will show, that Biosuccess made a payment of $250,000 to Richard Chang by wire transfer.

- Richard Chang will testify that he paid that amount back to Biosuccess, plus more, over the course of his relationship with that company. Bank records, wire transfer receipts, and hand-written receipts signed by Fred Wu will show this to be true.

- Richard Chang, Ben Chang, Richard Salvador, Dr. Roger Strair, and David Chou will testify that Fred Wu's ineptitude and chicanery as a corporate officer led to the suspension of Biosuccess' Phase II clinical trials for a period of at least a year starting in 2011.

- Video deposition testimony and witness testimony from Fred Wu will show that Biosuccess did not pay Richard Chang any of the $2 million he was supposed to receive under the October 2006 Agreement.

- Public USPTO documents from 2006 as well as email attachments and letters produced in discovery will show that Plaintiff did assign his right and interest in the '814 Patent and related application to Biosuccess, and worked diligently with and for Biosuccess for a period of over six years, held the positions required by the October 2006 Agreement, and paid thousands of dollars of his own money to support Biosuccess.

- Plaintiff sent a letter to Fred Wu of Biosuccess requesting corporate documents and information in January 2013, and that fewer than 10 days later, Fred Wu terminated both Richard Chang and Ben Chang. The termination letters to both Richard and Ben Chang will show this to be true.
- Meeting minutes documents and the testimony of David Chou, Richard Chang, Ben Chang, and Richard Salvador will show that Fred Wu failed to maintain the corporate form, failed to fulfill his fiduciary duties as a corporate officer, allowed patent applications to expire, failed to provide required documents to shareholders, and failed to maintain proper corporate records.
- Video deposition and witness testimony of Fred Wu will show that Richard Chang still has not received the consideration required by the controlling October 2006 Agreement for assignment of his rights.

### Affirmative Defenses Related to a "Controlling Agreement"

a. <u>Novation</u>

<u>Elements</u>: To succeed, Defendant must prove that all parties agreed, by words or by conduct, to cancel the original contract and to substitute a new contract in its place. (<u>See</u> New Jersey Model Civil Jury Instructions 4.10(N)(1)(a).)

b. <u>Waiver</u>

<u>Elements</u>: Defendant has the burden to establish (1) that Plaintiff knew Defendant was required to perform certain obligations under the contract; and (2) that Plaintiff freely and knowingly gave up his right to have Defendant perform those obligations. (<u>See</u> New Jersey Model Civil Jury Instructions 4.10(N)(d).)

c. <u>Failure to Mitigate Damages</u>

<u>Elements</u>: Biosuccess must establish Plaintiff did not make a reasonable effort to lessen or reduce his damages. (<u>See</u> New Jersey Model Civil Jury Instructions Charge 8.45(C).)

d. Unclean hands/Conduct

Elements: "The essence of [the unclean hands] doctrine…is that [a] suitor in equity must come into court with clean hands and he must keep them clean after his entry and throughout the proceedings. Borough of Princeton v. Bd. Of chosen Freeholders of Mercer, 169 N.J. 135, 158 (2001) citing A. Hollander & Son, Inc. v. Imperial Fur Blending Corp., 2 N.J. 235, 246 (1949). The doctrine of unclean hands "gives expression to the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." Id. quoting Faustin v. Lewis, 85 N.J. 507, 511 (1981).

e. Modification and Amendment

Elements: Defendant must prove: (1) that the parties agreed to a modification of the contract; (2) there was some outward indication of their agreement; (3) the terms were reasonably certain, meaning the parties could identify what they are required to do and determine at some future date whether or not the terms have been fulfilled; and (4) Plaintiff received some new value in exchange for agreeing to the modification. See New Jersey Model Civil Jury Instructions 4.10(I).)

**Summary of Evidence Opposing**
**"Controlling Agreement" Affirmative Defenses**

- August 2006 Agreement;

- October 2006 Agreement;

- Emails attaching versions and revisions of both Agreements dated 2006;

- Redlined and corrected versions of the Agreements produced at depositions will show that the October 2006 Agreement must be the controlling agreement;

- Richard Chang and Ben Chang will testify that Zheng Tao Han, Richard L. Chang, and Fred Wu signed and dated the two agreements (dated August 30, 2006 and October 12, 2006, respectively) on or within days of the dates that appear on the agreements as signed.

EntrepreneurLaw Group LLP
www.computerlaw.com℠

- The August and October Agreements show, and Fred Wu, Zheng Tao Han, Richard Chang, and Ben Chang will testify that the later dated October 2006 Agreement contains an integration clause, explicitly making it the controlling agreement between the parties.

- Ben Chang and Richard Chang will testify, and the deposition testimony of Fred Wu will show, that the October 2006 Agreement contains corrections and terms meant to be updates from the August 2006 Agreement correcting the understanding between the parties; and that Fred Wu cannot account for those changes appearing in what Defendant contends is an agreement signed *after* the October 2006 and then for some reason *backdated* to before a superseding agreement. Emails produced in discovery between Fred Wu and Richard Chang, dated August 2006, contain working versions of the August 2006 Agreement.

- The Agreements, emails between the parties, video deposition testimony of Fred Wu, and the testimony of Ben Chang and Richard Chang will show that, in exchange for Plaintiff's assignment of right and interest in the '814 Patent and applications, Plaintiff was to receive a consulting fee and $2 million in consideration for work and research done on TPA at specific dates, that Fred Wu represented that Biosuccess could and would pay those amounts, and that Plaintiff never received that consideration.

- Fred Wu will testify that evidence that Biosuccess did not fulfill its obligations under either contract by failing to pay Plaintiff the consideration he was owed for the transfer of his right and interest in the '814 Patent.

- Bank records, money wire receipts, and hand-written receipts signed by Fred Wu will show that Richard Chang returned over $250,000 to Biosuccess during his time with that company, and Richard Chang will testify to the same.

Entrepreneur Law Group LLP
www.computerlaw.com℠

- Video deposition testimony from Fred Wu shows, and Fred Wu will testify that he has decades of experience working with contracts and that he understands what a superseding agreement containing an integration clause is and how contracts work in the American system.

### Affirmative Defenses Alleging "Plaintiff Misconduct"

a. <u>Performance of duties</u>

As worded in Defendant's affirmative defenses, performance of duties is an element of Breach of Contract. Biosuccess did not perform under the contract, did not pay Plaintiff the consideration owed, and that led to this lawsuit.

b. <u>Negligence or Fault</u>

<u>Elements</u>: Negligence is the failure to use that degree of care, precaution and vigilance which a reasonably prudent person would use under the same or similar circumstances. It includes both affirmative acts which a reasonably prudent person would not have done and the omission of acts or precautions which a reasonably prudent person would have done or taken in the circumstances. (<u>See</u> New Jersey Model Civil Jury Instruction 5.10A.

c. <u>Unjust Enrichment</u>

<u>Elements</u>: Defendant must demonstrate that (1) Plaintiff has been enriched; (2) that the enrichment has been at Defendant's expense; and (3) that the enrichment was unjust. "The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." <u>See</u> <u>Goldsmith v. Camden County Surrogate's Office</u>, 408 N.J. Super. 376, 382 (App.Div. 2009); <u>Callano v. Oakwood Park Homes Corp.</u>, 91 N.J. Super. 105, 108 (App.Div. 1966).

