LEE TRAN & LIANG LLP
Enoch H. Liang (Bar No. 212324)
  enoch.liang@ltlattorneys.com
Heather F. Auyang (Bar No. 191776)
  heather.auyang@ltlattorneys.com
Lisa J. Chin (Bar No. 259793)
  lisa.chin@ltlattorneys.com
601 South Figueroa St., Ste. 3900
Los Angeles, California 90017
Telephone:   (213) 612-8900
Facsimile:   (213) 612-3773

*Attorneys for Defendant*
*Biosuccess Biotech Co., Ltd.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| RICHARD L. CHANG,<br><br>             Plaintiff,<br><br>        v.<br><br>BIOSUCCESS BIOTECH CO., LTD., and DOES 1–10,<br><br>             Defendants. | Case No. CV13-01340 JAK (ANx)<br><br>SUPPLEMENTAL DECLARATION OF ENOCH H. LIANG IN SUPPORT OF DEFENDANT BIOSUCCESS BIOTECH CO., LTD.'S MOTIONS IN LIMINE **NOS. 1-4** |
| BIOSUCCESS BIOTECH CO., LTD.,<br><br>             Counterclaimants,<br><br>        v.<br><br>RICHARD L. CHANG and DOES 1–10,<br><br>             Counter-Defendants. | Judge:   Hon. John A. Kronstadt<br>Place:   Courtroom 750<br>Date:    June 2, 2014<br>Time:    3:00 p.m.<br><br>Trial:   June 17, 2014 |

## SUPPLEMENTAL DECLARATION OF ENOCH H. LIANG

I, ENOCH H. LIANG, declare as follows:

1.   I am an attorney duly admitted to practice before this Court and an attorney in the law firm Lee Tran & Liang LLP, counsel of record herein for Defendant Biosuccess Biotech Co., Ltd ("Biosuccess").  I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently thereto.

2.   I make this supplemental declaration in support of Biosuccess's Motions in Limine Nos. 1-4.

3.   Attached hereto as **Exhibit S** is a true and correct copy of an August 4, 2013 email from Susan Wanger to Ben Chang with drafts of a patent assignment agreement for Richard Chang, produced by Plaintiff as RCHANG00000585-591.

4.   Attached hereto as **Exhibit T** is a true and correct copy of part of a February 19, 2014 email thread between Susan Wanger to Biosuccess's counsel, which shows that she works for Jeff King//Patent Networks Law Group PLLC.

5.   Attached hereto as **Exhibit U** are true and correct copies of the Assignment Agreements dated August 30, 2006 and October 12, 2006.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.  Executed this 19th day of May, 2014, at South San Francisco, California.

_/s/ Enoch H. Liang_
Enoch H. Liang, Esq.

# EXHIBIT S

**From:** Tsailing Chang [changtsailing@gmail.com]
**Sent:** Sunday, August 04, 2013 7:47 PM
**To:** Tsailing Chang
**Subject:** Fwd: Hello
**Attachment(s):** "ASGNRecordForm-RLC-RLCHC.PDF", "ASGN-RLC-RLCHC.pdf"

---------- Forwarded message ----------
From: **Ben Chang** <b.chang@rpaids.com>
Date: Sun, Aug 4, 2013 at 8:35 PM
Subject: Fwd: Hello
To: changtsailing@gmail.com

Ben:  Attached are the docs -

For the Assignment - please have your dad sign and notarize both the Assignment and the POA.

For the Record Form Cover Sheet - For Section 3, please have him write in the execution dates of the assignments; and for Section 9 - please have him sign and date in the spaces provided.

Have him return a COPY of the Assignment; and the ORIGINAL of the Recordation Form Cover Sheet.  You can then mail them to:  Director of the USPTO - Mail Stop Assignment Recordation Services - P. O. Box 1450 - Alexandria, VA  22313-1450.  A check in the amount of $120 is required - made out to the Commissioner for Patents.  I would recommend using Express Mail.

Please call me if you have any questions.

Susan

RCHANG00000586

# Unable to Process

RCHANG00000587

### ASSIGNMENT

**WHEREAS, RICHARD L. CHANG** (hereinafter referred to as "**ASSIGNOR**") whose residence is located at 107 Konner Avenue - Pine Brook, New Jersey, 07058 - United States of America, is the owner of the entire right, title, and interest in and to certain letters patent of the United States and of the certain inventions disclosed therein, and/or to certain applications for letters patent of the United States and of the certain inventions disclosed therein, all as identified on **EXHIBIT A** attached hereto; and

**WHEREAS, RICHARD L. CHANG HOLDING COMPANY LLC,** (hereinafter referred to as "**ASSIGNEE**"), a business located at 107 Konner Avenue – Pine Brook, New Jersey, 07058 – United States of America, and a company organized and existing under and by virtue of the laws of the State of Delaware, is desirous of acquiring said right, title, and interest of Assignor;

**NOW, THEREFORE**, in consideration of the sum of one dollar ($1.00) and other good and valuable consideration by Assignee to Assignor in hand paid, receipt of all of which is hereby acknowledged, Assignor has agreed to and does hereby sell, assign, and transfer unto Assignee, its successors and assigns, all of Assignor's right, title and interest in and throughout the United States of America (including its territories and dependencies) in and to said letters patent and all reissues thereof and reexamination certificates therefore, and the inventions disclosed therein, including Assignor's full right to sue for and recover all damages recoverable form past infringements of said letters patent; including specifically, without limiting the generality of the foregoing, the United States patent(s) listed on Exhibit A hereto; and Assignor has further agreed to and does herby sell, assign and transfer unto Assignee , its successors and assigns, all of Assignor's right, title and interest in and throughout the United States of America (including its territories and dependencies) in and to said inventions, said United States applications, foreign counterparts, and any other United States applications (including provisional, non-provisional, divisional, continuing, or reissue application) based in whole or in part on said United States applications or in whole or in part on said inventions; including specifically, without limiting the generality of the foregoing, the United States application(s) listed on **EXHIBIT A** attached hereto;

**TO BE HELD AND ENJOYED BY** Assignee, its successors and assigns, to the ends of the respective full terms for which said patents have been or may be granted, as fully and entirely as the same would have been held and enjoyed by Assignor had this sale and assignment not been made.

