LEE TRAN & LIANG LLP
Enoch H. Liang (Bar No. 212324)
enoch.liang@ltlattorneys.com
Kevin Bringuel (SBN 196279)
kevin.bringuel@ltlattorneys.com
Heather F. Auyang (Bar No. 191776)
heather.auyang@ltlattorneys.com
Lisa J. Chin (Bar No. 259793)
lisa.chin@ltlattorneys.com
601 South Figueroa St., Ste. 3900
Los Angeles, California 90017
Telephone: (213) 612-8900
Facsimile: (213) 612-3773

*Attorneys for Biosuccess Parties*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: Richard L Chang | Lead Case No. LA CV13-01340 JAK (ANx) |
| Ben Chang<br>v.<br>Biosuccess Biotech Co., Ltd. (Cayman), Biosuccess Biotech Co., Ltd. (Nevada), Chi-Ming Wu a/k/a Fred Wu, and Zheng Tao Han | Consolidated Case No. LA CV14-04446 JAK (ANx)<br><br>**BIOSUCCESS BIOTECH, CO., LTD. (CAYMAN) AND BIOSUCCESS BIOTECH, CO., LTD. (NEVADA)'S COUNTERCLAIMS AGAINST BEN CHANG**<br><br>**JURY TRIAL DEMANDED** |

LEE TRAN & LIANG LLP
Enoch H. Liang (SBN 212324)
enoch.liang@ltlattorneys.com
Heather F. Auyang (SBN 191776)
heather.auyang@ltlw.com
Lisa J. Chin (SBN 259793)
lisa.chin@ltlattorneys.com
601 S. Figueroa Street, Suite 3900
Los Angeles, CA 90017
Telephone: (213) 612-3737
Facsimile: (213) 612-3773

Attorneys for Defendants and Counterclaimants Biosuccess Biotech, Co. Ltd. (Cayman), and Biosuccess Biotech, Co. Ltd., (Nevada)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**BEN CHANG**, an Individual

Plaintiff,

v.

**BIOSUCCESS BIOTECH, CO., LTD**., a Cayman Islands Corporation, and **BIOSUCCESS BIOTECH, CO., LTD**., a Nevada Corporation; **CHI-MING WU A/K/A FRED WU**, an Individual; **ZHENG TAO HAN**, an individual; and DOES 1 through 50,

Defendants.

---

**BIOSUCCESS BIOTECH, CO., LTD**., a Cayman Islands Corporation, and **BIOSUCCESS BIOTECH, CO., LTD**., a Nevada Corporation,

Counterclaimants,

v.

**BEN CHANG**, an Individual

Counterclaim Defendant.

Case No. 5:14-cv-00425-LHK

**DEFENDANTS BIOSUCCESS BIOTECH, CO., LTD. (CAYMAN)'S AND BIOSUCCESS BIOTECH, CO., LTD. (NEVADA)'S COUNTERCLAIMS AGAINST PLAINTIFF AND COUNTERCLAIM DEENDANT BEN CHANG**

**JURY TRIAL DEMANDED**

## COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendants and Counterclaimants Biosuccess Biotech, Co. Ltd., a Cayman Islands Corporation ("Biosuccess Cayman"), and Biosuccess Biotech, Co. Ltd., a Limited Liability Company registered in Nevada ("Biosuccess Nevada") (collectively "Biosuccess" or "Defendants"), by and through their attorneys, hereby counterclaim against Plaintiff and Counterclaim Defendant Ben Chang ("Chang" or "Plaintiff"), as follows:

## PARTIES

1. Biosuccess Biotech, Co. Ltd. is a corporation organized under the laws of the Cayman Islands, with its principal place of business in Taiwan at Room 904, 9th Floor, No. 147, Sec. 2, Chien-Kuo North Road, Taipei, Taiwan 10460, R.O.C.

2. Biosuccess Biotech, Co. Ltd., is a Limited Liability Company registered in the state of Nevada, with its principal place of business in Taiwan at Room 904, 9th Floor, No. 147, Sec. 2, Chien-Kuo North Road, Taipei, Taiwan 10460, R.O.C.

3. Upon information and belief, at all relevant times Ben Chang was a citizen of the State of New Jersey.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1367.

5. This Court has diversity jurisdiction over each of Defendants' claims pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00 exclusive of costs and interest, and the parties are citizens of different states.

6. These Counterclaims arises out of the same transaction and/or occurrence described in Plaintiff's Complaint and many acts occurred while Chang was employed by Biosuccess Nevada.