//

//

//

EntrepreneurLaw Group LLP
www.computerlaw.com℠

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EntrepreneurLaw Group LLP
www.computerlaw.com℠

    d.    Apportionment

Elements: To succeed on its affirmative defense for apportionment, Defendant must prove: (1) that Plaintiff was at fault; and (2) that the negligence or fault of Plaintiff was a substantial factor in causing Defendant's harm.

    e.    Failure to Join A Necessary And Indispensable Party

Elements: Defendant must show that Plaintiff failed to join a party who (1) in that person's absence, the court cannot accord complete relief among existing parties or that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. (See Federal Rule of Civil Procedure 19(a).)

**Summary of Evidence Opposing
Purported "Misconduct" Affirmative Defenses**

- Richard Chang, Ben Chang, Richard Salvador, and David Chou will testify that Plaintiff worked diligently for Biosuccess during his tenure with that company with the shared goal of bringing a product to market and that it was through the failures and ineptitude of Biosuccess' Chairman of the Board, Fred Wu that no Phase II clinical trials were completed.

- The Agreements will also show that, in exchange for Plaintiff's assignment of right and interest in the '814 Patent and applications, Plaintiff was to receive a consulting fee and $2 million in consideration for work and research done on TPA at specific dates, and that Plaintiff never received that consideration.

- Fred Wu's, Richard Chang's, and Ben Chang's testimony will demonstrate that Biosuccess breached its contract by failing to pay the required consideration to Plaintiff, and that plaintiff therefore retained his right and

interest in the '814 Patent and portfolio, allowing Plaintiff to reassign that right and interest.

- Signed letters, bank statements, money transfer documents, and hand-written receipts signed by Fred Wu demonstrate that Biosuccess made a payment of $250,000 to Richard Chang by wire transfer, but that Richard Chang paid that amount back to Biosuccess, plus more, over the course of his relationship with that company.

- Emails produced by Patent Network Law Group and testimony from Fred Wu, Zheng Tao Han, Ben Chang, and Richard Chang will show that Fred Wu's ineptitude and chicanery as a corporate officer led to the suspension of Biosuccess' Phase II clinical trials for a period of at least a year.

- Video deposition testimony will show, and Fred Wu will testify, as he must, that Biosuccess did not pay Richard Chang any of the $2 million he was supposed to receive under the October 2006 Agreement.

- USPTO records from 2006 and the testimony of Richard Chang, Ben Chang, Jeff King, Zheng Tao Han and Fred Wu will show that Plaintiff did assign his right and interest in the '814 Patent and related application to Biosuccess. David Chou, Ben Chang, and Richard Chang will testify that Plaintiff worked diligently with and for Biosuccess for a period of over six years, held the positions required by the October 2006 Agreement, and paid thousands of dollars of his own money to support Biosuccess.

- Letters from Plaintiff to Fred Wu will show that Plaintiff sent a letter to Fred Wu of Biosuccess requesting corporate documents and information in January 2013, and that fewer than 10 days later, Fred Wu terminated both Richard Chang and Ben Chang. The termination letters to Ben and Richard Chang will also show that they were terminated just days after requesting corporate documents from Fred Wu and Biosuccess. Richard and Ben Chang and Fred Wu, as he must, will testify to the same.

EntrepreneurLaw Group LLP
www.computerlaw.com℠

- Produced letters, emails, and the testimony of David Chou, Richard Salvador, Richard Chang, and Ben Chang will show that Fred Wu failed to maintain the corporate form, failed to fulfill his fiduciary duties as a corporate officer, allowed patent applications to expire, failed to provide required documents to shareholders, and failed to maintain proper corporate records.

- Ben Chang, Richard Chang, David Chou, and Richard Salvador will testify that Plaintiff performed all of his duties as a corporate officer, contractor, and employee of Biosuccess, and that any failures or inequitable conduct were on the part of or directly caused by Fred Wu's lack of transparency and ineptitude.

- Video deposition testimony of Fred Wu will show that Richard Chang still has not received the consideration required by the controlling October 2006 Agreement for assignment of his rights. Fred Wu will testify to the same, as he must, as will Richard Chang.

- The docket record in this case demonstrates that the parties stipulated on March 7, 2014 to add Zheng Tao Han as an indispensable party to this case. [Dkt. 99, 105, 106]

## **Unsupported or Inadequate Affirmative Defenses**

Biosuccess also asserted the following unsupported or incomplete affirmative defenses to Plaintiff's Complaint and Conditional Counterclaims: Failure to state a claim on which relief can be granted, lack of standing, statute of limitations, frivolous action, lack of irreparable harm, lack of subject matter jurisdiction, equitable estoppel, laches, failure to mitigate damages, adequacy of remedy at law, remote and speculative damages, parol evidence, lack of causation, acquiescence and ratification, justification, prevention of performance, accord and satisfaction, and consent.

EntrepreneurLaw Group LLP
www.computerlaw.com℠

## C. SUMMARY OF BIOSUCCESS' COUNTERCLAIMS

**Claim 1: Declarative Judgment**

Elements: Defendant has the burden of proving (1) there exists an actual and justiciable controversy to warrant the issuance of a declaratory judgment; (2) unless enjoined, Plaintiff's actions will result in the loss of property or damages. See generally Wilton v. Seven Falls Co., 515 U.S. 277 (1995); 28 U.S.C.S. § 2201(a).

Summary of Evidence:

- The August 2006 Agreement;

- The October 2006 Agreement;

- Emails attaching versions and revisions of both Agreements;

- Redlined and corrected versions of the Agreements produced as deposition exhibits;

- Richard Chang and Ben Chang will testify that Zheng Tao Han, Richard L. Chang, and Fred Wu signed and dated the two agreements (dated August 30, 2006 and October 12, 2006, respectively) on or within days of the dates that appear on the agreements as signed.

- The August and October Agreements show, and Fred Wu, Zheng Tao Han, Richard Chang, and Ben Chang will testify that the later dated October 2006 Agreement contains an integration clause, explicitly making it the controlling agreement between the parties.

- Ben Chang and Richard Chang will testify, and the deposition testimony of Fred Wu will show, that the October 2006 Agreement contains corrections and terms meant to be updates from the August 2006 Agreement correcting the understanding between the parties; and that Fred Wu cannot account for those changes appearing in what Defendant contends is an agreement signed *after* the October 2006 and then for some reason *backdated* to before a superseding agreement. Emails produced in discovery between Fred Wu and

EntrepreneurLaw Group LLP
www.computerlaw.com℠

1   Richard Chang, dated August 2006, contain working versions of the August

2   2006 Agreement.

3   • The Agreements, emails between the parties, video deposition testimony of

4   Fred Wu, and the testimony of Ben Chang and Richard Chang will show

5   that, in exchange for Plaintiff's assignment of right and interest in the '814

6   Patent and applications, Plaintiff was to receive a consulting fee and $2

7   million in consideration for work and research done on TPA at specific dates,

8   that Fred Wu represented that Biosuccess could and would pay those

9   amounts, and that Plaintiff never received that consideration.

10  • Fred Wu will testify that evidence that Biosuccess did not fulfill its

11  obligations under either contract by failing to pay Plaintiff the consideration

12  he was owed for the transfer of his right and interest in the '814 Patent.

13  • Bank records, money wire receipts, and hand-written receipts signed by Fred

14  Wu will show that Richard Chang returned over $250,000 to Biosuccess

15  during his time with that company, and Richard Chang will testify to the

16  same.