**AND** Assignor hereby authorizes and requests the Commissioner of Patents of the United of America to issue any and all United States patents which may be granted upon said United States patent application to Assignee, its successors and assigns.

**AND** Assignor hereby agrees to execute without further consideration any further lawful documents and any further assurances, and any provisional, non-provisional, divisional, continuing, reissue or other applications for patents in the United States of America that may be deemed necessary by said Assignee, its successors or assigns fully to secure its interest as aforesaid in and to said invention, any part thereof, and in and to said patent applications or any of them, and in and to said several patents or any of them.

Assignment of Richard L. CHANG to
RICHARD L. CHANG HOLDING COMPANY, LLC

RCHANG00000588

**AND** Assignor covenants that Assignor has granted no right or license to make, use or sell said inventions to anyone except said Assignee, that prior to the execution of this deed, Assignor's right, title, and interest in said inventions has not been otherwise encumbered, and that Assignor has not executed and will not execute any instrument in conflict herewith.

**IN WITNESS WHEREOF**, We have caused these presents to be executed by our officer(s) thereunto duly authorized.

ASSIGNOR:

By_____          Dated this _____ day of _____,2013
   Richard L. Chang, Inventor/Applicant

_____
   Richard L. Chang – Chinese Character


STATE OF NEW JERSEY)
                     )ss.
COUNTY OF_____)

    I certify that I know or have satisfactory evidence that **RICHARD L. CHANG** is the person who appeared before me, and said person acknowledged that **HE** signed this instrument and acknowledged it to be a free and voluntary act for the uses and purposes mentioned in the instrument.

DATED this _____ day of _____, 2013


_____
Signature of Notary

NOTARY PUBLIC in and for the State of_____
residing at: _____
My Appointment Expires:_____

## POWER OF ATTORNEY

      I, Richard L. CHANG, the undersigned, hereby appoint Benjamin Y. CHANG, residing at 312 North Mansfield – Los Angeles, CA 90036 – USA, with full power of substitution, power of appointment and power of revocation to record assignments, mergers, consolidations, changes of name and changes of address and to transact all business in the Patent and Trademark Office with respect to the patent(s)/patent application(s) listed on EXHIBIT A, attached hereto.


ASSIGNOR:

By_____     Dated this _____ day of _____,2013
  Richard L. Chang, Inventor/Applicant


_____
  Richard L. Chang – Chinese Character


STATE OF NEW JERSEY)
               )ss.
COUNTY OF_____)

      I certify that I know or have satisfactory evidence that **RICHARD L. CHANG** is the person who appeared before me, and said person acknowledged that **HE** signed this instrument and acknowledged it to be a free and voluntary act for the uses and purposes mentioned in the instrument.

DATED this _____ day of _____, 2013


_____
Signature of Notary

NOTARY PUBLIC in and for the State of_____
residing at: _____
My Appointment Expires:_____

EXHIBIT A

| Serial No. | File/Grant Date | Title |
|---|---|---|
| USSN 13/745,745 | 18 January 2013 | Compositions And Methods Of Use Of Phorbol Esters In The Treatment of Neoplasms |
| USSN 13/745,740 | 18 January 2013 | Compositions And Methods Of Use Of Phorbol Esters |
| U S Patent No. 6,063,814 | 16 May 2000 | Phorbol Esters As Anti-Neoplastic And White Blood Cell Elevating Agents |

Assignment of Richard L. CHANG to
RICHARD L. CHANG HOLDING COMPANY, LLC

RCHANG00000591

# EXHIBIT T

| | |
|---|---|
| **From:** | Susan M. Wanger <swanger@patentnetworks.com> |
| **Sent:** | Wednesday, February 19, 2014 6:32 AM |
| **To:** | Heather Auyang |
| **Cc:** | csargent; jrusso; Enoch Liang; Jeff King; Eric Young (eyoung@computerlaw.com) |
| **Subject:** | RE: CHANG v. Biosuccess Biotech Co., Ltd. - USDC-CV13-01340-JAK(Anx) |
| **Attachments:** | L-KING-SARGENT-AUYANG-02192014R.pdf |

Hello All: Attached for your records is a revised transmittal regarding the discovery produced in response to Plaintiff Chang's subpoena, dated January 15, 2014.

Please feel to contact our offices should you have any questions.