7. Counterclaim Defendant has consented to personal jurisdiction for this action in this judicial district by filing Plaintiff's Complaint in this action.

8. Venue over these compulsory counterclaims is proper in this judicial district under

28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

**A.     Biosuccess is the Leader in TP A Research**

9.     Founded in 2005, Biosuccess is a promising biomedical research and development company dedicated to researching 12-O-tetradecanoylphorbol-13-acetate, also known as "TPA," for the treatment and applications of, *inter alia*, acute myelogenous leukemia ("AML"), AIDS/HIV for patients who were refractory to standard therapy, and stroke. Biosuccess gave TPA a unique designated name of "PD-616." Biosuccess's main goals are to supply drugs to the global market and to obtain both domestic and foreign patent protection.

10.    Biosuccess has spent considerable time and effort, as well as millions of dollars towards the research and development of PD-616 for the treatment of AML and stroke, as well as numerous other treatment applications, and has complied valuable research and business data considered trade secrets ("Confidential Information"). Biosuccess's main research operations are based in China under the supervision of Dr. Zheng Tao ("Dr. Han") and other research scientists. Biosuccess uses the Confidential Information for, among other things, submissions to the U.S. Food and Drug Administration ("FDA"), and as a basis for filing both domestic and foreign patent applications. Biosuccess's Confidential Information is not public or generally known.

11.    Biosuccess's Confidential Information is contained in various documents and electronic files. Biosuccess takes great care to maintain the secrecy of its Confidential Information and to prevent disclosure to persons outside the Company, including requiring employees to sign a non-disclosure agreement and abide by the Employee Handbook.

12.    Based on Biosuccess's clinical results, Biosuccess has been involved with two clinical studies. The first is NCTO 1009931, titled "Phase II Study of TPA Plus Dexamethasone & CMT in Hematologic Malignancies," and the second is NCTO 1795924, titled "Safety and Efficacy Study of PD-616 Plus Cytarabine to Treat Acute Myelogenous Leukemia or Myelodysplastic Syndrome (AML/MDS)."

**B.     Plaintiff Ben Chang's Employment with Biosuccess**

13.    In 2006, third party Richard Chang recommended that his son, Ben Chang, be

appointed as an officer of the U.S. Subsidiary.

14. On or around October 2006, Biosuccess engaged Chang to work as its Chief Operating Officer and Chief Financial Officer.

15. Chang chose to work as an independent contractor, in part, so he could write-off expenses. Chang also chose his residency as New Jersey. In 2006, Chang did not receive a form W-2.

16. Chang had complete control over Biosuccess's U.S. operation, including managing the company finances and company payroll, managing personnel and third party contractors (including patent legal counsel, certified public accountant, payroll company), supervising drafting and submission of U.S. Food and Drug Administration ("FDA") documents related to clinical studies, and managing Biosuccess's patent portfolio. Hence, Chang had complete and widespread knowledge and access to all of Biosuccess's most sensitive trade secrets, including years of research data related to PD-616 and its proprietary formulations.

17. As a condition of his employment, Ben Chang was obligated to protect Biosuccess's confidential business information and trade secrets. For instance, Biosuccess's Employee Handbook provides, in pertinent part, that:

    a. The information protected includes, among other things, "new product research, pending projects and proposals, proprietary production processes, research and development strategies, [and] scientific data."

    b. Employees agreed that they would "only share such information with those individuals who have authorized access with prior written approval, from Biosuccess' Chief Financial Officer."

    c. Employees agreed that upon termination of employment that they must return all Biosuccess property.

18. In November 2007, Biosuccess informed Chang that because of financial difficulties the company would no longer be able to pay Chang his full salary, but that the Company would make an effort to pay Chang some compensation.

19. From 2007 through 2010, Chang did not receive a form W-2; however, Chang still

received some compensation.

20. Upon information and belief, Chang received unemployment benefits from the State of New Jersey during a period of the relevant time.

21. In or around June 2011, Biosuccess received funding and relaunched. Chang was also appointed President of the U.S. subsidiary. Chang then chose to receive a form W-2.

22. In 2012, Chang received a form W-2.

**C.     Chang's Egregious and Reckless Actions towards Biosuccess**

23. Beginning around 2012 and continuing through today, Chang and his father Richard Chang, attempted to usurp control of the organization through unethical and outrageous behavior and directly competed with the interests of Biosuccess, including the unauthorized disclosure of trade secrets and proprietary business information to third parties.