17  • Video deposition testimony from Fred Wu shows, and Fred Wu will testify

18  that he has decades of experience working with contracts and that he

19  understands what a superseding agreement containing an integration clause

20  is and how contracts work in the American system.

21  **Claim 2: Breach of Contract—Failure to Fulfill Duties as the CTO/CSO**

22  Elements: Defendants must prove that (1) Plaintiff and Defendant entered into a

23  contract; (2) that Defendant did all or substantially all of the significant things that

24  the contract required it to do or that it was excused from doing those things; (3)

25  that Plaintiff materially breached the contract; and (5) that Plaintiff's breach caused

26  Defendant measurable injury. (See New Jersey Model Civil Jury Instructions

27  4.10(L).)

28

Entrepreneur Law Group LLP
www.computerlaw.com℠

<u>Summary of Evidence</u>:

- The August 2006 Agreement;
- The October 2006 Agreement;
- Emails attaching versions and revisions of both Agreements;
- Redlined and corrected versions of the Agreements produced as deposition exhibits;
- Plaintiff incorporates by reference the evidence above, which shows that Plaintiff fulfilled all of his obligations under the October 2006 Agreement.
- Plaintiff's Curriculum Vitae and list of publications, along with the testimony of Ben Chang and Richard Chang will show that Plaintiff produced papers, research, and directed others doing research in good faith for Biosuccess for a period of over six years as a Chief Scientific Officer, Chief Technical Officer, consultant, and employee.
- Video deposition testimony of Fred Wu, and Fred Wu's witness testimony will show that Richard Chang still has not received the consideration required by the controlling October 2006 Agreement for assignment of his rights.

**Claim 3: Breach of Contract–Assignment of International Patent Applications**

<u>Elements</u>: Defendants must prove that (1) Plaintiff and Defendant entered into a contract; (2) that Defendant did all or substantially all of the significant things that the contract required it to do or that it was excused from doing those things; (3) that Plaintiff materially breached the contract; and (5) that Plaintiff's breach caused Defendant measurable injury. (<u>See</u> New Jersey Model Civil Jury Instructions 4.10(L).)

<u>Summary of Evidence</u>:

- The August 2006 Agreement;
- The October 2006 Agreement;
- Emails attaching versions and revisions of both Agreements;

Entrepreneur Law Group LLP
www.computerlaw.com℠

- Redlined and corrected versions of the Agreements produced as deposition exhibits;
- Plaintiff incorporates by reference the evidence described above which shows that Plaintiff did not breach the October 2006 Agreement and that any failure to fulfill any obligations under that Agreement were directly cause by Biosuccess. That evidence further demonstrates that Biosuccess breached the Agreement, and Plaintiff retained his right to assign his interest in the 8'14 Patent, portfolio, and application, domestic or international. Ben Chang, Richard Chang, David Chou, Jeffrey King, and Richard Salvador will testify to the same.
- Testimony from Jeffrey King (if allowed) that the fraud relating to the patent portfolio was committed by Fred Wu on Behalf of Biosuccess.
- Emails and letters from Patent Network Law Group to Biosuccess regarding the lapsing of international patent applications.

**Claim 4: Fraud**

Elements: Defendant must prove by clear and convincing evidence each of the following: (1) Plaintiff made a false representation to Defendant; (2) Plaintiff knew or believed it to be false; (3) Plaintiff intended to deceive Defendant; (4) Defendant believed a justifiably relied upon the statement and was induced by it to take an action; and (5) as a result of Defendant's reliance upon the statement, it sustained damage. (See New Jersey Model Civil Jury Instructions 3.30E.)

Summary of Evidence: Plaintiff incorporates by reference the evidence described above which shows that it was Defendant's fraud, not Plaintiff's, that has caused damage to the patent portfolio, and that Plaintiff is the party that has been damaged by Biosuccess' fraudulent misconduct. Jeffrey King will testify that he has seen fraudulent documents from Biosuccess in the past, and that the actions they've taken in submissions to the USPTO may constitute fraud. Jeffrey King will also

Entrepreneur Law Group LLP
www.computerlaw.com℠

1  testify, and USPTO documents will show that Biosuccess has removed Plaintiff as

2  an inventor from applications based on Plaintiff's research.

3  **Claim 5: Negligent Misrepresentation**

4  <u>Elements</u>: Negligence is the failure to use that degree of care, precaution and

5  vigilance which a reasonably prudent person would use under the same or similar

6  circumstances. It includes both affirmative acts which a reasonably prudent person

7  would not have done and the omission of acts or precautions which a reasonably

8  prudent person would have done or taken in the circumstances. (<u>See</u> New Jersey

9  Model Civil Jury Instruction 5.10A.

10  <u>Summary of Evidence</u>: Plaintiff incorporates by reference the evidence described

11  above which shows that Plaintiff made no such misrepresentations, and that it was

12  in fact Plaintiff that was damaged by Biosuccess' misrepresentations that it would

13  pay Plaintiff the consideration contemplated and required by the October 2006

14  Agreement. Richard Chang will testify that this is the case, and Fred Wu will

15  testify that he promised Richard Chang would be paid.

16  **Claim 6: Unjust Enrichment**

17  <u>Elements</u>: Plaintiff must demonstrate that (1) Defendant has been enriched; (2) that

18  the enrichment has been at Plaintiff's expense; and (3) that the enrichment was

19  unjust. "The doctrine of unjust enrichment rests on the equitable principle that a

20  person shall not be allowed to enrich himself unjustly at the expense of another."

21  <u>See</u> <u>Goldsmith v. Camden County Surrogate's Office</u>, 408 N.J. Super. 376, 382

22  (App.Div. 2009); <u>Callano v. Oakwood Park Homes Corp.</u>, 91 N.J. Super. 105, 108

23  (App.Div. 1966).

24  <u>Summary of Evidence</u>: Plaintiff incorporates by reference the evidence above

25  which shows that Biosuccess is the party that has been unjustly enriched by

26  retaining control and benefit of Plaintiff's interest in the '814 Patent and related

27  applications after breaching it's agreement with Plaintiff, for which that interest

28  and control reverts back to Plaintiff.

EntrepreneurLaw Group LLP
www.computerlaw.com℠

**Claim 7: Breach of Fiduciary Duty**

<u>Elements</u>: Defendant must prove that (1) Plaintiff was Defendant's fiduciary; (2) Plaintiff knowingly acted against Defendant's interests in connection with assignment of right and interest; (3) Defendant did not give informed consent to Plaintiff's conduct; (4) Defendant was harmed; and (5) Plaintiff's conduct was a substantial factor in causing that harm. (See CACI Form Jury Instructions § 4102.)

<u>Summary of Evidence</u>: Plaintiff incorporates by reference the evidence above which shows that while Plaintiff did have fiduciary duties as an officer and board member of Biosuccess, at all times during his tenure he acted in Biosuccess' interest. Further, any duties that Plaintiff had to Biosuccess expired on the day Biosuccess terminated Plaintiff and his son.

<u>**Summary of Plaintiff's Affirmative Defenses**</u>

Plaintiff has asserted several affirmative defenses where Defendant has failed to support an essential element of its counterclaims with the evidence. These defenses include: no breach of contract, no misleading representations to Biosuccess, no concealment of material facts, failure to perform, prevention of performance, no breach of fiduciary duty, fulfillment of all duties as CTO/CSO, fulfillment of all duties under the Agreements, no irreparable harm (barring injunctive relief), complete and adequate recovery by law (barring injunctive relief), and lack of causation.