Sincerely, Susan Wanger


---------------------------- Original Message ----------------------------
Subject: RE: CHANG v. Biosuccess Biotech Co., Ltd. - USDC-CV13-01340-JAK(Anx)
From: "Heather Auyang" <Heather.Auyang@ltlattorneys.com>
Date: Tue, February 18, 2014 9:32 pm
To: "swanger@patentnetworks.com" <swanger@patentnetworks.com>
Cc: "csargent" <csargent@computerlaw.com>
"jrusso" <jrusso@computerlaw.com>
"Enoch Liang" <Enoch.Liang@ltlattorneys.com>
"Jeff King" <jking@patentnetworks.com>
"Eric Young (eyoung@computerlaw.com)" <eyoung@computerlaw.com>
-------------------------------------------------------------------------

> Susan,
>
> Thank you for letting us know.
>
> Heather
>
> Sent from my Windows Phone
> _____
>
From: Susan M. Wanger<mailto:swanger@patentnetworks.com>
> Sent: 2/18/2014 9:20 PM
> To: Heather Auyang<mailto:Heather.Auyang@ltlattorneys.com>
> Cc: csargent<mailto:csargent@computerlaw.com>; jrusso<mailto:jrusso@computerlaw.com>; Enoch Liang<mailto:Enoch.Liang@ltlattorneys.com>; Jeff King<mailto:jking@patentnetworks.com>; swanger@patentnetworks.com<mailto:swanger@patentnetworks.com>; Eric Young (eyoung@computerlaw.com)<mailto:eyoung@computerlaw.com>
> Subject: RE: CHANG v. Biosuccess Biotech Co., Ltd. - USDC-CV13-01340-JAK(Anx)
>
>
> Heather: Sorry, that was a type-o. Should have been December 31, 2012. No documents have been produced

use of the intended recipient. Any review, copying, or distribution of this email (or any of its attachments) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and all of its attachments

>


Sincerely, Susan

Kindly confirm receipt of this communication via return email to jking@patentnetworks.com; swanger@patentnetworks.com

Susan M. Wanger
Paralegal to Jeffrey J. King, Esq.
Biotech Patent Prosecution
PATENT NETWORKS LAW GROUP PLLC
5000 Carillon Point - Suite 400
Kirkland, WA 98033
Telephone: (425) 576-4235
Facsimile: (425) 576-4236
Email: swanger@patentnetworks.com

This email and any of its attachments may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any of its attachments) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and all of its attachments

# EXHIBIT U

**Assignment of Patent Right & Assignment of Right of Patent Application Agreement**

Agreement was made this 30th day of August, 2006, by and between Richard L. Chang of 107 Konner Ave. Pine Brook, New Jersey, United States of America and Zheng Tao Han of 4 Dongming Road, Zheng Zhou, Hunan, China ( hereinafter jointly referred to as ASSIGNOR" ), and Biosuccess Biotech Co., Ltd, a company organized and existing under the laws of the Cayman Islands, registered at P.O.Box 30592-SMB Cayside, 2[nd] Floor Harbour Drive, George Town, Grand Cayman, Cayman Islands, B.W.I. having its central operations office located at Room 904, 9th floor, No.147, Sec. 2, Chien-Kuo North Road., Taipei, Taiwan 10460, R.O.C ( hereinafter referred to as "ASSIGNEE").

## WITNESSETH:

WHEREAS, ASSIGNOR is the owner of the patents and patent applications as hereinafter defined relating to inter alia the use of phorbol esters for treating patients for neoplastic diseases ( leukemia), for increasing white blood cell counts and for HIV/AIDS;
WHEREAS, ASSIGNOR do hereby assign all my/our rights and interests of under the aforesaid patent applications and patents and the Know-How relating thereto for use in relations treating patients for elevation of white blood cell counts, anti-neoplastic and HIV/AIDS;
WHEREAS, ASSIGNEE wishes to obtain the exclusive license in all Territories of the patents and patent application, for treating patients with phorbol esters for elevation of white blood cell counts, anti-neoplastic and for HIV/AIDS, under said patent applications and patents and the Know-How relating thereto;
NOW, THEREFORE, in consideration of the premises and of the mutual covenants and obligations herein contained, the parties hereto agree as follows:

## ARTICLE 1 – Definitions:

1.1    "Know-How" shall mean all technology, formula, trade secrets, technical, toxicological, pharmacological, scientific and/or medical data and any other information or experience ( including, but not limited to , pre-clinical or clinical data), owned, controlled, possessed or received by ASSIGNOR as of the date of execution of this Agreement specifically relating to the Product and which it is at liberty to disclose, including, but not limited to, such data or information which will allow ASSIGNEE to efficiently manufacture, use or sell ASSIGNED Product.

1.2    " ASSIGNED Product" shall mean esters of phorbol, pharmaceutically acceptable acid addition salts thereof and any finished dosage form thereof when

Z. 阿. H.

EXHIBIT A
PAGE 000025

manufactured, used, offered for sale or sold or elevation of white blood cell counts, anti-neoplastic ( leukemia ) and HIV/AIDS.

1.3 "Patent Rights" shall mean all of ASSIGNOR's right, title and interest in and to the U.S. Patent No. 6063814 dated 16 May 2000 and patent applications, including AU6968798A1, EP0986378A4, JP2001520656T2 and WO9846218A1, and any division, extension, reissue or reexamination thereof, together with

1.4 "Right of Patent Application" shall mean the new filing of US patent application for HIV/AIDS ( U.S. patent application _____ filed on _____ entitled _____ . And subsequent patent application rights to be filed to other countries other than U.S..