24. Chang was engaged in spreading untrue and misleading statements to the employees of the U.S. Subsidiary regarding his control and influence within the organization, and disclosed confidential business information to others, including the company's payroll information.

25. Chang and his father Richard Chang made repeated attempts to induce Dr. Han, who had been faithfully and diligently performing his research duties for Biosuccess to take his research and data and defect with them to outside investors, by offering Dr. Han millions of dollars in return. Dr. Han rejected the Changs' offers.

26. Chang registered himself as a managing member of the U.S. Subsidiary without approval by Biosuccess, disseminated false and misleading statements to other employees of the U.S. Subsidiary concerning his father Richard Chang's power, misappropriated company fund for personal use, and falsified information on documents.

27. In late 2012, Chang failed to obtain the necessary insurance critical for Biosuccess's clinical trials. Chang misappropriated funds to the benefit of himself and his father Richard Chang.

28. On or around January 1, 2013, Chang was asked by Biosuccess to turn in his work related computer provided by Biosuccess and to preserve all information, including any emails.

Chang refused to cooperate and instead erased the entire contents of his work related computer, including deleting all emails.

29. During his employment as Biosuccess's Chief Operating Officer, Chief Financial Officer and President, Chang amassed most, if not all, of Biosuccess's research data related to PD-616 and its proprietary formulations. Chang then transferred and took this data from Biosuccess in violation of his obligations and without Biosuccess's knowledge and without Biosuccess's permission or authorization.

30. During his employment as Biosuccess's Chief Operating Officer, Chief Financial Officer and President, Chang failed to maintain financial statements and other documents for Biosuccess. Chang also failed to file required tax documents on behalf of Biosuccess in the United States.

31. On information and belief, Chang conspired with his father Richard Chang and others to steal Biosuccess's most sensitive trade secrets and other proprietary information for their own benefit and against Biosuccess's interests.

32. On or around January 17, 2013, the CEO and Chairman of Biosuccess, Fred Wu, announced a restructuring of the management in response to the breach of fiduciary duties by Chang and his father Richard Chang. Chang's employment as the operating officer of the U.S. Subsidiary was terminated as part of the restructuring effort.

**D.      Plaintiff Conspired to Form a Competing Company**

33. In furtherance of the conspiracy and plan to destroy Biosuccess, Chang planned and did in fact use the stolen information from Biosuccess that he had impermissibly retained after his termination in order to start a competing company.

34. On information and belief Chang approached and brought in Nepia. On or around July 18, 2013, according to Nepia's S.E.C. filings, Nepia entered into a Memorandum of Understanding and Asset Assignment Agreement with third parties Imagic, LLC and Richard L Chang Holdings, LLC to acquire certain alleged assets including United States Patent No. 6,063,814, entitled "Phorbol esters as anti-neoplastic and white blood cell elevating agents" and all related intellectual property associated with the patent. Upon information and belief, Imagic,

LLC is controlled solely by Ben Chang. Richard L Chang Holdings, LLC is controlled solely by Richard Chang. According to the SEC filings, cash and stock were exchanged in return.

35. On July 18, 2013, Nepia appointed Ben Chang as its President, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Director.

36. Nepia represented in its S.E.C. filings that "Under the direction of our newly appointed officer and director . . . we intend to pursue the development of PD-616 (12-O-tetradecanoylphorbol-13-acetate) for the treatment of: Acute Myelogenous Leukemia ("AML") and Stroke (for the treatment of loss of function cause by Stroke) . . . . "

37. Nepia stated in its S.E.C. filings that "The priority drug development efforts of the Company are focused on the use of PD-616, a naturally occurring compound that has a number of properties that are uniquely suited for the treatment of patients with Acute Myelocytic Leukemia (AML). Company scientists had worked with PD-616 in the laboratory for many years studying its ability to convert cancer cells to normal cells, a process called differentiation. It was also observed in some instances to cause cancer cell death. These observations were the basis of the proposal to test PD-616 in relapsed AML patients in China and later in the US and resulted in findings that were sufficiently encouraging to support further interest in this drug to treat."

38. In fact, Nepia had performed none of the drug development or work stated in the aforesaid S.E.C. filings. Instead, the drug development and clinical work involving PD-616 and its treatment of AML was a result of work funded and performed by Biosuccess. PD-616 is the unique name created by Biosuccess for the new drug and is Biosuccess's proprietary property.