**1.     Breach of Contract by Biosuccess**

<u>Elements</u>: Plaintiff must prove that (1) Plaintiff and Defendant entered into a contract; (2) that Plaintiff did all or substantially all of the significant things that the contract required him to do or that he was excused from doing those things; (3) that Defendant materially breached the contract; and (4) that Defendant's breach caused Plaintiff measurable injury. (<u>See</u> New Jersey Model Civil Jury Instructions 4.10(L).)

EntrepreneurLaw Group LLP
www.computerlaw.com℠

Summary of Evidence in Support:

(1) The August and October 2006 Agreements, emails between Fred Wu, Plaintiff, and Ben Chang dated 2006 containing drafts and versions of the documents. The signed documents themselves bear the signatures of Zheng Tao Han, Plaintiff Richard L. Chang, and Fred Wu, Chairman of the Board of Biosuccess. Zheng Tao Han, Fred Wu, Ben Chang, and Richard Chang will all testify that the two Agreements were signed and dated and Richard Chang and Ben Chang will testify that the August 2006 Agreement was Signed in August 2006 and the October 2006 Agreement was signed in October 2006.

(2) Richard Chang, David Chou, and Richard Salvador will testify that Professor Chang fulfilled his role as CSO, including the invention of multiple new indications and working with patent counsel to file applications based on those inventions and to prosecute them before the USTPO. Email documents will also show the same.

(3) Plaintiff incorporates all evidence above.

(4) Emails and letters from and testimony of Jeffrey King show that the patent portfolio has been irreparably damaged due to Biosuccess' failure to perform under the contract, including failure to make payments required, to manage the business in a reasonable and open manner, to provide the documents and financials required by the agreement, the failure to protect the patent estate after Professor Chang's termination. Fred Wu and Zheng Tao Han will testify that he knows the life of that patent is more than half past without Plaintiff being able to benefit. Fred Wu and Richard Chang will also testify that Biosuccess has not paid Plaintiff the consideration demanded by the October 2006 Agreement, but has maintained control of Plaintiff's right in the '814 Patent, significantly harming Plaintiff. Bank records, money wire receipts, and hand-written receipt signed by Fred Wu will show that Richard

Entrepreneur Law Group LLP
www.computerlaw.com℠

1       Chang returned over $250,000 to Biosuccess during his time with the

2       company, and Richard Chang will testify to the same.

3 **2.      Breach of the Implied Covenant of Good Faith and Fair Dealing**

4 <u>Elements</u>: Defendant must prove all of the following: (1) that Plaintiff and

5 Defendant entered into a contract; (2) that Defendant did all, or substantially all of

6 the significant things that the contract required it to do or it was excused from

7 having to do those things; (3) that all conditions required for Plaintiff's

8 performance occurred or were excused; (4) that plaintiff unfairly interfered with

9 Defendant's right to receive the benefits of the contract; and (5) that Defendant

10 was harmed by Plaintiff's conduct. (<u>See</u> New Jersey Model Civil Jury Instructions

11 4.10(J).)

12 <u>Summary of Evidence</u>:

13     • The August 2006 Agreement;

14     • The October 2006 Agreement;

15     • Emails from August 2006 containing drafts and revisions of the Agreements,

16        as well as redlined and corrected versions of the Agreements produced at

17        depositions;

18     • The Agreements show that the later dated October 2006 Agreement contains

19        an integration clause, explicitly making it the controlling agreement between

20        the parties. Zheng Tao Han, Fred Wu, Richard Chang, and Ben Chang will

21        all testify to the same.

22     • The Agreements will also show that, in exchange for Plaintiff's assignment

23        of right and interest in the '814 Patent and applications, Plaintiff was to

24        receive a consulting fee and $2 million in consideration for work and

25        research done on TPA at specific dates. Fred Wu and Richard Chang will

26        testify, as they must, that Plaintiff never received that consideration.

27

28

EntrepreneurLaw Group LLP
www.computerlaw.com℠

- Fred Wu will testify, as he must, that Biosuccess did not fulfill its obligations under either contract because Biosuccess has not paid Richard Chang his consideration;

- Fred Wu and Richard Chang will testify, and letters produced in this case will show, that Biosuccess made a payment of $250,000 to Richard Chang by wire transfer.

- Richard Chang will testify that he paid that amount back to Biosuccess, plus more, over the course of his relationship with that company. Bank records, wire transfer receipts, and hand-written receipts signed by Fred Wu will show this to be true.

- Richard Chang, Ben Chang, Richard Salvador, Dr. Roger Strair, and David Chou will testify that Fred Wu's ineptitude and chicanery as a corporate officer led to the suspension of Biosuccess' Phase II clinical trials for a period of at least a year starting in 2011.

- Video deposition testimony and witness testimony from Fred Wu will show that Biosuccess did not pay Richard Chang any of the $2 million he was supposed to receive under the October 2006 Agreement.

- Public USPTO documents from 2006 as well as email attachments and letters produced in discovery will show that Plaintiff did assign his right and interest in the '814 Patent and related application to Biosuccess, and worked diligently with and for Biosuccess for a period of over six years, held the positions required by the October 2006 Agreement, and paid thousands of dollars of his own money to support Biosuccess.

- Plaintiff sent a letter to Fred Wu of Biosuccess requesting corporate documents and information in January 2013, and that fewer than 10 days later, Fred Wu terminated both Richard Chang and Ben Chang. The termination letters to both Richard and Ben Chang will show this to be true.

EntrepreneurLaw Group LLP
www.computerlaw.com℠

- Meeting minutes documents and the testimony of David Chou, Richard Chang, Ben Chang, and Richard Salvador will show that Fred Wu failed to maintain the corporate form, failed to fulfill his fiduciary duties as a corporate officer, allowed patent applications to expire, failed to provide required documents to shareholders, and failed to maintain proper corporate records.

- Video deposition and witness testimony of Fred Wu will show that Richard Chang still has not received the consideration required by the controlling October 2006 Agreement for assignment of his rights.

**3.     Parol Evidence**

Elements: Plaintiff must demonstrate that the agreement in question is a binding integrated agreement which discharges prior agreements to the extent that it is inconsistent with them. If so, a binding completely integrated agreement discharges prior agreements to the extent that they are within its scope. (See Restatement (Second) of Contracts, § 213.)

Summary of Evidence:

- August 2006 Agreement;

- October 2006 Agreement;

- Emails attaching versions and revisions of both Agreements dated 2006;

- Redlined and corrected versions of the Agreements produced at depositions will show that the October 2006 Agreement must be the controlling agreement;

- Richard Chang and Ben Chang will testify that Zheng Tao Han, Richard L. Chang, and Fred Wu signed and dated the two agreements (dated August 30, 2006 and October 12, 2006, respectively) on or within days of the dates that appear on the agreements as signed.

- The August and October Agreements show, and Fred Wu, Zheng Tao Han, Richard Chang, and Ben Chang will testify that the later dated October 2006

EntrepreneurLaw Group LLP
www.computerlaw.com℠

Agreement contains an integration clause, explicitly making it the controlling agreement between the parties.

- Ben Chang and Richard Chang will testify, and the deposition testimony of Fred Wu will show, that the October 2006 Agreement contains corrections and terms meant to be updates from the August 2006 Agreement correcting the understanding between the parties; and that Fred Wu cannot account for those changes appearing in what Defendant contends is an agreement signed *after* the October 2006 and then for some reason *backdated* to before a superseding agreement. Emails produced in discovery between Fred Wu and Richard Chang, dated August 2006, contain working versions of the August 2006 Agreement.