<u>Articles 2 – Grant:</u>

2.1 ASSIGNOR represents and warrants that it is the owner of the Patent Rights and the Know-How, which does not infringe any patent or other rights of any third party;

2.2 In the event that ASSIGNOR shall obtain a patent on the Know-How, ASSIGNOR shall grant to ASSIGNEE free of charge, consistent with the terms of this Agreement, to practice the Know-How in conjunction with the ASSIGNED Product, and to make, have made, use and sell Assigned Product under such patent.

<u>Article 3 – Terms & Conditions</u>

3.1 ASSIGNEE agrees to the following basic compensations and incentives:
   a. Total milestone payment: US$2 million is to be paid in the following manners:
      (1) <u>One million US dollar</u>: when the clinical trial phase II for leukemia is completed in the US.
      (2) <u>One million US dollar</u>: when the FDA approves the NDA for leukemia, normally is the time when the clinical trials phase III for leukemia is completed.
   b. Eligible to own 36% of the total ASSOGNEE's stock shares at the time the company is established.

3.2 The ASSIGNEE also agrees the following compensations to be paid to the ASSIGNOR:
   a. <u>Additional Incentives</u>
      A US$1 million dollar is to be granted to the CONSIGNOR after each disease

2 . 7



indication other than leukemia, if the clinical trial is completed and approved by FDA respectively in the U.S..

    b. <u>Consulting fees</u>: At least US$250,000 annually or market compatible compensation to be paid and the CONSIGNOR is required to take on the following company headquarter positions namely, which could be subject to change as company grows and market evolves:

        Professor Richard L. Chang – CSO

        Professor Zheng Tao Han – CRO & CTO

    c. <u>Travel expenses</u> related to conduct consultancy services will be at ASSIGNEE's expenses, complying with ASSIGNEE's travel expenses procedure and policy being set-up.

3.3    ASSIGNEE shall provide ASSIGNOR with detailed and complete written report of the progress and results of the development of the ASSIGNED Product on a semi-annual basis. Additionally, meetings shall be held at least once every three months.

3.4    ASSIGNOR has rights to conduct auditing over ASSIGNEE's accounting statement at least on semi-annual basis with prior notice to ASSIGNEE, which can be done through outside CPA film after coordinating with ASSIGNEE in advance.

### Article 4 – Infringement and Indemnifications:

4.1    The parties shall promptly notify each other of a challenge to the validity or enforceability of the Patent Rights or Know-How. In the event of a lawsuit relating to the validity or enforceability of the Patent Rights or Know-How, ASSIGNEE shall have the opportunity to control the defense thereof on behalf of both parties. ASSIGNOR agrees to cooperate with ASSIGNEE and to execute any documents relating to such action.

4.2    In the event that in the exercise of rights granted under this agreement, ASSIGNEE is threaten with or subject to a suit for infringement of a patent owned by a third party; ASSIGNEE will advise ASSIGNOR and consult in good faith with ASSIGNOR as to whether and how to respond. Subject to reimbursement for its costs, ASSIGNOR shall provide reasonable assistance to ASSIGNEE in the event that either both of them is subject to such suit. ASSIGNOR shall have no obligation to ASSIGNEE with respect to any liability that either or both of them shall incur as a result of any such suit or threat.

4.3    ASSIGNEE agrees that there are no any challenges or procures or assists others in a challenge to the validity of the assigned Patent rights.

EXHIBIT A
PAGE 000027

4.4   ASSIGNEE shall defend, indemnify and hold harmless ASSIGNOR from and against any and all claims, demands losses and expenses of any nature, including attorney's fees, including but not limited to, death, personal injury, illness, property damage or product liability, arising from or in connection with any of the following:

(a) The use by ASSIGNEE or affiliates of any method or process covered by the Patent Rights or disclosed in the Know-How;

(b) Any use, sale or other disposition of Product by ASSIGNEE, or any statement, representation or warranty of ASSIGNEE with respect thereof.

The indemnification set forth herein shall not be applicable in the event that the claim, demand or lawsuit in question arises from the negligence or willful or improper act, of ASSIGNOR.

4.5   The ASSIGNEE shall obtain and maintain in force product liability insurance for any and all countries wherein any Assigned Product shall be manufactured, sold, distributed or advertised and shall name ASSIGNOR as one of the insured.

<u>Article 5 – Termination:</u>

5.1   The Agreement shall be considered to be completed in terms of assignment of patent right and right of patent application to the ASSIGNEE as soon as the fulfillment of Article 3.1a and 3.1.b by the ASSIGNEE, unless terminated sooner pursuant to the provisions of this Agreement.

5.2   Upon termination under this Article 5.2, if it should occur for any causes, as of the effective date of the termination and, from and after said effective date of termination under Article 4.2, ASSIGNEE shall have no further right to use any Know-How imparted to it by ASSIGNOR hereunder. In the event of such termination, ASSIGNEE shall have no further obligations to ASSIGNOR, except for those set out in Article 4.4 ( which is not terminable ) and to provide ASSIGNOR promptly with all data relating to the Assigned Product in its possession at the date of such termination. ASSIGNOR shall have the right to use such data provided however it chooses, including the right to supply same to a subsequent assignee. In the event that one or more applications for drug investigation or marketing approval has been filed by or granted to ASSIGNEE thereof as of

2.7

the date of termination under this Article 5.2, ASSIGNEE shall assign or procure the assignment of such application or approval to ASSIGNOR free of charge.

5.3   In the event of a breach of, of default under, this Agreement by ASSIGNEE is not cured within sixty ( 60 ) days after the receipt of written notice thereof from ASSIGNOR, ASSIGNOR shall be entitled ( without prejudice to any of its other rights) to terminate this Agreement by giving notice to take effect immediately.