39. In July 2013, Rich Pharmaceuticals contacted WuXi AppTec Co., Ltd. ("WuXi") to manufacture TPA. WuXi is the same company that manufactured PD-616 for Biosuccess. Rich Pharmaceuticals used the trade secret and confidential information learned and taken from Biosuccess to facilitate the manufacturing of TPA for their own use. Both Plaintiff Ben Chang and Richard Chang participated in the process.

40. On or around September 3, 2013, Nepia officially changed its name to Rich Pharmaceuticals, Inc. (although the Changs were already using the Rich Pharmaceuticals entity name).

41. In late 2013, Ben Chang and Richard Chang engaged a third party Contract Research Organization, Therinova. Therivnova was to provide "regulatory support to include the development of the US FDA IND Submission Package for Rich Pharmaceuticals's product PD-616."

42. Therinova's "deliverables" included "Prior data and documentation review: [] Therinova will review all prior regulatory documentation, research data, and manufacturing information provided by Rich Pharmaceuticals."

43. Therinova's scope of work was based on the following assumptions: "At the start of this project, the Company will provide to Therinova the following information: 1. Copy of all Regulatory Correspondence and documentation. 2. All Data pertaining to the pre-clinical and clinical development of PD-616. 3. All information pertaining to the manufacture of PD-616. 4. All additional information needed directly for the US FDA IND Submission."

44. Ben Chang and Richard Chang did in fact provide numerous confidential Biosuccess documents that they had unlawfully retained to Therinova.

45. Ben Chang oversaw the operation of Biosuccess's entire U.S. operation and was the key (if not sole) person of contact for most of the operation, from patent filings, financial management and clinical trials. Ben Chang controlled Biosuccess's Confidential Information and is using Biosuccess's Confidential Information in his role as President, Chief Executive Officer, Chief Financial Officer, Secretary and Director at Rich Pharmaceuticals, including conducting clinical trials at two sites in the U.S., meeting with the top ranking foreign health officers, maintaining Rich Pharmaceuticals's patent portfolio, and preparing submissions to the FDA.

46. At the direction of Ben Chang, and with the explicit cooperation of his father Richard Chang, Rich Pharmaceuticals, Inc. engages in direct competition with Biosuccess.

47. Richard Chang serves as the Chief Scientific Officer and on the Board of Rich Pharmaceuticals.

48. Rich Pharmaceuticals is a publically traded company under the symbol RCHA.

///
///

**COUNT I**

**(Misappropriation of Trade Secrets - Cal. Civ. Code §§ 3426.1 et seq.)**

49. Biosuccess incorporates the paragraphs above of its Counterclaims as if fully set forth herein.

50. Biosuccess is informed and believes, and on that basis alleges, that Chang is using Biosuccess's Confidential Information, without Biosuccess's consent, to unlawfully compete against Biosuccess.

51. Biosuccess enjoys an advantage over its existing and would-be-competitors based, in part, on the trade secret information it has developed and implemented in its effort to bring PD-616 to market for the treatment of, among other diseases, leukemia and stroke.

52. Biosuccess has made reasonable efforts under the circumstances to preserve· the confidentiality of its trade secrets. Such information derives independent economic value (actual and potential) from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use. Accordingly, the above-described Confidential Information constitutes "trade secrets" under California's UTSA, Cal. Civ. Code Section 3426 *et seq*.

53. Chang was and remains under a duty both to keep Biosuccess's confidential, proprietary or trade secret information secret, and not to use or disclose such information other than for the benefit of Biosuccess and only with Biosuccess's authorization. By taking or using this information from Biosuccess without its authorization, Chang knew or should have known that they acquired such information under circumstances giving rise to a breach of a duty to maintain its secrecy and limit its use.

54. Chang's conduct constitutes misappropriation of Biosuccess's trade secrets through the unauthorized taking, retention and use of Biosuccess's trade secret information.

55. Chang's actual and threatened misappropriation was and is being carried out without the express or implied consent of Biosuccess.

56. Chang obtained the Confidential Information described above directly or indirectly from Biosuccess and not generally available information or through its own independent research

and efforts.

57. Chang's actions constitute willful misappropriation and/or threatened misappropriation of Biosuccess's trade secrets under the California's UTSA, Cal. Civ. Code Section 3426 *et seq*.

58. As a direct and proximate result of Chang's conduct, Chang has been unjustly enriched in an amount to be ascertained at trial, and Biosuccess has sustained, and will continue to sustain, actual damages in an amount to be proven at trial.