- The Agreements, emails between the parties, video deposition testimony of Fred Wu, and the testimony of Ben Chang and Richard Chang will show that, in exchange for Plaintiff's assignment of right and interest in the '814 Patent and applications, Plaintiff was to receive a consulting fee and $2 million in consideration for work and research done on TPA at specific dates, that Fred Wu represented that Biosuccess could and would pay those amounts, and that Plaintiff never received that consideration.

- Fred Wu will testify that evidence that Biosuccess did not fulfill its obligations under either contract by failing to pay Plaintiff the consideration he was owed for the transfer of his right and interest in the '814 Patent.

- Bank records, money wire receipts, and hand-written receipts signed by Fred Wu will show that Richard Chang returned over $250,000 to Biosuccess during his time with that company, and Richard Chang will testify to the same.

- Video deposition testimony from Fred Wu shows, and Fred Wu will testify that he has decades of experience working with contracts and that he

Entrepreneur Law Group LLP
www.computerlaw.com℠

understands what a superseding agreement containing an integration clause is and how contracts work in the American system.

**4.    Negligent Misconduct**

<u>Elements</u>: Negligence is the failure to use that degree of care, precaution and vigilance which a reasonably prudent person would use under the same or similar circumstances. It includes both affirmative acts which a reasonably prudent person would not have done and the omission of acts or precautions which a reasonably prudent person would have done or taken in the circumstances. (<u>See</u> New Jersey Model Civil Jury Instruction 5.10A.)

<u>Summary of Evidence</u>:

- Plaintiff incorporates all evidence set forth above.
- Emails produced by Roger Strair will show that Fred Wu's ineptitude and chicanery as a corporate officer led to the suspension of Biosuccess' Phase II clinical trials for a period of at least a year.
- Dr. Roger Strair will testify that Fred Wu gave instructions to suspend Biosuccess' Phase II clinical trials in 2011.
- Letter and emails from Plaintiff and Ben Chang to Fred Wu will show that Plaintiff requested financial information and documentation, corporate records, lists of shareholders, and other corporate documentation, and that Biosuccess failed to provide those documents as required by the October 2006 Agreement and general practices of corporate governance.
- David Chou, Richard Salvador, Ben Chang, and Richard Chang will testify that Fred Wu did not keep proper corporate records.
- Public records from the United States Patent and Trademark office show Fred Wu's mismanagement of the patent portfolio, that he attempted and succeeded in removing Plaintiff's name from patents based on Plaintiff's research, and that the life of the patent is now more than half over. Jeffrey

Entrepreneur Law Group LLP
www.computerlaw.com℠

King will testify that on at least one occasion, he was given forged documents by Fred Wu that Biosuccess intended to submit to the USPTO.

- Patent portfolios are a recognized important asset of corporations. Ben Chang will testify that approximately 79% of corporate value resides in the intellectual property of the corporation.

- Biosuccess has stated in its investment documents and sworn declarations in this case that their patent portfolio is critical to its ongoing business and ultimate success.

- Fred Wu and Zheng Tao Han will testify that the only patent in the Biosuccess patent portfolio is the '814 Patent.

- Between 2009 and 2013, the only patent applications in the Biosuccess patent portfolio identified Chang as the primary inventor.

- In late 2013, Wu and Han as officers of Biosuccess entered into a course of action whereby they abandoned all of the patent applications naming Chang as a co-inventor and filed substantially similar applications that failed to identify Chang as a co-inventor.

- Zheng Tao Han and Fred Wu will testify that as corporate officers of Biosuccess they have acknowledged their respective fiduciary duties to take all reasonable steps to maintain and build an enforceable patent portfolio.

- As part of the consideration for entering into the Patent Assignment Contract[3], Chang specifically negotiated for shares in the business.

- Chang is a shareholder in Biosuccess.

**5. Waiver**

Elements: Defendant has the burden to establish (1) that Plaintiff knew Defendant was required to perform certain obligations under the contract; and (2) that Plaintiff

---

[3] This fiduciary duty applies irrespective of which "version" of the Patent Assignment Contract controls.

EntrepreneurLaw Group LLP
www.computerlaw.com℠

freely and knowingly gave up his right to have Defendant perform those obligations. (See New Jersey Model Civil Jury Instructions 4.10(N)(d).)

Summary of Evidence:

- The August 2006 Agreement;

- The October 2006 Agreement;

- Emails from August 2006 containing drafts and revisions of the Agreements, as well as redlined and corrected versions of the Agreements produced at depositions;

- The Agreements show that the later dated October 2006 Agreement contains an integration clause, explicitly making it the controlling agreement between the parties. Zheng Tao Han, Fred Wu, Richard Chang, and Ben Chang will all testify to the same.

- The Agreements will also show that, in exchange for Plaintiff's assignment of right and interest in the '814 Patent and applications, Plaintiff was to receive a consulting fee and $2 million in consideration for work and research done on TPA at specific dates. Fred Wu and Richard Chang will testify, as they must, that Plaintiff never received that consideration.

- Fred Wu will testify, as he must, that Biosuccess did not fulfill its obligations under either contract because Biosuccess has not paid Richard Chang his consideration;

- Fred Wu and Richard Chang will testify, and letters produced in this case will show, that Biosuccess made a payment of $250,000 to Richard Chang by wire transfer.

- Richard Chang will testify that he paid that amount back to Biosuccess, plus more, over the course of his relationship with that company. Bank records, wire transfer receipts, and hand-written receipts signed by Fred Wu will show this to be true.

EntrepreneurLaw Group LLP
www.computerlaw.com℠

- Richard Chang, Ben Chang, Richard Salvador, Dr. Roger Strair, and David Chou will testify that Fred Wu's ineptitude and chicanery as a corporate officer led to the suspension of Biosuccess' Phase II clinical trials for a period of at least a year starting in 2011.
- Video deposition testimony and witness testimony from Fred Wu will show that Biosuccess did not pay Richard Chang any of the $2 million he was supposed to receive under the October 2006 Agreement.
- Public USPTO documents from 2006 as well as email attachments and letters produced in discovery will show that Plaintiff did assign his right and interest in the '814 Patent and related application to Biosuccess, and worked diligently with and for Biosuccess for a period of over six years, held the positions required by the October 2006 Agreement, and paid thousands of dollars of his own money to support Biosuccess.
- Plaintiff sent a letter to Fred Wu of Biosuccess requesting corporate documents and information in January 2013, and that fewer than 10 days later, Fred Wu terminated both Richard Chang and Ben Chang. The termination letters to both Richard and Ben Chang will show this to be true.
- Meeting minutes documents and the testimony of David Chou, Richard Chang, Ben Chang, and Richard Salvador will show that Fred Wu failed to maintain the corporate form, failed to fulfill his fiduciary duties as a corporate officer, allowed patent applications to expire, failed to provide required documents to shareholders, and failed to maintain proper corporate records.
- Video deposition and witness testimony of Fred Wu will show that Richard Chang still has not received the consideration required by the controlling October 2006 Agreement for assignment of his rights.