5.4   ASSIGNOR shall have the right to terminate this agreement forthwith in the event of ASSIGNEE's filing the bankruptcy.

5.5   The right to terminate this Agreement pursuant to this Article 5 shall not be affected in any way by a waiver of, or failure to take action with respect to, any previous breach or default. Termination of this Agreement shall not affect the rights and/or obligations of the parties accrued prior to termination.

<u>Article 6 – Know-How, Information, Improvements and Confidentially:</u>

6.1   ASSIGNOR agrees that it shall:

    a) Disclose to any of the Know-How in its possession or provided to it under this Agreement to the ASSIGNEE without any reservation and

    b) take such precautions as it normally takes with its own confidential and proprietary information to prevent disclosure to third parties ( except Affiliates and consultants as above).

6.2   The obligation of ASSIGNOR under Article 5.2 shall not, in any event, apply to any information which it can show:

    a) at the time of disclosure is, or thereafter becomes, available to the public in published literature or otherwise through no fault of ASSIGNOR; or

    b) was known to, or otherwise in the possession of, ASSIGNEE or Affiliates, or consultants of ASSIGNEE prior to the receipt of such information from ASSIGNOR; or,

    c) is obtained by ASSIGNEE from a source other than ASSIGNOR and other than one who would be breaching a commitment or confidentiality to ASSIGNOR by disclosing such information to ASSIGNEE.

<u>Article 7 – Patent Maintenance and Extension:</u>

2.7

7.1   ASSIGNEE shall bear the cost of obtaining patents on the patent applications set out in Article 1.5 and attends to and bears the cost of maintaining patent rights throughout the life of said rights in USA, and other countries where applicable.

7.2   Whenever it is possible and there is a reasonable prospect of success, ASSIGNEE shall apply for extension of the Patent Rights within any period prescribed for such application. It would be the responsibility of ASSIGNEE to work with its agent with respect to such filing and prosecution of action and agrees to cooperate with said agent in providing any information required under any relevant laws, and any regulations promulgated thereunder. All expenses of such proceedings shall be borne by ASSIGNEE.

7.3   The proprietary right to any improvements and modifications on the patents licensed hereby, including but not limited to patent, copyright, trade secrets and other related rights, shall be vested in ASSIGNEE.

Article 8 - Publicity

8.1   ASSIGNOR and ASSIGNEE agree not to issue any press release or other public statement disclosing the existence of or relating to this Agreement without the prior written consent of the other party, provided, however, that neither party hereto shall be prevented from complying with any duty of disclosure or it may have pursuant to law.

Article 9 – Notices:

9.1   Any notice or communication required or permitted to be given or made under this Agreement by one of the parties hereto the other shall be in writing and shall be deemed to have been sufficiently given or made to all purposes when mailed by certified mail, return receipt requested, postage prepaid, addressed to such other party at its respective address as follows:

    TO ASSIGNOR:
     Attention: Richard L Chang & Zhang Tao Han
    TO ASSIGNEE:
    Attention: Fred Chi-Ming Wu, Biosuccess Biotech Co., Ltd.
    Article 10 – Force Majeure

EXHIBIT A
PAGE 000030

10.1   Neither party shall be responsible or liable to the other hereunder for failure or delay in performance of this Agreement due to any war, fire, accident or other casualty, or any labor disturbance or act of God or the public enemy, or any other, whether similar or dissimilar to the foregoing, contingency beyond such party's reasonable control. In addition, in the event of the eliminate, cure and overcome any of such causes and resume performance of its obligations as soon as reasonable possible under the circumstances. If either party finds that it is subject to conditions as set out in this article that may delay or preclude its performance of any of its obligations under this agreement it shall promptly advise the other thereof.

### Article 11 – Assignment and Transfer

11.1   Any subsequent applications of phorbol esters for treating patients for other diseases by the ASSIGNOR would be considered to be the rights of the ASSIGNEE. And any subsequent patents and patent applications granted for ASSIGNOR for other diseases or indications would also be considered to the right and interests of and the ownership of the ASSIGNEE.

11.2   Any " Know-How" developed subsequently relating thereafter the Agreements is in effect will also be considered to be the right and interests of ASSIGNEE.

### Article 12 – Severability

12.1   If any one or more of the provisions of this Agreement shall, for any reason be held by any court, tribunal or other authority having jurisdiction over either of the parties hereto or this Agreement, be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remaining provisions here shall not in any way be affected or impaired thereby. In the event any provision shall be held invalid, illegal or unenforceable, the parties shall use their best efforts to substitute a valid, legal and enforceable provision, which, insofar as practical, implements the intent of the parties and the purposes hereof.

### Article 13 – Governing Law and Jurisdictions:

13.1   This Agreement shall be construed and the rights of the parties governed in accordance with the laws of the state of New Jersey, USA, excluding its rules relating to conflict of laws.

## Article 14 – Entire Agreement:

14.1   This Agreement constitutes the entire understanding of the parties with respect to the subject matter contained herein and may not be modified or amended except as expressly stated herein or by a written agreement duly executed by both parties hereto.

## Article 15 – Miscellaneous Provisions:

15.1   The title of the Article of this Agreement is for general information and reference only and this Agreement shall not be construed by reference to such titles.

15.2   It is expressly agreed that this agreement does not authorize either party to act or hold itself out or be held out as the agent of the other.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate by their duly authorized representatives as of the day, month and year first above written, each copy of which shall for all purposes be deemed to be an original.