59. Chang's actual and threatened misappropriation of Biosuccess's trade secrets, unless and until enjoined and restrained by order of this Court, is causing and will continue to cause great and irreparable harm to Biosuccess. Biosuccess is threatened with losing its intellectual property, as well current and potential business and investors.

60. Pursuant to California Civil Code section 3426.2, Biosuccess is entitled to an injunction to prohibit Chang from using, disclosing or otherwise benefiting from Biosuccess's trade secrets, to eliminate any commercial advantage to Chang that they may otherwise derive from his misappropriation, and to require Chang to immediately return to Biosuccess all information, equipment and other materials which he has wrongfully obtained.

61. In performing the conduct described herein, Chang acted willfully and maliciously with the intent to injure Biosuccess and to wrongfully advantage himself at Biosuccess's expense.

62. Pursuant to California Civil Code section 3426.3(c), Biosuccess is entitled to an award of punitive and exemplary damages against Chang sufficient to punish and deter them from engaging in such conduct in the future, in an amount to be ascertained at trial.

63. Pursuant to California Civil Code section 3426.4, Biosuccess is also entitled to an award of their attorneys' fees and costs incurred in this action.

**COUNT II**

**(Breach of Fiduciary Duty)**

64. Biosuccess incorporates the paragraphs above of its Counterclaims as if fully set forth herein.

65. As an officer of Biosuccess, Chang was entrusted with maintaining a variety of

confidential information and overseeing certain special projects at Biosuccess. Accordingly, Ben Chang owed Biosuccess a duty of loyalty. Ben Chang breached his duty of loyalty by the actions described above.

66. As a direct and proximate result of Ben Chang's breach of his duty of loyalty, Biosuccess has suffered, and will continue to suffer, substantial monetary damages in an amount to be proven at trial.

67. As a condition of his employment with Biosuccess, Biosuccess entrusted its trade secrets and other confidential and proprietary information to Chang and reposed confidence in him that he would not disclose the information or use it for his own personal gain. The trust and confidence Biosuccess reposed in Chang gave rise to a fiduciary duty not to disclose Biosuccess's trade secrets and confidential information or use them for personal gain.

68. Chang has breached this fiduciary duty by disclosing Biosuccess's trade secrets and other confidential information to third parties such as Rich Pharmaceuticals and Therinova, by utilizing Biosuccess's trade secrets and confidential information, without Biosuccess's consent, in connection with Rich Pharmaceuticals, and by failing to properly maintain and file financial documents on behalf of Biosuccess.

69. Indeed, in practical terms, it is impossible for Chang to develop and be in the same footing as Biosuccess without breaching his fiduciary duty not to disclose protected information.

70. As a direct and proximate result of Chang's breach of this fiduciary duty, Biosuccess has been damaged in an amount to be proved at trial.

71. Biosuccess is entitled to an award of punitive and exemplary damages against Chang sufficient to punish and deter them from engaging in such conduct in the future, in an amount to be ascertained at trial.

## COUNT III

### (Unfair Competition Pursuant to California Business and Professions Code Section 17200, *et seq.*)

72. Biosuccess incorporates the paragraphs above of its Counterclaims as if fully set forth herein.

73. Biosuccess is informed and believes, and on that basis alleges, the above-described conduct of Chang constitutes unlawful and unfair business practices in violation of California Business and Professions Code Section 17200, *et seq*.

74. Chang's unlawful business practices include, without limitation, misappropriation of Biosuccess's trade secrets, acts of conversion, breaches of fiduciary duty, and other wrongs described herein.

75. Chang has acted deliberately with the intent to unfairly benefit from the expense, time, effort and labor expended by Biosuccess in the research and development of PD-616 and its confidential intellectual property related thereto, and with a callous disregard for Biosuccess's rights.

76. Pursuant to California Business and Professions Code Section 17203, Chang is required to restore to Biosuccess all property acquired by means of Chang's unfair competition with Biosuccess.

77. As a result of Chang's conduct, Chang has been or will be unjustly enriched in an amount to be proven at trial, for which Biosuccess seeks restitution.

78. As a result of the actions of Chang, Biosuccess has suffered and will continue to suffer irreparable harm unless and those unlawful business practices will continue to cause such irreparable harm until Chang's conduct is enjoined.