EntrepreneurLaw Group LLP
www.computerlaw.com℠

**6.     Equitable estoppel**

Elements: The doctrine of equitable estoppel "is to be applied where the interests of justice, morality and common fairness clearly dictate that course." Davin, L.L.C. v. Daham, 329 N.J. Super. 54, 67 (App.Div. 2000). To establish a claim of equitable estoppel, Plaintiff "must show that the alleged conduct was done, or representation was made, intentionally, or under such circumstances that it was both natural and probable that it would induce action." Id. citing Miller v. Miller, 97 N.J. 154, 163 (1984) (internal quotations omitted).

Summary of Evidence:

- Richard Chang, Ben Chang, Richard Salvador, and David Chou will testify that Plaintiff worked diligently for Biosuccess during his tenure with that company with the shared goal of bringing a product to market and that it was through the failures and ineptitude of Biosuccess' Chairman of the Board, Fred Wu that no Phase II clinical trials were completed.

- The Agreements will also show that, in exchange for Plaintiff's assignment of right and interest in the '814 Patent and applications, Plaintiff was to receive a consulting fee and $2 million in consideration for work and research done on TPA at specific dates, and that Plaintiff never received that consideration.

- Fred Wu's, Richard Chang's, and Ben Chang's testimony will demonstrate that Biosuccess breached its contract by failing to pay the required consideration to Plaintiff, and that plaintiff therefore retained his right and interest in the '814 Patent and portfolio, allowing Plaintiff to reassign that right and interest.

- Signed letters, bank statements, money transfer documents, and hand-written receipts signed by Fred Wu demonstrate that Biosuccess made a payment of $250,000 to Richard Chang by wire transfer, but that Richard Chang paid

1   that amount back to Biosuccess, plus more, over the course of his

2   relationship with that company.

3   • Emails produced by Patent Network Law Group and testimony from Fred

4   Wu, Zheng Tao Han, Ben Chang, and Richard Chang will show that Fred

5   Wu's ineptitude and chicanery as a corporate officer led to the suspension of

6   Biosuccess' Phase II clinical trials for a period of at least a year.

7   • Video deposition testimony will show, and Fred Wu will testify, as he must,

8   that Biosuccess did not pay Richard Chang any of the $2 million he was

9   supposed to receive under the October 2006 Agreement.

10  • USPTO records from 2006 and the testimony of Richard Chang, Ben Chang,

11  Jeff King, Zheng Tao Han and Fred Wu will show that Plaintiff did assign

12  his right and interest in the '814 Patent and related application to Biosuccess.

13  David Chou, Ben Chang, and Richard Chang will testify that Plaintiff

14  worked diligently with and for Biosuccess for a period of over six years,

15  held the positions required by the October 2006 Agreement, and paid

16  thousands of dollars of his own money to support Biosuccess.

17  • Letters from Plaintiff to Fred Wu will show that Plaintiff sent a letter to Fred

18  Wu of Biosuccess requesting corporate documents and information in

19  January 2013, and that fewer than 10 days later, Fred Wu terminated both

20  Richard Chang and Ben Chang. The termination letters to Ben and Richard

21  Chang will also show that they were terminated just days after requesting

22  corporate documents from Fred Wu and Biosuccess. Richard and Ben Chang

23  and Fred Wu, as he must, will testify to the same.

24  • Produced letters, emails, and the testimony of David Chou, Richard

25  Salvador, Richard Chang, and Ben Chang will show that Fred Wu failed to

26  maintain the corporate form, failed to fulfill his fiduciary duties as a

27  corporate officer, allowed patent applications to expire, failed to provide

28

EntrepreneurLaw Group LLP
www.computerlaw.com℠

1  required documents to shareholders, and failed to maintain proper corporate

2  records.

3  • Ben Chang, Richard Chang, David Chou, and Richard Salvador will testify

4     that Plaintiff performed all of his duties as a corporate officer, contractor,

5     and employee of Biosuccess, and that any failures or inequitable conduct

6     were on the part of or directly caused by Fred Wu's lack of transparency and

7     ineptitude.

8  • Video deposition testimony of Fred Wu will show that Richard Chang still

9     has not received the consideration required by the controlling October 2006

10    Agreement for assignment of his rights. Fred Wu will testify to the same, as

11    he must, as will Richard Chang.

12  **7.    Unclean hands**

13  <u>Elements</u>: "The essence of [the unclean hands] doctrine…is that [a] suitor in equity

14  must come into court with clean hands and he must keep them clean after his entry

15  and throughout the proceedings. <u>Borough of Princeton v. Bd. Of chosen</u>

16  <u>Freeholders of Mercer</u>, 169 N.J. 135, 158 (2001) citing <u>A. Hollander & Son, Inc. v.</u>

17  <u>Imperial Fur Blending Corp.</u>, 2 N.J. 235, 246 (1949). The doctrine of unclean

18  hands "gives expression to the equitable principle that a court should not grant

19  relief to one who is a wrongdoer with respect to the subject matter in suit." <u>Id.</u>

20  quoting <u>Faustin v. Lewis</u>, 85 N.J. 507, 511 (1981).

21  <u>Summary of Evidence</u>:

22  • Richard Chang, Ben Chang, Richard Salvador, and David Chou will testify

23    that Plaintiff worked diligently for Biosuccess during his tenure with that

24    company with the shared goal of bringing a product to market and that it was

25    through the failures and ineptitude of Biosuccess' Chairman of the Board,

26    Fred Wu that no Phase II clinical trials were completed.

27  • The Agreements will also show that, in exchange for Plaintiff's assignment

28    of right and interest in the '814 Patent and applications, Plaintiff was to

Entrepreneur Law Group LLP
www.computerlaw.com℠

1   receive a consulting fee and $2 million in consideration for work and

2   research done on TPA at specific dates, and that Plaintiff never received that

3   consideration.

4   • Fred Wu's, Richard Chang's, and Ben Chang's testimony will demonstrate

5   that Biosuccess breached its contract by failing to pay the required

6   consideration to Plaintiff, and that plaintiff therefore retained his right and

7   interest in the '814 Patent and portfolio, allowing Plaintiff to reassign that

8   right and interest.

9   • Signed letters, bank statements, money transfer documents, and hand-written

10  receipts signed by Fred Wu demonstrate that Biosuccess made a payment of

11  $250,000 to Richard Chang by wire transfer, but that Richard Chang paid

12  that amount back to Biosuccess, plus more, over the course of his

13  relationship with that company.

14  • Emails produced by Patent Network Law Group and testimony from Fred

15  Wu, Zheng Tao Han, Ben Chang, and Richard Chang will show that Fred

16  Wu's ineptitude and chicanery as a corporate officer led to the suspension of

17  Biosuccess' Phase II clinical trials for a period of at least a year.

18  • Video deposition testimony will show, and Fred Wu will testify, as he must,

19  that Biosuccess did not pay Richard Chang any of the $2 million he was

20  supposed to receive under the October 2006 Agreement.

21  • USPTO records from 2006 and the testimony of Richard Chang, Ben Chang,

22  Jeff King, Zheng Tao Han and Fred Wu will show that Plaintiff did assign

23  his right and interest in the '814 Patent and related application to Biosuccess.

24  David Chou, Ben Chang, and Richard Chang will testify that Plaintiff

25  worked diligently with and for Biosuccess for a period of over six years,

26  held the positions required by the October 2006 Agreement, and paid

27  thousands of dollars of his own money to support Biosuccess.