ASSIGNOR: Richard L. Chang          ASSIGNOR: Zheng Tao Han

By: _Richard L. Chang_          By: _Zheng Tao Han_
Title: _CSO_   Date: _8/30/06_     Title:_____ Date: _8/30/06_

ASSIGNEE: Biosuccess Biotech Co., Ltd.

By: Name: Fred Chi-Ming Wu _____
   Title: _CHAIRMAN_   Date: _8/30/2006_
      _& CEO_

EXHIBIT A
PAGE 000032

**ASSIGNMENT OF PATENT RIGHT & ASSIGNMENT OF RIGHT OF PATENT APPLICATION**
**AGREEMENT**

       AGREEMENT made this     day of     , 2006, by and between Richard L. Chang of 107 Konner Ave. Pine Brook, New Jersey, United States of America and Zheng Tao Han of 4 Dongming Road, Zheng Zhou, Hunan, China (hereinafter jointly referred to as "ASSIGNOR "), and Biosuccess Biotech Co., Ltd., a company organized and existing under the laws of the Cayman Islands, registered at P.O.Box 30592-SMB Cayside, 2nd Floor Harbour Drive, George Town, Grand Cayman, Cayman Islands, B.W.I., having its central operations office located at 7F-1, No. 577, Lin-Shen North Road., Taipei, Taiwan 10460, R.O.C. (hereinafter referred to as "ASSIGNEE").

**WITNESSETH:**

       WHEREAS, ASSIGNOR is the owner of the patents and patent applications as hereinafter defined relating to inter alia the use of phorbol esters for treating patients for neoplastic diseases ( leukemia ), for increasing white blood cell counts and for HIV/AIDS;

       WHEREAS, ASSIGNOR do hereby assign all my/our rights and interests of  , under the aforesaid patent applications and patents and the Know-How relating thereto for use in relation treating patients for elevation of white blood cell counts, anti-neoplastic and HIV/AIDS;

       WHEREAS, ASSIGNEE wishes to obtain the assignment of the patents and patent applications, for treating patients with phorbol esters for elevation of white blood cell counts, anti-neoplastic and for HIV/AIDS, under said patent applications and patents and the Know-How relating thereto;

       NOW, THEREFORE, in consideration of the premises and of the mutual covenants and obligations herein contained, the parties hereto agree as follows:

**ARTICLE 1 - Definitions:**

       1.1       "Know-How" shall mean all technology, formula, trade secrets, technical, toxicological, pharmacological, scientific and/or medical data and any other information or experience (including, but not limited to, preclinical or clinical data), owned, controlled, possessed or received by ASSIGNOR as of the date of execution of this Agreement specifically

EXHIBIT 1
PAGE 000003

relating to the Product and which it is at liberty to disclose, including, but not limited to, such data or information which will allow ASSIGNEE to efficiently manufacture, use or sell Assigned Product.

        1.2        "Assigned Product" shall mean esters of phorbol, pharmaceutically acceptable acid addition salts thereof and any finished dosage form thereof when manufactured, used, offered for sale or sold for elevation of white blood cell counts, anti-neoplastic. ( leukemia ) and HIV/AIDS..

        1.3        "Patent Rights" shall mean all of ASSIGNOR's right, title and interest in and to the U.S. Patent No. 6063814 dated 16 May 2000 and patent applications, including AU6968798A1, EP0986378A1, EP0986378A4, JP2001520656T2, and WO9846218A1, and any division, extension, reissue or reexamination thereof, together with

        1.4        "Right of Patent Application" shall mean the new filing of US patent application for HIV/AIDS  ( U.S. patent application No. _____ filed on _____ entitled _____.

And subsequent patent application rights to be filed to other countries other than U.S..

### ARTICLE 2 – Grant:

        2.1        ASSIGNOR represents and warrants that it is the owner of the Patent Rights and the Know-How, which does not infringe any patent or other rights of any third party.

        2.2        In the event that ASSIGNOR shall obtain a patent on the Know-How, ASSIGNOR shall grant to ASSIGNEE free of charge, consistent with the terms of this Agreement, to practice the Know-How in conjunction with the Licensed Product, and to make, have made, use and sell Assinged Product under such patent.

### ARTICLE 3 – Terms & Conditions

        3.1        ASSIGNEE agrees to the following expenditures:

    a. Total payment: US$2 million to be paid in the following manners:

        (1) One million US Dollar - Reimbursement of Efforts and Expenses Spent over the years on TPA research and development is to be paid at the time of singing agreement and having all signed necessary patent documents ready for assignment to the

$2\tau4$

RLC

- 2 -

EXHIBIT 1
PAGE 000004

ASSIGNEE

(2) One million US Dollar is to be paid by 2/28/2007 –

    (a) 50% of which is for the patent right as described in Article 1.3 ;

    (b) 50% of which is for the patent application right as described in Article 1.4

b. Total company shares to own: 36% of the total ASSIGNEE's shares, which is guaranteed to be maintained as is without being affected due to dilution of any kind up to the stage of company's Pre-IPO.

3.2    The CONSIGNEE also agrees to the following overhead expenses:

    a.  Incentives

        A US$1 million dollar to be granted to the CONSIGNOR after each ( disease indication ) of the clinical trial entering into the phase III stage respectively in the U.S..

    b.  Consulting fees: US$250,000 annually to be paid evenly on quarterly basis and the CONSIGNOR is required to take on the following positions namely, which could be subject to change as company grows:

            Professor Richard L. Chang – CTO, companywide

            Professor Zheng Tao Han – VP, R&D China

    c.  Travel expenses related to conduct consultancy services will be at ASSIGNEE's expenses, complying with ASSIGNEE's travel expenses procedure & policy to be set-up.