**COUNT IV**

**(Unfair Competition under California Common Law)**

79. Biosuccess incorporates the paragraphs above of its Counterclaims as if fully set forth herein.

80. The above-described conduct of Chang constitutes unfair competition under the common law of the State of California.

81. Because Chang's conduct has been intentional and willful and in conscious disregard of the rights of Biosuccess, Biosuccess is entitled to punitive damages against Chang.

///

///

**COUNT V**

**(Violation of Cal. Pen. Code § 502)**

82. Biosuccess incorporates the paragraphs above of its Counterclaims as if fully set forth herein.

83. Cal. Pen. Code §502(c) prohibits an individual from knowingly accessing and without permission altering, damaging, deleting, destroying, disrupting, or otherwise using a computer system or computer network. It also prohibits an individual from assisting or providing a means to violate §502(a).

84. As alleged above, before he was terminated, Chang destroyed and erased all of the computer files in the Biosuccess system related to the U.S. operations.

85. Biosuccess is continuing to spend money to investigate the extent of damage caused by Chang's malicious actions, to verify the Biosuccess's information system was or was not otherwise altered and the extent of the information deleted and/or destroyed by Chang.

86. Biosuccess has suffered and will continue to suffer injury to its business, including but not limited to its computer system. Pursuant to Cal. Pen. Code §502(e), Biosuccess seeks injunctive relief, compensatory damages, attorneys' fees, and punitive or exemplary damages.

**COUNT VI**

**(Trespass to Chattels)**

87. Biosuccess incorporates the paragraphs above of its Counterclaims as if fully set forth herein.

88. Biosuccess owns computers in its system network, including the computer assigned to Ben Chang before he was terminated in January 2013.

89. The files on Biosuccess's internal system network, as well as the files on the hard disk drive of the computer assigned to Chang before he was terminated in January 2013, are comprised of data files which Biosuccess possessed and/ or had a right to possess.

90. Chang intentionally and without authorization interfered with Biosuccess's possessory interest in said computers on the Biosuccess system network, as well as the files on the Biosuccess system network, and the files on the hard disk drives. Prior to his departure from

Biosuccess and without authorization, Chang deleted files from the laptop that had been assigned to him by Biosuccess so that the files were not recoverable.

91. Chang's unauthorized and malicious actions proximately resulted in damages to Biosuccess.

**COUNT VII**

**(For Conversion)**

92. Biosuccess incorporates the paragraphs above of its Counterclaims as if fully set forth herein.

93. Biosuccess jointly developed and is an owner of the trade secrets and other confidential and proprietary information involved with the research and development of PD-616.

94. In the course of working on the research and development of PD-616 in direct competition to Biosuccess, Chang has converted for their own use, Biosuccess's trade secrets and confidential information.

95. Biosuccess is entitled to an order that Chang cease and desist all use and disposition of its trade secrets and confidential information in connection with PD-616.

96. As a direct and proximate result of the Chang's acts of conversion, Biosuccess has suffered damages due to, among other things, the lost value of its trade secrets and confidential information.

97. Chang's conversion of Biosuccess's property is oppressive and malicious. As a result of such conduct, Biosuccess is entitled to punitive damages pursuant to California Civil Code Section 3294 against Chang in an amount to be proved at trial.

**BIOSUCCESS'S PRAYER FOR RELIEF**

WHEREFORE, Biosuccess respectfully prays for the following relief:

A. That the Court enter judgment in favor of Defendants and against Chang;

B. That the Court dismiss Chang's Complaint with prejudice;

C. That Chang and all persons in active concert or participation with him, be preliminarily and permanently restrained and enjoined from misappropriating, disclosing, or using Biosuccess's confidential information and trade secrets;

D. That Biosuccess recover compensatory damages for Chang's wrongdoing in an amount to be established at trial, together with pre-judgment and post-judgment interest thereon at the maximum legal rate;

E. That Biosuccess recover an award of punitive and other appropriate exemplary damages, disgorgement, restitution, pre-judgment and post-judgment interest as permitted by statute and/or contract;

F. For the costs of suit and reasonable attorneys' fees; and

G. For any other and further relief as the Court deems just and proper in this case.

**DEMAND FOR A JURY TRIAL**

Defendants and Counterclaimants hereby demand a jury trial on all issues so triable.

Dated: April 14, 2014

**LEE TRAN & LIANG LLP**

By: /s/ Enoch H. Liang
Enoch H. Liang
Attorneys for Defendants and Counterclaimants Biosuccess Biotech, Co. Ltd. (Cayman), and Biosuccess Biotech, Co. Ltd. (Nevada)