28

EntrepreneurLaw Group LLP
www.computerlaw.com℠

- Letters from Plaintiff to Fred Wu will show that Plaintiff sent a letter to Fred Wu of Biosuccess requesting corporate documents and information in January 2013, and that fewer than 10 days later, Fred Wu terminated both Richard Chang and Ben Chang. The termination letters to Ben and Richard Chang will also show that they were terminated just days after requesting corporate documents from Fred Wu and Biosuccess. Richard and Ben Chang and Fred Wu, as he must, will testify to the same.

- Produced letters, emails, and the testimony of David Chou, Richard Salvador, Richard Chang, and Ben Chang will show that Fred Wu failed to maintain the corporate form, failed to fulfill his fiduciary duties as a corporate officer, allowed patent applications to expire, failed to provide required documents to shareholders, and failed to maintain proper corporate records.

- Ben Chang, Richard Chang, David Chou, and Richard Salvador will testify that Plaintiff performed all of his duties as a corporate officer, contractor, and employee of Biosuccess, and that any failures or inequitable conduct were on the part of or directly caused by Fred Wu's lack of transparency and ineptitude.

- Video deposition testimony of Fred Wu will show that Richard Chang still has not received the consideration required by the controlling October 2006 Agreement for assignment of his rights. Fred Wu will testify to the same, as he must, as will Richard Chang.

**8.    Failure to Mitigate Damages**

<u>Elements</u>: Plaintiff must establish that Defendant did not make a reasonable effort to lessen or reduce his damages. (<u>See</u> New Jersey Model Civil Jury Instructions Charge 8.45(C).)

EntrepreneurLaw Group LLP
www.computerlaw.com℠

Summary of Evidence:

- August 2006 Agreement;
- October 2006 Agreement;
- Emails attaching versions and revisions of both Agreements dated 2006;
- Redlined and corrected versions of the Agreements produced at depositions will show that the October 2006 Agreement must be the controlling agreement;
- Richard Chang and Ben Chang will testify that Zheng Tao Han, Richard L. Chang, and Fred Wu signed and dated the two agreements (dated August 30, 2006 and October 12, 2006, respectively) on or within days of the dates that appear on the agreements as signed.
- The August and October Agreements show, and Fred Wu, Zheng Tao Han, Richard Chang, and Ben Chang will testify that the later dated October 2006 Agreement contains an integration clause, explicitly making it the controlling agreement between the parties.
- Ben Chang and Richard Chang will testify, and the deposition testimony of Fred Wu will show, that the October 2006 Agreement contains corrections and terms meant to be updates from the August 2006 Agreement correcting the understanding between the parties; and that Fred Wu cannot account for those changes appearing in what Defendant contends is an agreement signed *after* the October 2006 and then for some reason *backdated* to before a superseding agreement. Emails produced in discovery between Fred Wu and Richard Chang, dated August 2006, contain working versions of the August 2006 Agreement.
- The Agreements, emails between the parties, video deposition testimony of Fred Wu, and the testimony of Ben Chang and Richard Chang will show that, in exchange for Plaintiff's assignment of right and interest in the '814 Patent and applications, Plaintiff was to receive a consulting fee and $2

Entrepreneur Law Group LLP
www.computerlaw.com℠

1   million in consideration for work and research done on TPA at specific dates,

2   that Fred Wu represented that Biosuccess could and would pay those

3   amounts, and that Plaintiff never received that consideration.

4   • Fred Wu will testify that evidence that Biosuccess did not fulfill its

5   obligations under either contract by failing to pay Plaintiff the consideration

6   he was owed for the transfer of his right and interest in the '814 Patent.

7   • Bank records, money wire receipts, and hand-written receipts signed by Fred

8   Wu will show that Richard Chang returned over $250,000 to Biosuccess

9   during his time with that company, and Richard Chang will testify to the

10  same.

11  • Video deposition testimony from Fred Wu shows, and Fred Wu will testify

12  that he has decades of experience working with contracts and that he

13  understands what a superseding agreement containing an integration clause

14  is and how contracts work in the American system.

15  **9.   Recovery Would Be Unjust Enrichment**

16  Elements: Plaintiff must demonstrate that (1) Defendant has been enriched; (2) that

17  the enrichment has been at Plaintiff's expense; and (3) that the enrichment was

18  unjust. "The doctrine of unjust enrichment rests on the equitable principle that a

19  person shall not be allowed to enrich himself unjustly at the expense of another."

20  See Goldsmith v. Camden County Surrogate's Office, 408 N.J. Super. 376, 382

21  (App.Div. 2009); Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 108

22  (App.Div. 1966).

23  Summary of Evidence:

24  • Richard Chang, Ben Chang, Richard Salvador, and David Chou will testify

25  that Plaintiff worked diligently for Biosuccess during his tenure with that

26  company with the shared goal of bringing a product to market and that it was

27  through the failures and ineptitude of Biosuccess' Chairman of the Board,

28  Fred Wu that no Phase II clinical trials were completed.

EntrepreneurLaw Group LLP
www.computerlaw.com℠

- The Agreements will also show that, in exchange for Plaintiff's assignment of right and interest in the '814 Patent and applications, Plaintiff was to receive a consulting fee and $2 million in consideration for work and research done on TPA at specific dates, and that Plaintiff never received that consideration.

- Fred Wu's, Richard Chang's, and Ben Chang's testimony will demonstrate that Biosuccess breached its contract by failing to pay the required consideration to Plaintiff, and that plaintiff therefore retained his right and interest in the '814 Patent and portfolio, allowing Plaintiff to reassign that right and interest.

- Signed letters, bank statements, money transfer documents, and hand-written receipts signed by Fred Wu demonstrate that Biosuccess made a payment of $250,000 to Richard Chang by wire transfer, but that Richard Chang paid that amount back to Biosuccess, plus more, over the course of his relationship with that company.

- Emails produced by Patent Network Law Group and testimony from Fred Wu, Zheng Tao Han, Ben Chang, and Richard Chang will show that Fred Wu's ineptitude and chicanery as a corporate officer led to the suspension of Biosuccess' Phase II clinical trials for a period of at least a year.

- Video deposition testimony will show, and Fred Wu will testify, as he must, that Biosuccess did not pay Richard Chang any of the $2 million he was supposed to receive under the October 2006 Agreement.

- USPTO records from 2006 and the testimony of Richard Chang, Ben Chang, Jeff King, Zheng Tao Han and Fred Wu will show that Plaintiff did assign his right and interest in the '814 Patent and related application to Biosuccess. David Chou, Ben Chang, and Richard Chang will testify that Plaintiff worked diligently with and for Biosuccess for a period of over six years,

EntrepreneurLaw Group LLP
www.computerlaw.com℠

1    held the positions required by the October 2006 Agreement, and paid
2    thousands of dollars of his own money to support Biosuccess.
3    • Letters from Plaintiff to Fred Wu will show that Plaintiff sent a letter to Fred
4    Wu of Biosuccess requesting corporate documents and information in
5    January 2013, and that fewer than 10 days later, Fred Wu terminated both
6    Richard Chang and Ben Chang. The termination letters to Ben and Richard
7    Chang will also show that they were terminated just days after requesting
8    corporate documents from Fred Wu and Biosuccess. Richard and Ben Chang
9    and Fred Wu, as he must, will testify to the same.
10   • Produced letters, emails, and the testimony of David Chou, Richard
11   Salvador, Richard Chang, and Ben Chang will show that Fred Wu failed to
12   maintain the corporate form, failed to fulfill his fiduciary duties as a
13   corporate officer, allowed patent applications to expire, failed to provide
14   required documents to shareholders, and failed to maintain proper corporate
15   records.
16   • Ben Chang, Richard Chang, David Chou, and Richard Salvador will testify
17   that Plaintiff performed all of his duties as a corporate officer, contractor,
18   and employee of Biosuccess, and that any failures or inequitable conduct
19   were on the part of or directly caused by Fred Wu's lack of transparency and
20   ineptitude.
21   • Video deposition testimony of Fred Wu will show that Richard Chang still
22   has not received the consideration required by the controlling October 2006
23   Agreement for assignment of his rights. Fred Wu will testify to the same, as
24   he must, as will Richard Chang.
25   Plaintiff has not supported, but has asserted and reserves the right to assert
26   the following affirmative defenses to Defendant's Counterclaims: Lack of subject
27   matter jurisdiction, doctrine of laches, acquiescence and ratification, consent,
28   damages remote and speculative, and justification.