3.3    ASSIGNEE shall provide ASSIGNOR with detailed and complete written report of the progress and results of the development of the Assigned Product on a semi-annual basis. Additionally, meetings shall be held at least once every three months.

3.4    ASSIGNOR has rights to conduct auditing over ASSIGNEE's accounting statement at least on semi-annual basis with prior notice to ASSIGNEE, which can be done through outside CPA film after coordinating with ASSIGNEE in advance.

**ARTICLE 4 - Infringement and Indemnifications:**

4.1    The parties shall promptly notify each other of a challenge to the

ZTH

RLC

- 3 -

EXHIBIT 1
PAGE 000005

validity or enforceability of the Patent Rights or Know-How, ASSIGNEE shall have the opportunity to control the defense thereof on behalf of both parties. ASSIGNOR agrees to cooperate with ASSIGNEE and to execute any documents relating to such action.

4.2         In the event that in the exercise of rights granted under this agreement, ASSIGNEE is threatened with or subject to a suit for infringement of a patent owned by a third party, ASSIGNEE will advise ASSIGNOR and consult in good faith with ASSIGNOR as to whether and how to respond. Subject to reimbursement for its costs, ASSIGNOR shall provide reasonable assistance to ASSIGNEE in the event that either both of them is subject to such suit. ASSIGNOR shall have no obligation to ASSIGNEE with respect to any liability that either or both of them shall incur as a result of any such suit or threat.

4.3         ASSIGNEE agrees that there are no any challenges or procures or assists others in a challenge to the validity of the assigned Patent Rights.

4.4         ASSIGNEE shall defend, indemnify and hold harmless ASSIGNOR from and against any and all claims, demands, losses and expenses of any nature, including attorneys' fees, including but not limited to, death, personal injury, illness, property damage or products liability, arising from or in connection with any of the following:

  (a)   the use by ASSIGNEE or Affiliates of any method or process covered by the Patent Rights or disclosed in the Know-How;

  (b)   any use, sale or other disposition of Product by ASSIGNEE, or any statement, representation or warranty of ASSIGNEE with respect thereof.

The indemnification set forth herein shall not be applicable in the event that the claim, demand or lawsuit in question arises from the negligence, or willful or improper act, of ASSIGNOR.

4.5   The ASSIGNEE shall obtain and maintain in force product liability insurance for any and all countries wherein any Assigned Product shall be manufactured, sold, distributed or advertised and shall name ASSIGNOR as one of the insureds or additional insureds where appropriate.

## ARTICLE 5 - Term/Termination:

5.1   The Agreement shall be considered to be completed in terms of

_ZTH_

- 4 -

_RLC_

EXHIBIT 1
PAGE 000006

5.1    The Agreement shall be considered to be completed in terms of assignment of patent right and right of patent application to the ASSIGNEE as soon as the fulfillment of Article 3.1.a and 3.1.b by the ASSIGNEE, unless terminated sooner pursuant to the provisions of this Agreement.

5.2    Upon termination under this Article 5.2, if it should occur for any causes, as of the effective date of the termination and, from and after said effective date of termination under this Article 4.2, ASSIGNEE shall have no further right to use any Know-How imparted to it by ASSIGNOR hereunder.    In the event of such termination, ASSIGNEE shall have no further obligations to ASSIGNOR, except for those set out in Articles 4.4 (which is not terminable) and to provide ASSIGNOR promptly with all data relating to the Assigned Product in its possession at the date of such termination. ASSIGNOR shall have the right to use such data provided however it chooses, including the right to supply same to a subsequent assignee.   In the event that one or more applications for drug investigation or marketing approval has been filed by or granted to ASSIGNEE thereof as of the date of termination under this Article 5.2, ASSIGNEE shall assign or procure the assignment of such application or approval to ASSIGNOR free of charge.

5.3    In the event of a breach of, or default under, this Agreement by ASSIGNEE is not cured within sixty (60) days after the receipt of written notice thereof from ASSIGNOR, ASSIGNOR shall be entitled (without prejudice to any of its other rights) to terminate this Agreement by giving notice to take effect immediately.

5.4    ASSIGNOR shall have the right to terminate this agreement forthwith in the event of ASSIGNEE's filing the bankruptcy.

5.5    The right to terminate this Agreement pursuant to this Article 5 shall not be affected in any way by a waiver of, or failure to take action with respect to, any previous breach or default.   Termination of this Agreement shall not affect the rights and/or obligations of the parties accrued prior to termination.

**ARTICLE 6 - Know-How, Information, Improvements and Confidentiality:**

6.1    ASSIGNOR agrees that it shall:

a)    disclose to any of the Know-How in its possession or provided to it under this Agreement to the ASSIGNEE without any reservation and,   b)    take such precautions as it normally takes with its own confidential and proprietary information to prevent disclosure to third parties (except Affiliates and consultants as above).