**III.    ANTICIPATED EVIDENTIARY ISSUES [L.R. 16-4.1(H)]**

As reflected in Plaintiff's Motions *in Limine*, Plaintiff believes the following evidence is inadmissible:

- The expert report and testimony of Biosuccess' experts Larry Stewart and Steven Burgess (Docket 150 and 156). As outlined in Plaintiff's First Motion *in Limine*, both of the expert reports submitted by Biosuccess suffer from critical failures and should not be submitted to a jury or any finder of fact in this case.

- Any evidence making reference to an agreement signed in 2011 or to the August 2006 Agreement as the controlling agreement between the parties (Docket 151). The Restatement Second of Contracts, the Parol Evidence Rule, and New Jersey law all instruct that parol and extrinsic evidence and the terms of another preceding contract cannot be used to interpret a contract when the terms of the contract are unambiguous. Plaintiff's position is that the August and October Agreements must be read within their four corners and plain meaning, which makes the October 2006 Agreement the controlling agreement as a matter of law, and any evidence to the contrary should be excluded as parol evidence.

- Any evidence of Zheng Tao Han as an inventor of the '814 Patent. (Docket 154) Plaintiff's position is that Zheng Tao Han's interest and right in the '814 Patent as the inventor are not at issue in this case, and therefore any reference to him as a co-inventor should be precluded so as not to confuse a jury with irrelevant material.

Plaintiff further believes that the testimony of Jeff King of Patent Network Law Groups and documents he can provide for the period from January 1, 2013 to the present include material emails and communications between Mr. King and Biosuccess. Mr. King's testimony is material to understanding the truth of Biosuccess' motives and activities as they relate to Plaintiff's right and interest in

EntrepreneurLaw Group LLP
www.computerlaw.com℠

the patent and applications as well as his rights under the October 2006 Agreement. Plaintiff believes that Mr. King should be allowed to testify at trial and produce documents, even if it is done in camera.

## IV.   IDENTIFICATION OF ISSUES OF LAW [L.R. 16-4.1(i)]

First, the gatekeeping issue of law to be determined is whether, in light of New Jersey case law and the parol evidence rule, extrinsic parol evidence can be introduced to construe the meaning of a superseding, integrated agreement when there is no ambiguity whatsoever contained inside the four corners of the contract. The dates as they exist on the August and October 2006 Agreements are clear, and both of the Agreements are executed by all relevant parties. The issue of law remains: which Agreement controls, and should Defendant be allowed to enter evidence to change the meaning of both agreements by calling the August agreement a controlling document? Plaintiff contends that the Agreements should be read on their faces, and taken by order of the dates on the documents. The October Agreement contains an integration clause, and should be deemed the controlling, superseding agreement. See Downs v. Jersey Central Power and Light Co., 174 A. 887, 888 (N.J. 1934); Alexander v. CIGNA Corp., 991 F. Supp. 427, 442 (D.N.J. 1997); J.I. Kislak Realty Corp. v. 6051 Blvd. East Corp., 192 N.J. Super. 280, 283 (App.Div. 1983); Great Atlantic & Pacific Tea Co. Inc. v. Checcio, 335 N.J. Super. 495, 501 (2000).

Second, whether Biosuccess' mismanagement of the patent portfolio represents a breach of its fiduciary duty. Corporate officers have a fiduciary duty to manage, maintain and further build corporate assets including patent portfolios. See Crowley v. Epicept Corp., 547 Fed. Appx. 844, 846 (9th Cir. 2013); Patent portfolios are a recognized important asset of corporations. Approximately 79% of corporate value resides in the intellectual property of the corporation. So long as in-house counsel conduct the corporation's business in an ethical and professional

EntrepreneurLaw Group LLP
www.computerlaw.com℠

1  manner, it is not contrary to any public policy to obtain revenue for shareholders. It

2  could in fact be argued that such activities are at least consistent with (**if not**

3  **affirmatively required as part of**) managing a company in the appropriate

4  exercise of fiduciary duties. At page 12, emphasis supplied. Biosuccess owes an

5  ongoing duty to Chang to maintain and build those assets that will drive revenue

6  for the company. A corporation, through its officers and directors owe duty to

7  Shareholders to maximize corporate assets. "It is the obligation of directors to

8  attempt, within the law, to maximize the long-run interests of the corporation's

9  stockholders." Katz v. Oak Indus., Inc., 508 A.2d 873, 879 (Del. Ch. 1986).

10

11  **V.        BIFURCATION OF ISSUES [L.R. 16-4.3]**

12       The Court should bifurcate proceedings in this case to try the gatekeeping

13  issue of which agreement (August 2006 or October 2006) controls in this case.

14  After that issue has been decide, then the Court should hold a second phase which

15  would consist a trial on all remaining unresolved issues, including breaches of the

16  controlling agreement, the fact that assignment was not completed under the terms

17  of either agreement and Defendants' Counterclaims. Plaintiff respectfully submits

18  that such a bifurcation will avoid unnecessary mini-trials on the issues of

19  ownership of the patent and application rights and damages before the jury.

20

21  **VI.       JURY TRIAL [L.R. 16-4.4]**

22       Timely demands for a jury trial have been made by both parties on claims,

23  counterclaims, and conditional counterclaims. All issues are triable by a jury.

24

25  **VII.      ATTORNEYS' FEES [L.R. 16-4.5]**

26       Plaintiff may be entitled to his attorneys' fees. 28 U.S.C. § 1927 (2014).

27

28

EntrepreneurLaw Group LLP
www.computerlaw.com℠

1 **VIII.**     <u>ABANDONMENT OF ISSUES [L.R. 16-4.6]</u>

2      As stated above, Plaintiff believes the following affirmative defenses have

3 been abandoned by Biosuccess for lack of foundation regarding Plaintiff

4 Complaint and Conditional Counterclaims: Failure to state a claim on which relief

5 can be granted, lack of standing, statute of limitations, frivolous action, lack of

6 irreparable harm, lack of subject matter jurisdiction, equitable estoppel, laches,

7 failure to mitigate damages, adequacy of remedy at law, remote and speculative

8 damages, parol evidence, lack of causation, acquiescence and ratification, and

9 consent.

10

11 Dated: May 12, 2014            Respectfully submitted,
                                    ENTREPRENEUR LAW GROUP LLP

12

13                   By:     /s/ Jack Russo
                            Jack Russo

14                             Christopher Sargent

15                             Attorneys for Plaintiff
                            RICHARD CHANG

16

17

18

19

20

21

22

23

24

25

26

27

28

Entrepreneur Law Group LLP
www.computerlaw.com℠