2TH

RLC

- 5 -

EXHIBIT 1
PAGE 000007

6.2     The obligation of ASSIGNOR under Article 5.2 shall not, in any event, apply to any information which it can show:

a)     at the time of disclosure is, or thereafter becomes, available to the public in published literature or otherwise through no fault of ASSIGNOR; or

b)     was known to, or otherwise in the possession of, ASSIGNEE or Affiliates, or consultants of ASSIGNEE prior to the receipt of such information from ASSIGNOR ; or,

c)     is obtained by ASSIGNEE from a source other than ASSIGNOR and other than one who would be breaching a commitment of confidentiality to ASSIGNOR by disclosing such information to ASSIGNEE.

### ARTICLE 7 - Patent Maintenance and Extension:

7.1     ASSIGNEE shall bear the cost of obtaining patents on the patent applications set out in Article 1.5 and attends to and bears the cost of maintaining patent rights throughout the life of said rights in USA, and other countries where applicable.

7.2     Whenever it is possible and there is a reasonable prospect of success, ASSIGNEE shall apply for extension of the Patent Rights within any period prescribed for such application.  It would be the responsibility of ASSIGNEE to work with its agent with respect to such filing and prosecution of action and agrees to cooperate with said agent in providing any information required under any relevant laws, and any regulations promulgated thereunder.   All expenses of such proceedings shall be borne by ASSIGNEE.

7.3     The proprietary rights to any improvements and modifications on the patents licensed hereby, including but not limited to patent, copyright, trade secrets and other related rights, shall be vested in ASSIGNEE.

### ARTICLE 8 - Publicity:

8.1     ASSIGNOR and ASSIGNEE agree NOT to issue any press release or other public statement disclosing the existence of or relating to this Agreement without the prior written consent of the other party, provided, however, that neither party hereto shall be prevented from complying with any duty of disclosure he or it may have pursuant to law.

### ARTICLE 9 - Notices:

9.1     Any notice or communication required or permitted to be given or made under this Agreement by one of the parties hereto to the other shall be in writing and shall be

*ZTH*

*RLC*

- 6 -

EXHIBIT 1
PAGE 000008

deemed to have been sufficiently given or made for all purposes when mailed by certified mail, return receipt requested, postage prepaid, addressed to such other party at its respective address as follows:

To ASSIGNOR :
Attention:    Richard L. Chang & Zheng Tao Han

To ASSIGNEE :
Attention:    Fred Chi-Ming Wu, Biosuccess Biotech Co. Ltd

### ARTICLE 10 - Force Majeure:

10.1   Neither party shall be responsible or liable to the other hereunder for failure or delay in performance of this Agreement due to any war, fire, accident or other casualty, or any labor disturbance or act of God or the public enemy, or any other, whether similar or dissimilar to the foregoing, contingency beyond such party's reasonable control.   In addition, in the event of the applicability of this Article, the party failing or delaying performance shall use its best efforts to eliminate, cure and overcome any of such causes and resume performance of its obligations as soon as reasonably possible under the circumstances.   If either party finds that it is subject to conditions as set out in this article that may delay or preclude its performance of any of its obligations under this agreement it shall promptly advise the other thereof.

### ARTICLE 11 – Assignment and Transfer:

11.1    Any subsequent applications of phorbol esters for treating patients for other diseases by the ASSIGNOR would be considered to be the rights of the ASSIGNEE. And any subsequent patents and patent applications granted for the ASSIGNOR for other diseases or indications would also be considered to the right and interests of and the ownership of the ASSIGNEE.

11.2    Any "Know-How" developed subsequently relating thereafter the Agreement is in effect will also be considered to be the right and interests of ASSIGNEE.

### ARTICLE 12 - Severability:

*2TH*

*RLC*

- 7 -

EXHIBIT 1
PAGE 000009

12.1   If any one or more of the provisions of this Agreement shall, for any reason be held by any court, tribunal or other authority having jurisdiction over either of the parties hereto or this Agreement, be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remaining provisions here shall not in any way be affected or impaired thereby.   In the event any provision shall be held invalid, illegal or unenforceable, the parties shall use their best efforts to substitute a valid, legal and enforceable provision, which, insofar as practical, implements the intent of the parties and the purposes hereof.

### ARTICLE 13 - Governing Law and Jurisdiction:

13.1   This Agreement shall be construed and the rights of the parties governed in accordance with the laws of the state of New Jersey, U.S.A., excluding its rules relating to conflict of laws.

### ARTICLE 14 - Entire Agreement:

14.1        This Agreement constitutes the entire understanding of the parties with respect to the subject matter contained herein and may not be modified or amended except as expressly stated herein or by a written agreement duly executed by both parties hereto.

### ARTICLE 15 - Miscellaneous Provisions:

15.1   The titles of the Article of this Agreement are for general information and reference only and this Agreement shall not be construed by reference to such titles.

15.2   It is expressly agreed that this agreement does not authorize either party to act or hold itself out or be held out as the agent of the other.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate by their duly authorized representatives as of the day, month and year first above written, each copy of which shall for all purposes be deemed to be an original.

**ASSIGNOR:  Richard L. Chang**          **ASSIGNOR:   Zheng Tao Han**

By: _Richard L Chang_          By : _Zheng Tao Han_

ZTH          RLC



- 8 -

EXHIBIT 1
PAGE 000010

Name: Richard L Chang

Title: CTO

Date: 10-12-2006

Name: Zheng Tao Man

Title:

Date: 10-12-2006

**ASSIGNEE: Biosuccess Biotech Co., Ltd.**

By:

Name: Fred C. M. Wu

Title: Chairman

Date: 10-12-2006

RLC          ZTH

- 9 -

EXHIBIT 1
PAGE 000011